

Terrance Walker

561 Keystone Ave #158

Reno NV 89503

phone: 775-3971-8679

email: twalker@financeandimprove.com

## IN THE UNITED STATES DISTRICT COURT FOR NEVADA

| | | |
|---|---|---|
| Terrance WALKER, | : | |
| PLAINTIFF, | : | CASE NO. ____  3:15-cv-00556 |
| v. | : | |
| Charter Communications Inc, and | : | |
| Charter Communications Llc, | | CIVIL COMPLAINT |
| DEFENDANTS, | : | |

## COMPLAINT OF RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Plaintiff Terrance Walker ("Plaintiff" or "Mr. Walker") files this Complaint and Jury Demand against Defendants Charter Communications Inc, and Charter Communications Llc,

## INTRODUCTION

1. This suit arises because of Defendants' decision to terminate Mr Walker because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII").

2. Plaintiff seeks, for himself, declaratory and injunctive relief to end and remedy Defendants'



Paid Amt $ 400   Date 11/17/15

Receipt # 3044   Initials __

1

unconstitutional policies and practices, which violate Plaintiffs' Title VII Civil Rights.

## PARTIES

1. Plaintiff Terrance Walker  is a 45 year old African American man, who lives and works in Reno Nevada (and has for all times relevant). He has done sales for over 20 years.

2. Defendants  Charter Communications, Inc and Charter Communications LLC (hereafter "Charter")  are an American cable telecommunications company, which offer pay television, high speed internet, and wire phone (or voice) services to residential consumers and businesses under the branding of Charter Spectrum. They Provide services to 5.9 million customers in 29 U.S. States, including Nevada.  Charter is the fourth-largest cable operator in the United States by subscribers, it is worth over $21 billion and employs (at all times relevant) over 21,000 people in the United States. Charter Communication Inc has the subsidiary Charter Communications LLC. Both companies, at all times relevant, have done business in Reno, Nevada, providing residential and commercial services.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343.

4. Defendants have a place of business in Nevada. Plaintiff, for the past 5 years, resided in Reno, Nevada.

5. All of the discriminatory acts and omissions by Defendants, giving rise to this action, occurred in Nevada.  Venue is, thus, proper in the Nevada District Court under 42 U.S.C. §2000e- 5(f)(3).

## *FACTS*

6. Plaintiff had been working as a direct sales representative for Charter on 9335 Prototype Dr, Reno, NV 89521 from August 2013 until April 2014. He sold residential accounts of internet, cable TV, and wired phone (or voice) services of Charter. Three of the six full months that Plaintiff worked for Charter, he was top sales rep in the Reno, Nevada area.

7. During Plaintiff's employment at Charter, Charter had policies governing discipline and sales performance of its employees. One policy set forth and communicated by Defendants' Supervisors (in the Reno office) dictated that sales employees who had a month of bad sales performance or violated a rule of conduct received a ¨coaching¨ or corrective action the first time. For subsequent infractions, employees were wrote up (and/or given another coaching/corrective action), and were ultimately terminated. Coachings involved the supervisor visiting with employees (close in time to the incident), discussing the incident(s), and having the employee sign, in writing, that they received said coaching, and would take a new course of action in the future.

8. Notwithstanding incidents of violence, harassment, or threats, discipline of sales employees at Charter in Reno, NV was a multi-pronged process for each person, as was communicated to sales representatives there.

9. During Plaintiff's employment at Charter, this was the disciplinary practice to other, non-African American, sales representatives in the Reno office, including Dana Smith, Denise, Jill (can't remember last names), Mike Kapetan, and numerous others.

10. Plaintiff had no disciplinary or performance issues. In fact, he helped train over a dozen other sales representatives in the field for no extra pay from Charter.

11. On about March 2014, one of the supervisors at Charter in Reno instituted a policy of having a daily conference called "the zero call". Those calls transpired Monday through Friday. All sales reps in the Reno office that had no sales the previous day had to be on the conference call and explain their failure to get a sale to all of the sales supervisors.

12. On April 23, 2014, Plaintiff was on the "zero call" for not having a sale April 22, 2014. A Charter sales supervisor named Adrian Ybarra was in charge of the call. When it came to Plaintiff's turn, he called Plaintiff's name on the call and began berating Plaintiff, accusing Plaintiff of starting work late the previous day and of being on the "zero call" everyday. His tone was assumptive and rude. Plaintiff asked Adrian Ybarra where he got his information on him being late in the field. (Note: earlier the previous day, Plaintiff noticed his sales area was erroneously duplicative of an area he had worked 3 months prior -- an error not on his part -- but on the part of his supervisor who should have waited 12 months before reassigning the territory again. Thus, Plaintiff had to await territory reassignment that previous day and was not late in the field).

13. On the same "zero call", Plaintiff questioned Adrian Ybarra as to the time frames that Plaintiff was supposed to be working ("9am to 9pm?", he asked). Plaintiff also asked what Adrian Ybarra was basing his other information on because Plaintiff had not been on the "zero call" for two weeks.

14. Plaintiff's non-Black, European American, coworker/sales rep (Adam Wagoner) heard the dialogue on this same conference call. Adam Wagoner had the same direct supervisor as Plaintiff. Her name was Norma Perales. On the same call, Adam was asked by supervisor Adrian Ybarra "why were you late to the field" to which Adam stated in a flippant, brazen tone, that *obviously* he was helping a current customer that he had to follow up with. Plaintiff's direct supervisor (Norma Perales) intervened on the conference call and told Plaintiff that she was going to take a matter up with Plaintiff "offline". Ms Perales, however, simply met with Adam later.

15. Norma Perales, then, called Plaintiff on his cell phone directly and stated that Plaintiff was being disrespectful. Plaintiff told Ms Perales that he was only "asking for clarification" from the other supervisor (Adrian Ybarra) and, in defense of being disparaged. Norma Perales said they were recommending corrective action for Plaintiff. Plaintiff told Norma Perales that he would file a complaint.
Plaintiff did complain by filing a complaint with the Nevada Equal Rights Commission, (hereafter "NERC") and through Charter's anonymous whistleblower channels.

5

16. Two days later Plaintiff went to the office on Prototype Drive in Reno,  Norma Perales  told Plaintiff to go to a conference room.  Plaintiff and Ms Perales were joined by her fellow supervisor Adrian Ybarra. Plaintiff's supervisor (Norma) told Plaintiff that he was on paid suspension and to hand in his Charter equipment.  Plaintiff handed Norma her all Charter property in his possession and left. No suspension paperwork was provided to Plaintiff.

17. On about April 25, 2014, when confronting Adam Wagoner about his flippant and brazen tone on the same conference call that Plaintiff was on, the same supervisor (Norma Perales), told Adam that he was going to get a "write up" for it and being a "dark cloud of negativity". Yet, before she finished the write up, she cancelled it.  (Adam verified this story to the NERC investigator and called Plaintiff after the investigator called to question him on his recollection of the events  -- also see Adam's statement)

18.  On April 30, 2014, Plaintiff was told by Ms Perales that  had an appointment at 10AM to meet her and the Charter's local HR manager Mindi Brenner at 9335 Prototype Dr, Reno, NV. The HR manager and Ms Perales said that they made a decision to move forward with termination of Plaintiff's employment with Charter.  Plaintiff was presented with a document that listed no explanation of the cause of termination.

19. Plaintiff was, however,  handed a sheet by the HR staff to sign which listed  two alleged previous incidents which were merely described as "coaching" incidents and were supposed to

occurred 3 weeks earlier, on April 7th and April 8th, 2014.  Plaintiff declined to sign the document since he had never been notified orally, or in writing, that he had (or was) receiving a coaching on/for said dates.

20. Those alleged coaching incidents never occurred and were being used as a pretext to justify their improper termination action against Plaintiff.  After that, Plaintiff simply got his final payment information and left the premises.

21. No other people, other than African Americans, are subject to such disparate treatment.  No multi-prong process of discipline was applied in Plaintiff's case.  Plaintiff was pre-textually fired and retaliated against for stating he would complain and because of his race.  Even a similarly-situated non-Black employee (Adam Wagoner) was let off the hook for similar conduct in questioning a supervisor and, *even* worse, in a flippant and brazen tone.  Furthermore, terminating Plaintiff and not Adam Wagoner for similar conduct on the same "zero sales call" is evidence of pretext and not a sufficient justification.  The fact NERC supposedly couldn't confirm its interview with Adam (of which Adam confirmed with Plaintiff), does not excuse its lack of findings on this point and points to ineptness at this governmental agency.

***Defendants' Reasons Stated for Plaintiff's termination To Nevada's Unemployment Office***

22. Plaintiff, subsequently, filed for unemployment benefits after Defendants terminated him.  Plaintiff filed for unemployment benefits with the DEPARTMENT OF EMPLOYMENT, TRAINING AND REHABILITATION,  EMPLOYMENT SECURITY DIVISION, 500 EAST

7

THIRD STREET

CARSON CITY, NEVADA 89713-0045

23. On May 22, 2014, Plaintiff was sent a letter by this Employment Security Division, granting him unemployment benefits. The letter stated of Charter "The employer reported that you were discharged for behaving in an unprofessional manner towards supervisors during a Zero Sales Calls. Your employer failed to provide supporting documentation to substantiate the behavior that led to the discharge. You were not available for your scheduled interview. As your employer failed to establish that your behavior constituted an act of wrongfulness, the discharge is considered to be for reasons other than misconduct."

A true and correct copy of the EMPLOYMENT SECURITY DIVISION ( or "UNEMPLOYMENT") DETERMINATION OF THE REASON FOR PLAINTIFF'S TERMINATION  is attached hereto as Exhibit "1".

24. This decision and findings were never appealed by Defendants.

***Lack of Findings and Legal Conclusions with NERC (NEVADA EQUAL RIGHTS COMMISSION) & EEOC***

25. On April 25, 2014 and April 30, 2014, Plaintiff's allegations against Defendants were presented almost word-for-word (as in paragraphs 6-21 above) to the Nevada Equal Rights Commission, (hereafter "NERC"), now located at 1325 Corporate Blvd., Room 115. Reno NV 89502. NERC is the state-equivalent of the EEOC but it is also a division of the DEPARTMENT OF EMPLOYMENT, TRAINING AND REHABILITATION (like the Employment Security Division)

26. Richard Brown, intake officer and investigator of NERC, reviewed the allegations of Plaintiff. Plaintiff met Mr. Brown without counsel. Mr Brown refused to draw up Plaintiff´s allegations of similarly situated discriminatory termination and retaliation, explicitly laid forth by Plaintiff and explained to Mr. Brown in the proper legal context.  Plaintiff explained that he had a prima facie case based om the differentiated treatments betweeen himself and Adam Wagoner.

27. Richard Brown said that he could only draw up Plaintiff´s claims of discrimination at Charter in a more general sense, but Plaintiff´s typed facts on the matter ¨would be considered¨. A true and correct copy of the Plaintiff´s typed statements submitted to NERC is attached hereto as Exhibit ¨2¨.

28. Plaintiff protested Mr. Brown´s watered-down version of his complaint but had no other option to sign it since Mr. Brown absolutely refused to put the complaint in Plaintiff´s words and legalese.

29. On about December 14, 2014,  Plaintiff received a response from NERC and Mr. Brown, claiming that Defendants now had taken the position that Plaintiff was terminated, not for unprofessional conduct on a ¨zero sales [conference] call¨, but for telling his former supervisor (Norma Perales) to  ¨KISS MY BUTT¨.

30.  That day Plaintiff sent a responsive letter to NERC stating,

¨The Unemployment division found Charter's claims in regards to firing me, unsubstantiated.( See attached) In fact, Norma Perales has, belatedly, been making up all kinds of stories to justify her termination of me.  In about Sept 2014, Norma told Dean Browne (whose previous witness statement --with contact info -- is attached) that I had cussed at her . Now, she is telling NERC that I told her to "kiss my butt" -- an outright lie.  It's telling that NONE OF THIS was mentioned as a grounds for termination in the actual official company paperwork which was presented to me or paperwork submitted to the Unemployment division. This is grounds for

discrediting Norma Perales and Charter. I was clearly treated different than similarly-situated, but white, employees."

A true and correct copy of the Plaintiff's typed Responsive statements submitted to NERC is attached hereto as Exhibit "3".

31. On June 12, 2015 NERC's Richard Brown found "no probable cause" in discrimination on Plaintiff's claims, citing only that Charter hired and fired just as many whites. Mr Brown made no other finding on Plaintiff's claims of retaliation, pretext, or of Plaintiff being treated differently than his similarly situated, but white, coworkers. A true and correct copy of NERC's Findings  is attached hereto as Exhibit "4".

32.  On June 15, Citing numerous 9th Circuit (and U.S. Superme Court) precedents backing his claims, Plaintiff wrote back for a rehearing to NERC stating that of Mr Brown and NERC's "incorrect legal standards and lack of consideration of the evidence in this agency's findings". Specifically, Plaintiff detailed that pretextual claims can occur in a similarly situated contexts with only one or two other parties (who did not face the discriminatory treatment). In other words, courts do not only find discrimination in the narrow context that Mr. Brown had found, where a majority of people of a particular race have to be fired.   Plaintiff quoted " pretext arises 'where an employer simultaneously offer[s] two distinct and arguably inconsistent reasons for an employee's discharge'" (citation ommitted). Plaintiff demonstrated a prima facie case and Mr. Brown and NERC failed to find a legitimate, non-discriminatory basis for Plaintiff's termination in its finding. Furthermore, the allegation Plaintiff was fired for stating, "KISS MY BUTT", could not be legitimate because it was only mentioned months later, even after Defendants told the Employment Security Division a completely different story.   A true and correct copy of the Plaintiff's request for Rehearing to NERC presented to Mr. Brown is attached hereto as Exhibit

"5".

33. Without elaborating, the EEOC accepted the conclusions and findings of NERC (and Mr

Brown), apparently dismissing Plaintiff's arguments. However, EEOC sent Plaintiff a right to

sue letter on August 24, 2015.  A true and correct copy of the Right to Sue Letter is attached

hereto as Exhibit "6".


### *Plaintiff's suffering After Defendants' Termination of Him*

34. Immediately after being terminated by Defendants in April 2014, Plaintiff suffered several

months of anxiety, inability to sleep, and inability to secure meaningful employment. Plaintiff

was on edge during this time, suffering through periods of feeling considerably down and,

sometimes edgy. Plaintiffs friends and family can attest to this.  Plaintiff was making, on

average, about $6000 per month when he was working for Defendants.  His income has still not,

yet, reached that point as of November 2015 -- 18 months later.

35. Plaintiff spent almost a year applying for jobs and working odd jobs before he was able to

even get a permanent part-time job in January 2015.  Said job only paid about half of his

previous income with Defendants.

### COUNT ONE - Race Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

36. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

37. Defendants engaged in unlawful employment practices at its Reno, Nevada location, in

violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1), by terminating or constructively terminating Mr. Walker because of race.

38. Defendants' decision to terminate Mr. Walker was based on race. Defendants fired Mr. Walker because he is an African American man, because he stated he will complain mistreatment by his supervisors , and/or because he did not conform to Defendants' race-based preferences, expectations, or stereotypes that an African American man should be treated differently than a non-Black (or non-African American man) and/or conduct himself in a more subservient, non-assertive, fashion.

39. The effect of Defendants' unlawful employment practices was to deprive Mr. Walker of equal employment opportunities and otherwise adversely affect his status as an employee, because of his race.

40. Defendants treated similarly situated employees of a different race different for the same conduct, and did not proceed with the same standards, procedures, or policies governing employee discipline, coaching, and termination, as they did with Plaintiff.

41. Defendants' unlawful employment practices were intentional and done with malice or with reckless indifference to Mr. Walker's rights under Title VII.

RELIEF REQUESTED

WHEREFORE, Named Plaintiff Walker,  requests of this Court the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, 42 U.S.C. §2000e et seq.;

b. A permanent injunction against Defendants and its officers, agents, successors, employees,

representatives, and any and all persons acting in concert with Defendants, prohibiting them from engaging in unlawful race discrimination against employees or applicants for employment, including on the basis of racial identity;

c. Back pay and front pay (including interest and benefits), and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

d. Compensatory and punitive damages;

e. Emotional Suffering Damage;

f. Reasonable attorneys' fees and all expenses and costs of this action;

g. Pre-judgment interest; and

h. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

This the __17__ day of November, 2015.

Respectfully submitted,

Terrance Walker

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct as I believe.

Signature, Notary                               DATED: __17__ day of November, 2015.



_____ Signature

Respectfully submitted,

Terrance Walker

561 Keystone Ave #158

Reno NV 89503

phone: 775-3971-8679

email: twalker@financeandimprove.com

### CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury in the United States that on November **17**, 2015, that he is 45 years of age and that he personally served all parties to this case by prepaid U S certified mail one copy of this filing to the parties at the addresses listed below Plaintiff will also serve by personal service of a governmental department authorized to make such service

_____ signed, Terrance Walker

Copy

Desiree D Peri

Dir & Counsel Labor and Empl

Charter Communications, Inc.

12405 Powerscourt Drive

St Louis, MO 63131

## EXHIBIT  NUMBER  "1"

## EMPLOYMENT SECURITY DIVISION´S ( OF NEVADA)

## DETERMINATION OF THE REASON FOR PLAINTIFF´S TERMINATION

## BY DEFENDANTS

## EXHIBIT  NUMBER  "1"

## EMPLOYMENT SECURITY DIVISION´S ( OF NEVADA)

## DETERMINATION OF THE REASON FOR PLAINTIFF´S TERMINATION

## BY DEFENDANTS




**Employment Security Division**
Adjudication Center
500 East Third Street
Carson City, NV 89713-0035
Tel (775) 684-0302 Fax (775) 684-0338
Tel (702) 486-7999 Fax (702) 486-7987

## DETR

Nevada Department of Employment,
Training and Rehabilitation

ONE NEVADA - Growing A Skilled, Diverse Workforce

995249
http://www.nvdetr.org

## Original

TERRANCE WALKER
1661 E 6TH ST # 248
RENO, NV 89512-3786

RE. CHARTER
    COMMUNICATIONS LLC
Claimant ID  4695376
Issue ID. 2747412
Week End Date  05/03/2014
Date Mailed  05/22/2014
Last Day to Appeal: 06/02/2014
Decision Date  05/21/2014

**\* See back of form for Appeal Rights
and other important information.**

**\*Vea el reverso de la hoja para
los derechos de apelación y otra
información importante.**

### DECISION

You are entitled to benefits from 04/27/2014, if otherwise eligible.

### REASON FOR DECISION

The employer reported that you were discharged for behaving in an unprofessional manner towards supervisors during a Zero Sales Calls. Your employer failed to provide supporting documentation to substantiate the behavior that led to the discharge. You were not available for your scheduled interview.

As your employer failed to establish that your behavior constituted an act of wrongfulness, the discharge is considered to be for reasons other than misconduct.

**Pertinent Section of Law:**

**NRS 612.385:** A person is ineligible for benefits if he was discharged from his last or next-to-last employment for misconduct connected with the work, and remains ineligible until he works in covered employment and earns his weekly benefit amount in each week up to 16 weeks.



Report suspected UI Fraud online at https://uifraud.nvdetr.org or
call (775) 684-0475

LET7712_118 0 0

## APPEAL RIGHTS

Notice: If you receive more than one decision, read each one carefully to protect your appeal rights. ANY ineligible decision will stop payment of this claim  Please read the following information carefully. If you disagree with this decision you have the right to file an appeal. The appeal must be faxed or postmarked by 06/02/2014. You may request an appeal date extension, if you did not file your appeal timely, however, you must show good cause for the delay in filing. You may appeal by writing a letter to the address shown at the top of the previous page  This appeal must include your reason for appealing, the employer name, your social security number and your signature. If an interpreter is needed, please include this request in the appeal letter. During the appeal process you must continue to file claims for any week you are unemployed to preserve any benefit rights that may be established as a result of the appeal  If your employer files an appeal, you should participate in the hearing to protect your rights. If you need additional information, please contact the telephone claims office.

An equal opportunity employer/program.
Auxiliary aids and services available upon request for individuals with disabilities
TTY (775) 687-5353 Relay 711 or (800) 326-6868

LET7712_118 0 0

## EXHIBIT  NUMBER  "2"

## PLAINTIFF´S INITIAL STATEMENTS PROVIDED TO NERC ON DEFENDANTS´ ACTIONS TOWARDS HIM

## EXHIBIT  NUMBER  "2"

## PLAINTIFF´S INITIAL STATEMENTS PROVIDED TO NERC ON DEFENDANTS´ ACTIONS TOWARDS HIM

**Terrance Walker, 1661 E. 6th St #248,  Reno NV 89512  (USA),  Phone: 775-971-8679**

RE· Crossfile complaint with the EEOC and NERC                    Date   April 25, 2014

I've been working as a direct sales representative for Charter Communications, Inc on 9335 Prototype Dr. Reno, NV 89521 since August 2013.  Three of the six full months that I worked for Charter (January and February I had vacation time off).  I was top sales rep in the area

For sales reps that had bad performance or violated a rule (or had incorrect conduct), they had a coaching the first time  Later, they were wrote up and, ultimately, were let go.  It was a multipronged process for each, as is policy  This happened to others, non-African American reps: Dana Smith, Denise, Jill (can't remember last names)  [Note  I had no disciplinary issues]

In about March 2014, one of the supervisors instituted a policy of having a daily conference called "the zero call"  Those calls transpired Monday through Friday  All reps with no sales the previous day had to be on the call and explain their failure to get a sale.

On April 23, 2014, I was on the "zero call" for not having a sale April 22, 2014.  A supervisor named Adrian was in charge of the call. When it came to my turn, he called my name on the call and began berating me.  He stated that I started working late the previous day and had been on the "zero call" everyday  His tone was assumptive and rude.  I asked him where he got his information  (Note:  earlier the previous day, I noticed my sales area was erroneously duplicative of an area I had worked 3 months prior and I was driving figuring that out)  I questioned him as to when I was supposed to work ("9am to 9pm?").  I asked what he was basing his other information on because I had not been on the "zero call" for two weeks. A fellow rep (Adam. phone number 775-771-1834) heard the dialogue.  My direct supervisor (Norma Perales) intervened on the call and told me that she was going to take the matter up "offline". She, then, called me directly and said I was being disrespectful. I told her I was "asking for clarification" from the other supervisor (Adrian) in defense of being disparaged. She said they were recommending corrective action for me. I told her I'll file a complaint.

Two days later I went to the office on Prototype Drive in Reno,  Norma Perales  told me to go to a room   We were joined by Adrian. My supervisor (Norma) told me that I was on paid suspension so hand in my stuff  I gave her everything and left  No paperwork was provided.

No other people, other than African Americans, are subject to such disparate treatment[1]  No multi-prong process applied in my case  It's evident that African Americans are the last hired and first disciplined/fired at Charter.  I've been retaliated against for stating I'll complain

signed, Terrance Walker

---

[1] Former employee Dana Smith (non-African American) told head supervisor Chris Larson "it amazes me how you holds[sic] the reps more accountable than your own managers " and faced no punishment (see attachment)

Terrance Walker, 1661 E. 6th St #248,  Reno NV 89512  (USA),  Phone: 775-971-8679

RE: Crossfile complaint with the EEOC and NERC                    Date:  April 30, 2014

Addendum:

On April 30, 2014, I had an appointment at 10AM to meet my supervisor (Norma Perales) and the Charter Communications local HR manager Mindi Brenner at 9335 Prototype Dr, Reno, NV.

They said they made a decision to move forward with termination.  I was given a sheet to sign which included two previous incidents which were merely described as "coaching" incidents I was supposed to have received on April 7th and April 8th.  I declined to sign the document since I had never been notified orally, or in writing, that I had/was receiving a coaching on said dates. I got my final payment information and left.

It appears they retroactively are trying to cover their tracks in regards to their treatment of me to make it seem as though I had issues in the past.

However, non-African American reps: Adam (phone number 775-771-1834) ,  Brandon  (phone number 775-200-8459), and Dana Smith (phone number  775-336-7544)  all told me that they were officially notified and/or received something in writing when they received "coachings" when they had them at the same Charter office.

Lastly, even according to their code of conduct (page 13, attached ) , I am supposed to voice concern over use of intimidation in violation of a positive work environment.  Charter is supposed to have an Open Door policy (page 4, attached ) concerning such.  Retaliation (page 5, attached ) is not supposed to be permitted in regards to such, as was in my case.

_____

signed, Terrance Walker

UPDATE:  Date May 2, 2014
I just found out that Adam Wagoner who is not African American also questioned Adrian Ybarra's berating on the call and did not receive a termination, but got wrote up.  He has my same direct supervisor (Norma Perales).  Also, the only other African American  sales rep (Dean Brown phone 775-815-4920) who worked with me is the only sales rep required to go into the office every morning to do his admin work.

I swear/affirm that the above is true and correct to the best of my knowledge and belief.

_____

signed, Terrance Walker

**Mike Kapetan**
735 Winston Dr
Reno NV 89512
Cell: 775-287-4527

June 25, 2014

Re: Corrective Actions process at Charter Communications

*[handwritten: Terrance Walker
NERC NO. 0529-14-0039R
EEOC NO 34B-2014-00666]*

Dear staff,

I am writing to address Corrective Actions process at Charter Communication.

I worked for Charter Communications Inc, 9335 Prototype Dr, Reno NV 89521 from February 2012 until November 2013 as a direct sales rep. My manager was Norma Perales.

While working at Charter, I got a corrective action warning which was verbally made clear to me prior to it being lodged in my personnel file and having me signing it.   This was in relation to me not having enough sales in a given month.  The policy made clear to me was that all corrective actions were to be made clear to me and discussed in-person, and signed  that day (or soon thereafter).

I have never recalled a corrective action notice being given someone to be signed weeks after the fact, while they are working at Charter day-to-day.

Mike Kapetan

New login(en) surveys! - Google Consumer Surveys, custom market resea

Next ▸

## Inbox

📝 New

↩ Reply     🗑 Trash     More ▾

Messages (59)

Invitations (1)

Sent

Archive

Trash

Search 🔍

### Re: RE: Re: RE: RE: Sales background in common

Dana Smith

April 25, 2014 4:21 PM

Hey bud, really sorry to hear that. All three of those so called managers are the worst excuse of a supervisor I have ever met. Extremely rude, always confrontational, disrespectful and annoying. I told Chris it amazes me how you holds the reps more accountable than your own managers. I am going to be putting together a professionally written email to the CEO.
I called Adrian a while back to ask for Mindi # at HR. He tells me hey I do not have to answer to you. Lol I said dude relax I asked you a simple question. Is it necessary for you to ask so rude???

address:
900 Jeanelle Drive
Carson City   NV 89703

Phone # 775-336-7544

EXHIBIT  NUMBER  "3"

PLAINTIFF´S RESPONSIVE STATEMENT TO NERC

EXHIBIT  NUMBER  "3"

PLAINTIFF´S RESPONSIVE STATEMENT TO NERC

**TERRANCE WALKER**
1661 E. 6ᵗʰ ST #248 ▯ Reno, NV 89512
Cell: 775-971-8679
walkerbillion@gmail.com

Re:  NERC No. 0529-14-0039R / EEOC 34B-2014-00666

Dec 19, 2014
Dear Richard Brown/Staff,

I am writing to address the Response by Charter Communications Inc  9335 Prototype Dr, Reno NV 89511
Page 13 on Charters code of Conduct, inter alia,  states  "As individual employees. we have the right to
expect a positive working environment. along with the responsibility to speak out and ask for change if we
observe conduct that runs contrary to this principle     By empowering employees to raise concerns and
openly discuss solutions, we believe we will succeed"  (see attached)

As I have initially stated (and continually state), I was questioning the negative actions and tone by the
supervisors on the "zero sales call"  I wasn t disrespectful or 'angry'  It was the supervisors who were
angry that  I was questioning them  They have a pattern and practice of belittling employees and expect
them to say nothing (See statement of Dana Smith with his contact info, attached)  Norma's
supervisor(Chris) has even recently suffered a job change because of the negativity he is responsible for on
zero sales calls  In fact. it was the false insinuation that I started late (and had been on the call everyday)
which was disrespectful and untrue  I was checking the territory out the previous morning that Norma
Perales mistakenly gave me.  She gave me a duplicate sales territory  I had had that territory only a few
months before  We are supposed to wait a whole year before working a territory  Thus. it is her fault I was
not logging addresses into a company tablet to track that I was working  I'm not supposed to work and log
addresses in a duplicate area   Also, by challenging the falsehoods levied against me and suggesting that
maybe we should all get twice as many homes to sell to in a given month, I was simply abiding by policy to
"speak out and ask for change" and "openly discuss solutions".

Questioning negative behavior and treatment by others (including supervisors) is company policy  After I got
unemployment, Charter's grounds for terminating me keep changing  The Unemployment division found
Charter's claims in regards to firing me, unsubstantiated ( See attached) In fact. Norma Perales has,
belatedly. been making up all kinds of stories to justify her termination of me  In about Sept 2014, Norma
told Dean Browne (whose previous witness statement --with contact info -- is attached) that I had cussed at
her  Now, she is telling NERC that I told her to "kiss my butt" -- an outright lie  It's telling that NONE OF
THIS was mentioned as a grounds for termination in the actual official company paperwork which was
presented to me or paperwork submitted to the Unemployment division  This is grounds for discrediting
Norma Perales and Charter

I was clearly treated different than similarly-situated, but white, employees  Adam Wagoner (whose
statement -with contact info-is attached ), who likewise questioned the treatment of employees on the
zero-sales call was NOT fired and was NOT even wrote up   His write-up was cancelled  Mike Kapetan
(whose statement -with contact info-is attached ) states that employees are typically given several write ups
before being fired  Even the white person allegedly fired for cussing(far worse) on a call  had other write
ups  Because I am African-American, I was not given any gradual steps of being written-up - nor was I even
given a written explanation - I was simply fired  These contrasting treatments evidence a prima facie case.

Regards, (

Terrance Walker

**Adam Wagoner**
16310 Energite Cir Reno, NV 89521
Cell: 775-771-1834

**Re: Terrance Walker**

June 19, 2014

To whom it may concern,

I worked at Charter Communications Inc 9335 Prototype Dr Reno, NV 89521 since  December 2013, as a direct sales rep, had the same manager as Terrance Walker (Norma Perales), and :

1) I heard manager Adrian Ybarra say "You started late, yesterday" and "you're on this call everyday"  to Terrance Walker on the "zero call" on about April 23, 2014. Terrance Walker only said to him "what do you want me to do, work 9AM to 9PM" and "I haven't been on this call for two weeks"

2)  Adrian Ybarra said to me on the same call on April 23,2014 " Stated "why were you late to the field". I stated in response that I obviously was helping a current customer that I had to follow up with.

3) I was  presented with a "write up" on April 25, 2014 for my supposed statements about the call to other direct sales reps and how I was being a "Dark cloud of Negativity" ( Norma Perales)  about the call. That "write up" was cancelled by Norma Perales.

Regards,

Adam Wagoner

June 16, 2014
3054 Myles Dr , Sparks, NV 89434
Cell: 775-815-4920

I have worked at Charter Communications Inc 9335 Prototype Dr Reno, NV 89521 since about Sept. 2013.  I am an African American direct sales rep there, and :

1) I heard Adrian Ybarra say that he can't wait until he can make someone else mad after the incidents on the "zero call" shortly after Terrance Walker's suspension on April 25, 2013 and in reference to Terrance Walker and Adam Wagoner.

2) I was forced by my manager to go into the office daily for about 1 month up until May 2014 because of supposedly not updating mileage.  Other employees were not doing the same thing but they were not made to go into the office like me.

Dean  Browne

## EXHIBIT  NUMBER  "4"

## NERC´S FINDINGS AND CONCLUSIONS

## EXHIBIT  NUMBER  "4"

## NERC´S FINDINGS AND CONCLUSIONS



NEVADA EQUAL RIGHTS
COMMISSION

**Nevada Department of Employment,
Training and Rehabilitation**

BRIAN SANDOVAL
Governor

DON SODERBERG
Director

KARA M. JENKINS
Administrator

June 12, 2015

Terrance Walker
212 Hillcrest Dr. #1
Reno, NV 89509

RE:     Terrance Walker vs Charter Communications
        NERC No. 0529-14-0039R EEOC No. 34B-2014-00666

Dear Mr. Walker:

The Nevada Equal Rights Commission (NERC) has completed the investigation of your
Charge of Discrimination.  NERC carefully reviewed and analyzed the evidence you
submitted, evidence from the Respondent, and evidence obtained by independent
investigation.

Let me first explain that the NERC is a neutral, fact-finding agency.  We do not represent
you or the Respondent in the course of our investigation.  Rather, we conduct an
independent investigation into your allegations of discrimination.  The investigation must
uncover sufficient evidence to prove that the incidents, conduct, or acts of harm that were
alleged in your Charge, are a violation of the law within the jurisdiction of NERC.

After consideration of all the relevant evidence, NERC has found that the evidence does
*not* meet the legal standard to determine that a violation has occurred.  This finding does
not mean that the acts you alleged did not occur, but rather that they do not constitute a
violation of law enforced by NERC.

## FINDING SUMMARY

You alleged in your charge of discrimination that the Respondent discriminated against
you on the basis of your race (Black). You indicated that you worked for the Respondent
from August 20, 2013 through April 25, 2014 as a Direct Sales Representative. You
indicated that you questioned management on April 23, 2014 during a "zero sales call"
and the Respondent believed that you were being rude when in fact you were only asking
for clarification. You indicated that you were placed on paid suspension on April 25,
2014 and on April 30, 2014 you were discharged. You alleged that the reason given for
your discharge was pretext for race based discrimination as White employees who did not
produce as much as you would get away with far worse behavior than you without being
discharged.

1

The Respondent denied the allegations of discrimination. The Respondent claimed that they did not discriminate against you on the basis of your race. The Respondent maintained that the reason for your discharge was for your inappropriate attitude toward your supervisor.

In order to establish a claim that you were discharged based on a protected category the following elements must be met: you belong to a protected category; you were discharged; others similarly situated but outside your protected category were not discharged during the relevant time period; the Respondent cannot explain the difference in treatment or the explanation is pretext for discrimination.

The evidence obtained by the Commission during its investigation did not support that you were discharged on the basis of your race. While evidence supported that you were discharged, the majority of employees discharged during the relevant time period were outside your protected category. Furthermore the evidence suggested that the reason for your discharge was not because of your race but rather because you questioned management during a zero sales call in which other employees were present. Lastly, while the evidence indicated that you were discharged for reasons other than misconduct, there was not sufficient evidence to suggest that your race was a motivating factor in the Respondent's decision to discharge you.

Attempts were made to contact your witnesses during the investigation. While the Commission cannot disclose whether or not successful contact was made or what information they provided, per NRS 233.190, there was insufficient evidence to support your allegations of discrimination.

As there was not sufficient evidence to suggest that the Respondent discharged you on the basis of race, the Commission is issuing a **No Probable Cause** finding in this matter.

In arriving at this decision, the NERC has made no determination about any other aspect of this case, nor has NERC endorsed or approved any of the actions of the Respondent.

You have the right to appeal the decision by requesting a petition for reconsideration by this agency. Such a request to NERC must be in writing, state the specific grounds for the request, and must be submitted to NERC within fifteen (15) days from the date of this letter. This time limit will be strictly observed.

Thank you for the patience and cooperation you have given NERC during your case investigation and processing.

Sincerely,

Richard Brown
Compliance Investigator II

## EXHIBIT  NUMBER  "5"


## PLAINTIFF´S REQUEST FOR REHEARING WITH NERC

## EXHIBIT  NUMBER  "5"


## PLAINTIFF´S REQUEST FOR REHEARING WITH NERC

**TERRANCE WALKER**

212 Hillcrest Dr #1  Reno, NV 89509
Cell: 775-971-8679
walkerbillion@gmail.com

Re:  NERC No. 0529-14-0039R / EEOC 34B-2014-00666
June 15, 2015
To  NERC, 1325 Corporate Blvd, Rm 115, Reno, NV 89502
**Request for Petition of Reconsideration**

I am writing in response to your letter dated June 12, 2015 which found "no probable cause" in discrimination  I am hereby appealing your adverse determination and requesting a petition for reconsideration pursuant to  NAC 233.090  due to the application of the incorrect legal standards and lack of consideration of the evidence in this agency's findings

**Legal Standards of discrimination in employment**

"Federal law prohibits discharging any individual because of his race, color, religion, sex, or national origin 42 U.S C § 2000e-2  In order to establish a prima facie case of discrimination  a plaintiff must show (1) that he belongs to a protected class, (2) he was qualified for the position  (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *See. e g. McDonnell Douglas Corp. v Green*  411 U S  792, 802, 93 S.Ct  1817, 36 L Ed.2d 668(1973)  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision  *Id*  "  See Leong v  Potter. 347 F 3d 1117 (9th Cir  2003)

An employer cannot use a complainant's conduct as a pretext for the sort of discrimination prohibited *McDonnell Douglas.* 411 U S  at 804

**My Case against Charter**
  A.  **A "majority" of similarly-situated people of a different race treated differently is not required as proof for a racially-motivated termination.  One or two similarly situated people suffice in establishing discrimination.**

In the agency's finding, it pointed to "the *majority* of employees discharged during the relevant period" as evidence of non-discrimination  This is not the correct legal standard  A '*majority*' is not required

In fact,  "If a plaintiff can make a prima facie case by finding just **one or two** [comparably situated majority group] workers who were treated worse than she, she should have to show that they really are comparable to her in every respect " Crawford v. Indiana Harbor Belt Railroad Co , 461 F 3d 844, 846 (7th Cir. 2006) ( bold and underlining added)(note: sex discrimination case. Yet, "one or two" is applicable in this "race" case]

**B. Charter's treatment of similarly-situated Adam Wagoner and Mike Kapetan evidence a prima facie case in this matter.**

" ..a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained" Nix v WLCY Radio/Rahall Commc'ns, 738 F 2d 1181, 1185 (11th Cir 1984)

Adam Wagoner was called by the investigator in this matter   He represented in documents in this matter and to this agency's investigator  that he was similarly-situated (worked as a sales rep for Charter)  BUT is "WHITE"  Adam Wagoner also told the investigator that he questioned his treatment on the same zero-sales call  Adam was also accused of "unprofessional conduct".  Yet, Mr Wagoner was NOT fired and was NOT given a formal write up for his "attitude".  His write-up was cancelled  Mike Kapetan (whose evidence was also presented) stated that employees are typically given several write ups before being fired   Charter offered no justification for treating myself, an African American, different than Adam Wagoner on this SAME zero-call or differently concerning "write ups"

These contrasting treatments evidence a prima facie case   A prima facie case is by definition *more* than "insufficient" evidence   Thus, the correct legal standard was not applied by the investigation of NERC (who found "insufficient" evidence)

**C. All I had to show was that Charter's treatment of similarly-situated Adam Wagoner was different and, thus, my firing was pretextual and not justified.  NERC should make findings on this.**

Charter had only represented that "unprofessional conduct" was the only reason for my termination  (See April 30, 2014 termination document)  Charter has NOW told investigators that an "inappropriate attitude toward [my] supervisor" was the cause for my termination

These are not a "legitimate, nondiscriminatory" reason  Texas Dep't of Cmty Affairs v Burdine 450 U.S 248,253, 101 S Ct 1089. 67 L Ed 2d 207 (1981), Leong v Potter Id .   A different reason cannot be used now "legitimately"    Applying different disciplinary tactics for similar offenses raises pretext Nguyen v. AK Steel Corp , 735 F Supp 2d 346, 374-75 (W D Pa. 2010) (in termination for theft)  Put succintly, firing myself and not firing Adam Wagoner for the same "unprofessional conduct" on the same zero sales call is evidence of pretext and not a sufficient justification   see McDonnell v Douglas, 411 U S  at 804 ("Especially relevant" to a showing of pretext "would be evidence that white employees involved in acts against petitioner of comparable seriousness    " ), Vasquez v  Co  of Los Angeles, 349 F3d 634, 641 (9th Cir2003)

Also, offering up after-the-fact that it was "attitude" and not "unprofessional conduct" (as originally asserted), is, by law, evidence of Charter's pretextual reasons  see also Ritter v  Hughes Aircraft, 58 F 3d 454, 459 (9th Cir 1995) (explaining that an inference of pretext arises "where an employer simultaneously offer[s] two distinct and arguably inconsistent reasons for an employee's discharge") See Texas Dep't of Community Affairs v Burdine, 450 U S  248  255 n 10 (1981) (Initial "evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual") Neither, does "attitude' and "unprofessional conduct" (Charter's termination reason(s)) suffice as for Charter's legal requirement to "articulate a legitimate, nondiscriminatory reason"  These allegations are too vague and conclusory to suffice for an 'articulate[d]' reason

Also, comments (by Charter) long after termination are too far removed in time to be factored into evidence Scott v  Suncoast Beverage Sales, Ltd , 295 F 3d 1223, 89 FEP 472 (11th Cir  2002) (holding that employer's comments 1 ½ year divorced from termination date were too far removed)  There is no temporal proximity to their late pretextual "reasons" for termination

I have raised genuine issues of material fact as to whether I actually violated any company policy and whether Charter believed in good faith that I had done so. *See Rachid*  376 F 3d at 315, *Walker v. Fred Nesbit Distrib* , 3.5 : F S. pp 2.1 : 3.0, 788 (S D Iowa 2004). "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated " *Reeves v  Sanderson Plumbing Prods  Inc* , 530 U.S. at 146-48, 120 S Ct  2097)  My evidence would be sufficient to go to a federal court trial on this issue, let alone satisfy a lower standard of "probable cause" by NERC

In sum. NERC applied an incorrect legal standard in  accepting Charter's after-the-fact justification for my termination.  It was also legally incorrect for NERC to dismiss claims that "race" was not the "motivating" factor, especially when Charter has not  offered up ANY reason why Adam Wagoner was not fired for similar 'conduct" and has only set forth vague, conclusory, and inarticulate grounds for my termination  [note: written evidence provided by me from Adam --of which I already know of -- is not confidential  Adam's statement was already provided to me and I supplied it to the commission  Thus, Adam's statement can (and should be) provided to me AND should be mentioned in the analysis  NRS 233.190 (2)(b) states it can be provided "*any person who provided information*" to the Commission during the investigation"]

## CONCLUSION

I have established all that I am required to by law  (1) that he belongs to a protected class. (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably  Thus, NERC should reverse it's finding of "no probable cause" and issue me a right to sue letter

Regards._____Terrance Walker

## EXHIBIT  NUMBER  "6"


## RIGHT TO SUE LETTER FROM THE EEOC

## EXHIBIT  NUMBER  "6"


## RIGHT TO SUE LETTER FROM THE EEOC

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Terrance Walker<br>212 Hillcrest Dr. # 1<br>Reno, NV 89509 | From: Los Angeles District Office<br>255 E. Temple St. 4th Floor<br><br>Los Angeles, CA 90012 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 34B-2014-00666 | Karrie L. Maeda,<br>State & Local Coordinator | (213) 894-1100 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form )*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Sandra A. Adame_                                    August 24, 2015

Rosa M. Viramontes,
District Director                                    *(Date Mailed)*

Enclosures(s)

cc:    Desiree D. Peri
       Dir. & Counsel Labor & Empl.
       CHARTER COMMUNICATIONS, INC.
       12405 Powerscourt Drive
       Saint Louis, MO 63131