LAW OFFICE OF JEFFREY D. FULTON
Jeffrey D. Fulton, *pro hac* vice
2150 River Plaza Drive, Suite 260
Sacramento, CA  95833
Telephone:    (916) 993-4900
Facsimile:    (916) 441-5575
Email:        JFulton@JFultonLaw.com

WEINTRAUB TOBIN
Brendan J. Begley, *pro hac vice*
400 Capitol Mall, 11th Floor
Sacramento, CA  95814
Telephone:    (916) 558-6000
Facsimile:    (916) 446-1611
Email:  bbegley@weintraub.com

Attorney for Plaintiff
TERRANCE WALKER

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE WALKER,<br><br>                    Plaintiff,<br><br>          v.<br><br>CHARTER COMMUNICATIONS LLC.,<br><br>                    Defendants. | CASE NO. 3:15-cv-0556-RCJ-CBC<br><br>PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59 AND FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date:    November 4, 2019<br>Judge:         Robert C. Jones<br>Judgment Filed:  December 23, 2019 |

PLEASE TAKE NOTICE that, as soon as is convenient to the Court so that counsel may be heard before the Honorable Robert C. Jones, Plaintiff Terrance Walker ("Plaintiff") will and hereby does move for an Order granting a motion for a new trial or, in the alternative, relief from judgment in favor of Defendants Charter Communications, Inc. and Charter

---

{2793103.DOCX;}                                           1

weintraub tobin chediak coleman grodin
law corporation

Communications, LLC (collectively, "Defendants").  This Motion is and will be based on the grounds that erroneous evidentiary rulings and erroneous jury instructions were entered and given at trial that cannot be shown to be more likely harmless than not, and that Defendants engaged in fraud, misrepresentation, or misconduct in contradicting their prior position that Plaintiff's employment was not terminated on the basis of any events from 2013. This Motion is and will be made pursuant to Rules 59 and 60(b) of the Federal Rules of Civil Procedure and Local Rules 7-2 and 7-3. This Motion is and will be based upon this Notice of Motion and Motion for a New Trial or, in the alternative, for Relief from Judgment, the accompanying Declaration of Brendan J. Begley and the exhibits attached thereto, the complete files and records in this action, and upon such oral argument as may be made by counsel and/or the parties during the hearing on this Motion.

Dated:  January 21, 2019

WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
Law Corporation

By:     /s/ Brendan J. Begley
        Brendan J. Begley, SBN 202563

Attorneys for Plaintiff TERRANCE WALKER

weintraub tobin chediak coleman grodin
law corporation

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................3

I.     Introduction..................................................................................................................3

II.    Statement of the Case ................................................................................................3

III.   The Court Should Order a New Trial Due to Erroneous Evidentiary Rulings and Erroneous Jury Instructions, which Cannot Be Shown to Be More Likely Harmless than Not. ..................................................................................................................10

       A.   The Court improperly admitted an irrelevant and unduly prejudicial emails from Mr. Walker to opposing counsel, sent more than four years after his termination. ....................................................................................................11

            1.   The emails were inadmissible as character or credibility evidence................12

            2.   The emails were inadmissible as impeachment evidence. ...........................14

            3.   The emails are irrelevant and unfairly prejudicial. .....................................16

       B.   The Court improperly instructed the jury regarding the inadmissible email...........18

       C.   The Court erred by refusing to admit evidence of an administrative ruling finding Mr. Walker committed no misconduct. ................................................20

IV.    The Court Should Grant Mr. Walker Relief From Judgment Due To Charter's Fraud, Misrepresentation, Or Misconduct In Contradicting Its Prior Position That Mr. Walker Was Not Terminated Based On Any Events From 2013. ...........................................22

V.     CONCLUSION ......................................................................................................25

TABLE OF AUTHORITIES

**<u>Cases</u>**

*Abatti v. Comm'r*, 859 F.2d 115 (9th Cir. 1988) ............................................................... 25

*Altman v. New Pub. Sch. Dist.*, 2017 U.S.Dist.LEXIS 2515, at *30
   (S.D.N.Y. Jan. 6, 2017) ................................................................................... 17

*Baldwin v. Rice*, 144 F.R.D. 102 (E.D. Cal. 1992) .......................................................... 21

*Barfield v. Orange County*, 911 F.2d 644 (11th Cir. 1990).......................................... 21, 22

*Catipovic v. Turley*, 68 F.Supp.3d 983 (8th cir 2014)...................................................... 17

*Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009) ............................................................... 20

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005) ...................................................... 10, 18, 19

*Deffenbaugh- Williams v. Wal-Mart Stores*, 156 F.3d 581 (5th Cir. 1998) ........................ 24

*Dixon v. C.I.R.*, 316 F.3d 1041 (9th Cir.2003)................................................................ 25

*Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309 (9th Cir. 1984) ................................ 20

*Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243 (4th Cir. 2015) ................................. 24

*Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488 (9th Cir. 1986) .............................. 21

*Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995) ........................................................ 21, 22

*In re Dellinger,* 461 F.2d 389 (7th Cir. 1972) ............................................................. 4, 17

*Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448 (6th Cir. 2008)................................. 23

*Johnson v. City of Pleasanton,* 982 F.2d 350 (9th Cir 1992) ........................................... 22

*Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987) ................... 11

*Lyda v. United States*, 321 F.2d 788 ............................................................................. 13

*Murphy v. Long Beach*, 914 F.2d 183 (9th Cir. 1990) ............................................... 10, 11

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) ...................................................... 10, 18

*Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502 (9th Cir. 1981)................................... 21

*Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323 (9th Cir. 1995) ...................................... 18

*Salinas Valley Broad. Corp. v. NLRB*, 334 F.2d 604 (9th Cir.1964) .................................. 21

*Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011) ........................................ 10, 18, 19

*Shimko v. Guenther*, 505 F.3d 987 (9th Cir. 2007) ........................................................ 23

weintraub tobin **chediak coleman grodin**
law corporation

*Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001) ................................................. 18

*Toscano v. Commissioner,* 441 F.2d 930 (9th Cir. 1971)....................................................... 23

*United States v. Beverly*, 5 F.3d 633 (2d Cir. 1993)............................................................. 14

*United States v. Estate of Stonehill*, 660 F.3d 415 (9th Cir. 2011) ....................................... 25

*United States v. Heard,* 709 F.3d 413 (5th Cir. 2013) ........................................................ 20

*United States v. Mixon*, No. CR-14-00631-001-TUC-JGZ,

     2015 U.S. Dist. LEXIS 195403, at *6 (D. Ariz. Dec. 10, 2015) ....................................... 12

*United States v. Pantone*, 609 F.2d 675 (3d Cir. 1979) ...................................................... 14

*United States v. Ramirez*, 609 F.3d 495 (2d Cir. 2010)....................................................... 14

*United States v. Warren*, 984 F.2d 325 (9th Cir. 1993)....................................................... 18

*Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322 (Fed. Cir. 2006)........................... 23

*Walder v. United States*, 347 U.S. 62 (1954) .................................................................... 14

*Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir. 1990) ........................................................... 16

*White v. Ford Motor Co.*, 312 F.3d 998 (9th Cir. 2002)...................................................... 18

*Xin Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003) ..................................................... 16

*Yazdian v. ConMed Endoscopic Techs., Inc.,* 793 F.3d 634 (6th Cir. 2015) ......................... 16

*Zhang v. Zhang*, 2019 U.S. Dist. LEXIS 24372, at *15 (S.D.N.Y. Feb. 14, 2019) ............... 13

**<u>Rules</u>**

Fed. R. Civ. P. 6 ................................................................................................................ 3

Fed. R. Civ. P. 59 ..................................................................................................... 3, 10, 23

Fed. R. Civ. P. 60 ..................................................................................................... 3, 22, 23

Fed. R. Evid. 401................................................................................................................ 16

Fed. R. Evid. 403................................................................................................................ 16

Fed. R. Evid. 404......................................................................................................... 12, 14, 19

Fed. R. Evid. 405................................................................................................................ 12

Fed. R. Evid. 607................................................................................................................ 12

Fed. R. Evid. 608................................................................................................... *passim*

Fed. R. Evid. 609................................................................................................................ 12

weintraub tobin chediak coleman grodin
law corporation

**<u>Other Authorities</u>**

12 Moore's Federal Practice § 60.43[1][b] (3d ed. 1999) .................................................. 23

*McCormick on Evidence* § 60, at 137 (2d ed. 1972) ....................................................... 18

*Moore's Federal Practice* ¶ 61.07[2-3] (2d ed. 1982) ....................................................... 18

Timothy Tyson, *The Blood of Emmett Till* (2017 ................................................................. 11

"White Fragility," 3 *International Journal of Critical Pedagogy* 3:54, 64 (2011) ................... 11

Pl.'s Mot. for New Trial under FRCP 59 and for Relief
from Judgment under FRCP 60(b)(3); Mem. P. & A.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    Introduction

After a jury trial that reached a verdict in early November 2019, this Court issued its judgment in favor of defendants Charter Communications, Inc., and Charter Communications, LLC, (collectively "Charter") and against plaintiff Terrance Walker on December 23, 2019. ECF No. 257.  By a straight application of Rule 59(b) of the Federal Rules of Civil Procedure, the deadline to file a post-judgment motion such as this would expire 28 days from then, on January 20, 2020.  However, it is a significant coincidence in a case such as this – which involves claims of racial discrimination and concerns about racial tropes and the inappropriate injection of racially charged hyperbole and racial prejudices – that the aforementioned deadline would fall on the day set aside as a federal holiday to celebrate the birthday of civil-rights champion The Rev. Dr. Martin Luther King, Jr.  Fed. R. Civ. P. 6(a)((6).  Accordingly, this motion is being timely filed the following day.  Fed. R. Civ. P. 6(a)(1)(C).

As explained herein, the Court should order a new trial in this case due to erroneous evidentiary rulings and erroneous jury instructions that cannot be shown to be more likely harmless than not.  Fed. R. Civ. P. 59.  Moreover, the Court should grant Mr. Walker relief from judgment due to Charter's fraud, misrepresentation, or misconduct in contradicting its prior position that Mr. Walker was not terminated based on any events from 2013.  Fed. R. Civ. P. 60(b).

## II.    Statement of the Case

Mr. Walker is an African-American man who was employed by Charter from August 26, 2013, to April 29, 2014. *See* ECF No. 255 at 9 [Stipulations of Fact]. Mr. Walker claimed that Charter terminated his employment because of his race, while Charter denied Mr. Walker's claim and contended that it terminated Mr. Walker' employment for legitimate, non-discriminatory reasons. *Id.* at 15. This case was tried on November 4–6, 2019, with the all-white jury returning a defense verdict. *See* ECF Nos. 245–247; Decl. of Brendan Begley ("Begley Decl.") at ¶ 2.

{2793103.DOCX;}                                    3

Pl.'s Mot. for New Trial under FRCP 59 and for Relief
from Judgment under FRCP 60(b)(3); Mem. P. & A.

A special point of contention at trial was the introduction of two emails containing racially charged language, sent by Mr. Walker to an antagonistic opposing counsel (who is a Caucasian woman) on January 19 and February 13, 2019 – many years after Charter terminated Mr. Walker's employment. *See* Begley Decl. at ¶ 3 and Exh. A attached thereto (Transcript of Testimony of Terrance Walker ("Walker Transcript") at 113:15–115:5), Exh B. attached thereto (Transcript of Motion for Mistrial ("Mot. for Mistrial Transcript")), and Exh. C attached thereto (Partial Transcript of Settling Jury Instructions ("Jury Instruction Transcript")).

These emails, admitted as defense exhibits 526 and 527, discussed the issues of white supremacy and historical atrocities committed against black men when white women fabricated against them accusations of rape, as well as the inflammatory term "white fragility." Begley Decl. at ¶ 3 and Exh. E attached thereto.  Clearly, such inflammatory issues were sure to discomfort the all-white jury, put them on the defensive, and impact their consideration of Mr. Walker's claims that he had been racially discriminated against. Walker Transcript at 116:16–22, 117:7–11, 117:24–118:2, 119:2–9, 167:8–11; *see also* footnotes 1 and 2, *infra*.

As Mr. Walker explained, he felt opposing counsel had been mischaracterizing his emails and Charter workplace conduct to the Court to make him seem like a dangerous, angry black man—the same sort of fabrication and the same pernicious stereotype that led to Emmett Till's lynching. *See* Walker Transcript at 162:11–22. In any event, these emails were sent more than four years after Charter terminated Mr. Walker's employment; additionally, they were sent in the context of a lawsuit where Mr. Walker was representing himself against experienced lawyers for an enormous corporate client, not in the context of a subordinate employee to a supervisor in an employment or workplace setting. *See* Walker Transcript at 161:10–163:3.

Of course, representation of one's self in litigation against a co-equal advocate sometimes may require zealous advocacy and hyperbole that might go beyond what would be appropriate for a subordinate to a supervisor in a workplace setting, and the two contexts are entirely different. Unlike in a typical workplace, "[a]ttorneys have a right to be persistent, vociferous, **contentious**, and imposing, even to the point of **appearing obnoxious** when acting in their client's behalf." *In re Dellinger,* 461 F.2d 389, 400 (7th Cir. 1972) (emphasis added).

weintraub tobin **chediak coleman grodin**
law corporation

Thus, these emails were irrelevant character evidence that could only prejudice or inflame the passions of the jury and lead to an undue waste of time to determine if they were an appropriate or measured response to the antagonism of opposing counsel.

The reasons argued by Charter and given by the Court for admitting the emails changed throughout the trial. *Compare* Walker Transcript at 114:15–18 (stating that "the plaintiff has raised the issue of character or propensity for assertive or nonassertive conduct, and therefore I have to let [them] rebut it"), *with* Mot. for Mistrial Transcript at 2:24–3:2 ("You talked, both in your opening statement and in questions to Mr. Walker about his normal disposition to act in a very calm manner, so he -- I had to let him open up that line of inquiry."), *and* Jury Instruction Transcript at 1:1–2 ("I probably used that term [(character)], and that was wrong."), *and* Jury Instruction Transcript at 4:20–24 ("You know the main merit issue, the factual issue that you're addressing, is whether or not he raised his voice or acted in an unprofessional manner. They do have to decide that factual issue as a predicate to determining whether there was sole or motivating factor."), *and* Jury Instruction Transcript at 5:4–7 ("But the only reason we let in 40[4] evidence in that regard is as to Mr. Walker's credibility. When he makes the statement, 'I'm always professional, I don't raise my voice,' I have to let the jury decide that question."), *and* Jury Instruction Transcript at 5:19–21 ("It's not -- it doesn't go to character, it just goes to credibility with respect to his testimony on his propensity for calm, professional demeanor."); *see also* Walker Transcript at 168:14–17 ("This is a side issue, and the only issue here at all is Mr. Walker's discourse with opposing counsel. It doesn't bear on the actual merits of the case, just on the question of character."); Jury Instruction Transcript at 9:7–12 (counsel for Charter arguing: "And I want to be clear we did not offer the evidence to prove character, including to prove character for truthfulness, which is what 608(b) applies to. This was specifically to impeach his claims that he always communicates professionally, that he does not communicate aggressively but only very assertively").

The whole line of inquiry kicked off with specific questions during direct examination of Mr. Walker about how he reported issues about his employment, what he had been told about his behavior at Charter, and how he acted at Charter:

**weintraub tobin chediak coleman grodin** law corporation

Q Is it your style to -- when you're reporting issues about your employment, to be aggressive or angry when you do that?

A Well, my style is assertive. I don't know about the character of angry or aggressive, but, you know, I'm very assertive because, you know, as a former business owner, I do realize you have to be on top of things to make things run smoothly.

. . .

Q Had anybody told you that you had behaved unprofessionally in the workplace?

A No, they hadn't.

Q Anybody told you that you had acted in an angry or aggressive manner?

A No, they hadn't.

Q Did you ever act in an angry or aggressive manner at work?

A No, I kept it professional.

Walker Transcript at 30:8–12; 83:7–15.

Later, Mr. Walker clarified, again referring to specifically how he made his concerns know to Charter management:

Q We talked yesterday about you -- you testified that you were assertive when you made your concerns known to management. What did you mean by that?

A Well, the regular standard definition of assertive, as I understand it, is being able to assert one's rights comfortably without, you know, affecting others.

Walker Transcript at 112:19–24.

On cross-examination, Charter's counsel reminded Mr. Walker of his prior comments about how he made his concerns known to Charter management, but then vaguely transitioned to a broader statement, then quickly jumped to the emails:

Q All right. You were talking there at the end about kind of the distinction between assertive and something more than assertive, right?

A I was just giving the definition of assertive.

Q And yesterday, though, you distinguished between being very assertive and aggressive or angry, right?

A Well, I didn't distinguish, I just said that I consider myself assertive.

Q You said you were very assertive yesterday, right?

A I don't remember saying anything like that, no.

Q And would you contend that you're always professional in your communications.

weintraub tobin chediak coleman grodin
law corporation

A Yeah, I do.

Q So do you remember Katherine McGuigan, my partner?

A Yes, I do.

Q Was it professional when you told her not to scream rape like a typical racist white lady?

Walker Transcript at 113:15–21.

Mr. Walker's attorneys immediately objected on the ground that the emails were improper character evidence, to which the Court responded by instructing the jury that it was permissible character evidence:

> MR. FULTON: Your Honor, I just would like to renew the objection with respect to the motion in limine that on the first day of trial with respect to 404 evidence.
>
> THE COURT: I have to overrule that. You – the plaintiff has raised the issue of character or propensity for assertive or nonassertive conduct, and therefore I have to let him rebut it. So I'm going to overrule that on that issue, you know, not on all 404 evidence.
>
> That means, ladies and gentlemen, we don't take evidence that you didn't like your dog yesterday and so you whipped him in a trial on some other issue. That's what 404 evidence is.
>
> So in this case plaintiff has raised the issue that he has a peaceful nature, and that's appropriate, but I have to let the other side counter that. So on that limited area of character, you may question.

Walker Transcript at 114:12–115:2.

Mr. Walker's attorneys also made a motion for a mistrial on the same ground after Mr. Walker's testimony:

> MR. FULTON: Thank you. So, your Honor, with respect to Exhibit 526 and 527, I know I've made my objections, and I'm not trying to belabor point, but I believe what we now have is some extremely inflammatory material that has been dropped into the trial that are communications between counsel, essentially, because Mr. Walker was acting as counsel, that occurred five years after the termination of his employment, and the jury has been instructed that they are to consider that as to Mr. Walker's character which I think is completely improper, and at this point I would move for a mistrial.
>
> THE COURT: I'll overrule that, but I will give an additional caution to the jury when they come back in that colloquy between Mr. Walker and opposing counsel was a side issue. I'm going to emphasize that, and it was only permitted because you opened the door.
>
> You talked, both in your opening statement and in questions to Mr. Walker about his normal disposition to act in a very calm manner, so he -- I had to let him open up that line of inquiry.
>
> But I am going to give them an extra caution.

weintraub tobin chediak coleman grodin
law corporation

Mot. for Mistrial Transcript at 2:8–3:2.

Finally, while settling jury instructions, Mr. Walker's attorneys renewed their objections to the improper character evidence, objected that the emails were improper extrinsic evidence of specific instances of conduct under Federal Rule of Evidence 608, and reiterated to the Court that the model instruction on impeachment was insufficient to cure the evidentiary and instructional errors:

MR. BEGLEY: So, your Honor, if I may address that, thank you, that's exactly the issue I wanted to get to. I understood your Honor to say yesterday twice in instructing the jury, and perhaps you misspoke, but I understood you to say that they couldn't consider it for anything other than character which --

THE COURT: I probably used that term, and that was wrong.

. . .

So I think you've got an instruction that covers it, especially if I supplement, to make clear that it's only credibility we're talking about.

You know the main merit issue, the factual issue that you're addressing, is whether or not he raised his voice or acted in an unprofessional manner. They do have to decide that factual issue as a predicate to determining whether there was sole or motivating factor.

That's what I was making reference to, character for calm demeanor. You raised that issue in opening argument, you raised it in questioning Mr. Walker, so I had to let them defend against that, and that's the reason I allowed it in.

But the only reason we let in 402 evidence in that regard is as to Mr. Walker's credibility. When he makes the statement, "I'm always professional, I don't raise my voice," I have to let the jury decide that question.

And so it's for that reason that I had to let it come in, but it certainly warrants a very clear statement to the jury that the only reason why that is to be considered by you at all is on the question of credibility of Mr. Walker with regard to his demeanor.

MR. BEGLEY: So with regard to his credibility, your Honor, I believe that that's governed by Rule 608, and 608(a) says that you can attack his credibility by reputation or opinion evidence, and I think the Court would agree and opposing counsel would concede that this exhibit is not opinion or reputation evidence.

THE COURT: It's not -- it doesn't go to character, it just goes to credibility with respect to his testimony on his propensity for calm, professional demeanor.

MR. BEGLEY: So I think that brings to us 608(b) which says you can use -- which governs specific instances of conduct, and it says extrinsic evidence is not admissible to prove specific incidents of the witness's conduct to attack character for truthfulness.

THE COURT: I truly agree with that. 608 just simply isn't applicable here. I'm not going to allow it to be used for character.

weintraub tobin chediak coleman grodin
law corporation

MR. BEGLEY: Character for truthfulness, though, your Honor?

THE COURT: Character for truthfulness, yes.

MR. BEGLEY: That's [what] 608 governs.

THE COURT: Credibility.

. . .

MR. BEGLEY: Opposing counsel asked me, I think appropriately, for us to try to get together to think about a limiting instruction about that, and the only limiting instruction that I can think of that might even come close to trying to do the job, and I don't think it would completely do the job, would be to tell them they're not supposed to consider those exhibits at all, it shouldn't have come in, and it has no purpose, and even then I wouldn't concede that it would cure the harm that's been done.

Jury Instruction Transcript at 3:20–7:1.

Mr. Walker's attorneys also objected that the emails were irrelevant and that "their probative value is substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury about what import they have." *See* Jury Instruction Transcript at 6:13–17, 8:5–10.

On a separate issue, when the Court's summary judgment ruling in favor of Charter was on appeal in the Ninth Circuit, Charter claimed: "The incidents from the Fall of 2013 were not the basis for Walker's termination and the corrective action report explaining Walker's termination does not reference any conduct occurring in 2013. ER 406 at ¶¶ 17-19; ER 448." See ECF No. 175-2 at 19; ECF No. 128 at 5–6; ECF No. 128-8 at 2. Charter's counsel cited to a declaration of Mr. Walker's former supervisor, Norma Perales Castillo (referred to herein as "Ms. Perales" for reasons of clarity), wherein Ms. Perales claimed that Mr. Walker's behavior on one training call on April 23, 2014 and during her follow-up with him after the call were the basis for Mr. Walker's termination. See ECF No. 128 at 5–6.

Despite the representations of Ms. Perales and Charter's counsel that nothing from 2013 was the basis for Mr. Walker's termination, Charter said exactly the opposite at trial. Ms. Perales's supervisor, Christopher Larson, testified that, even after the training call and the follow-up call, he had been instructed that "there was not enough there for even a termination." Begley Decl. at ¶ 3 and Exh. D attached thereto (Transcript of Partial Testimony of Christopher Larson ("Larson Transcript")) at 10:17–25. Instead, Mr. Larson directed Ms.

**weintraub tobin** chediak coleman grodin
law corporation

Perales to gather information from Mr. Walker's past to try to get approval to terminate him. *Id.* at 11:1–9. Mr. Larson stated twice at trial that it was past behavior in conjunction with the two phone calls that convinced him to terminate Mr. Walker, precisely the opposite of what Charter's attorneys stated in their appellate brief. *See id.* at 11:6–9; 12:10–13.

III.     **The Court Should Order a New Trial Due to Erroneous Evidentiary Rulings and Erroneous Jury Instructions, which Cannot Be Shown to Be More Likely Harmless than Not.**

Federal Rule of Civil Procedure 59 gives a trial court the authority to grant a new trial after a jury trial, either on motion or on its own initiative, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a), (d). The accepted reasons for granting a new trial relevant here are: 1) erroneous evidentiary rulings, *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005); and 2) erroneous jury instructions, *Murphy v. Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

"[W]hen reviewing the effect of erroneous evidentiary rulings, [courts] begin with a presumption of prejudice [that] can be rebutted by a showing that it is more probable than not that the jury would have reached the same verdict even if the evidence had been admitted." *Obrey*, 400 F.3d at 701. Likewise, "'[a]n error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.'" *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011) (quoting *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005)). "[Courts] presume prejudice where civil trial error is concerned and the burden shifts to the [non-moving party] to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Id.* (quoting *Dang*, 422 F.3d at 811). When "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed," a district court's error is not harmless. *Id.* at 782–783; *accord Obrey*, 400 F.3d at 701 ("[P]resuming prejudice, rather than harmlessness, is required by Supreme Court precedent.").

When weighing evidence on a motion for a new trial, a "district judge ha[s] the right, and … the duty … to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

evidence, or … to prevent … a miscarriage of justice." *Murphy*, 914 F.2d at 187.  "The judge can weigh the evidence and assess the credibility of witnesses, and **need not view the evidence from the perspective most favorable to the prevailing party**." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (emphasis added).

A.    The Court improperly admitted an irrelevant and unduly prejudicial emails from Mr. Walker to opposing counsel, sent more than four years after his termination.

The January 19 and February 13, 2019, emails from Mr. Walker to opposing counsel were inadmissible as character evidence, inadmissible as impeachment evidence, irrelevant, and overwhelmingly prejudicial. As such, the Court erred by admitting the evidence. The error was prejudicial because it injected into the case the issues of white supremacy and historical atrocities committed against black men when white women fabricated accusations or rape against them;[1] issues which were sure to discomfort the all-white jury and put them on the defensive and sure to affect their consideration of Mr. Walker's claims that he had been discriminated against for being black. This is the very point of the article referenced by Mr. Walker in using the term "white fragility."[2]

As Mr. Walker explained, he felt opposing counsel had been antagonizing him and mischaracterizing his emails to the Court to make him seem like a dangerous, angry black man—the same sort of fabrication and pernicious stereotype that led to Emmett Till's lynching.

---

[1] Emmett Till was a 14-year-old black male child murdered by two white men in Mississippi in 1955 after a white woman falsely accused him of grabbing her waist and uttering obscenities at her in a grocery store. *See, generally,* Timothy Tyson, *The Blood of Emmett Till* (2017). Emmett Till's killers were then acquitted of murder by an all-white jury. *See id.* Mr. Walker surely expected to face, and did face, an all-white jury. (See Begley Decl. at ¶ 3.)

[2] *See, e.g.,* Robin Diangelo, "White Fragility," 3 *International Journal of Critical Pedagogy* 3:54, 64 (2011) ("Those who lead whites in discussions of race may find the discourse of self-defense familiar. Via this discourse, whites position themselves as victimized, slammed, blamed, attacked, and being used as "punching bag[s]" (DiAngelo, 2006c). Whites who describe interactions in this way are responding to the articulation of counter narratives; nothing physically out of the ordinary has ever occurred in any inter-racial discussion that I am aware of. These self-defense claims work on multiple levels to: position the speakers as morally superior while obscuring the true power of their social locations; blame others with less social power for their discomfort; falsely position that discomfort as dangerous; and reinscribe racist imagery. This discourse of victimization also enables whites to avoid responsibility for the racial power and privilege they wield. By positioning themselves as victims of anti-racist efforts, they cannot be the beneficiaries of white privilege. Claiming that they have been treated unfairly via a challenge to their position or an expectation that they listen to the perspectives and experiences of people of color, they are able to demand that more social resources (such as time and attention) be channeled in their direction to help them cope with this mistreatment."), available at https://robindiangelo.com/2018site/wp-content/uploads/2016/01/White-Fragility-Published.-1.pdf.

{2793103.DOCX;}                11

Walker Transcript at 162:11–22. This prejudice was compounded, as explained below, when the Court instructed the jury to consider the emails as evidence of Mr. Walker's "character or propensity for assertive or nonassertive conduct." Walker Transcript at 114:16–18.

### 1.     The emails were inadmissible as character or credibility evidence

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait," with exceptions made for witnesses if Federal Rules of Evidence 607, 608, or 609 apply. Fed. R. Evid. 404(a)(1), (3). Rule 608 allows a witness's credibility to be "attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character," but prohibits use of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(a)–(b). Additionally, specific instances of conduct are not admissible to prove a person's character or character trait unless that character or trait is an essential element of a claim or defense. Fed. R. Evid. 405(b). None of Mr. Walker's claims or Charter's defenses have any character trait as an essential element. *See* Jury Instructions Nos. 14–19, ECF No. 255 at 16–21.

For example, evidence from an Inspector General report showing a defendant had improper contact with inmates while a prison guard and was dishonest in an affidavit and interview during the investigation is inadmissible character evidence. *United States v. Mixon*, No. CR-14-00631-001-TUC-JGZ, 2015 U.S. Dist. LEXIS 195403, at *6 (D. Ariz. Dec. 10, 2015). In *Mixon*, because the prior investigation was separated by a number of years from the present case and there was "no connection between the previous allegations of misconduct and the offense charged in th[e present] case, such that the conduct might be probative of knowledge or intent," the court found that evidence of the prior investigation "would serve only as impermissible propensity evidence . . . precisely what Rule 404(b) forbids." *Id*. at *7–*8. Likewise, even though the matter was criminal, because character was not an essential element of the crime charged, "evidence of a specific instance of dishonesty on the part of Defendant [wa]s inadmissible to rebut evidence introduced by Defendant of her character for honesty." *Id*.

**weintraub tobin** chediak coleman grodin
law corporation

at *10. Finally, the *Mixon* court held that only specific instances of conduct probative of the defendant's character for truthfulness were admissible for impeachment purposes under Rule 608(b). *Id.* at *11 (citing *Lyda v. United States*, 321 F.2d 788, 793 ("A witness may not be degraded by accusing him of improprieties not directly relevant to his veracity.")). Accordingly, the court held that the prosecution could not "inquire into the underlying misconduct, indicate that the Defendant lied during the course of an investigation, or indicate that Defendant was previously the subject of investigation by the OIG." *Id.* at *14.

Here, emails sent by Mr. Walker more than four years after his termination, to opposing counsel and not to anyone in an employment context, are clearly extrinsic evidence. The Court repeatedly acknowledged that the purpose of admitting the emails was to address Mr. Walker's "character or propensity for assertive or nonassertive conduct," "normal disposition to act in a very calm manner," and "character for calm demeanor." (Walker Transcript at 114:16–17; Mot. for Mistrial Transcript at 2:25–3:1; Jury Instruction Transcript at 4:25–5:1.) The Court even went so far as to acknowledge that this character evidence would help Charter prove "whether or not [Mr. Walker] raised his voice or acted in an unprofessional manner," in order to determine "whether there was sole or motivating factor." *See* Jury Instruction Transcript at 4:20–5:3. This is precisely what Rule 404(b) forbids.

Similarly, upon switching to referring to Mr. Walker's credibility, which is synonymous with "character for truthfulness," Rule 608(b) was triggered, and that rule prohibited admission of the emails to prove "specific instances of [Mr. Walker's] conduct in order to attack or support the witness's character for truthfulness." Again, allowing this evidence is precisely what Rule 608(b) forbids. *See Zhang v. Zhang*, 2019 U.S. Dist. LEXIS 24372, at *15 (S.D.N.Y. Feb. 14, 2019) ("To the extent that the evidence spoke to **credibility**, Rule 608(b) **bars extrinsic evidence** to prove specific instances of a witness's conduct in order **to attack credibility**.") (emphasis added).

Finally, the Court mentioned Mr. Walker's counsel "opening the door" and allowing Charter to "rebut," (*see* Mot. for Mistrial Transcript at 2:22–3:2; Walker Transcript at 114:15–18; Jury Instruction Transcript at 5:1–3), apparently referring to Rule 404(a)(2), which gives

**weintraub tobin** chediak coleman grodin
law corporation

prosecutors a chance to rebut character evidence offered by a defendant in a criminal case. Needless to say, this rule is inapplicable here (in a civil case).

Because the emails had no connection to the underlying facts of this case but constituted extrinsic evidence going to Mr. Walker's character for truthfulness or credibility (as the Court said), the emails were inadmissible character evidence under Rules 404 and 608(b).

### 2.    The emails were inadmissible as impeachment evidence.

A limited exception to Rule 608(b) exists where extrinsic evidence that would normally be excluded is used "for the purpose of 'impeachment by contradiction.'" *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010). This exception only applies "'[w]here a defendant testifies **on direct** about a specific fact, [in which case] the prosecution is entitled to prove . . . that he lied as to that fact.'" *Id.* (quoting *United States v. Beverly*, 5 F.3d 633, 639-40 (2d Cir. 1993)) (emphasis added).

The United States Supreme Court and appellate courts have ruled that attorneys cannot use **cross-examination** to "smuggle in" an impeaching opportunity that would otherwise be excluded under the Federal Rules of Evidence. *Walder v. United States*, 347 U.S. 62, 66 (1954); *see United States v. Pantone*, 609 F.2d 675, 683 (3d Cir. 1979) (A party "may not cross-examine on collateral matters not testified to on direct in order to establish a ground for the admission of otherwise inadmissible evidence.") Accordingly, the witness's statements must be narrowly construed. For instance, the Second Circuit found it was error to admit testimony about a witness's prior contact with drugs to contradict the witness's statements that he had never seen drugs because those statements, taken in context, referred to a specific time period, not the time of the drug contact the prosecution sought to introduce. *Pantone*, 609 F.2d at 499–501.

The Court never referred to this exception explicitly, but did place an emphasis on "impeachment," as did counsel for Charter. *See* Jury Instruction Transcript at 39:7–10, 9:7–12. In this case, however, as in the Second Circuit case, Mr. Walker's statements about his assertiveness all referred to a specific time period and context, but the emails occurred in a very different time period and context; therefore, they failed to contradict Mr. Walker. In full

{2793103.DOCX;}    14    Pl.'s Mot. for New Trial under FRCP 59 and for Relief from Judgment under FRCP 60(b)(3); Mem. P. & A.

weintraub tobin chediak coleman grodin
law corporation

context, Mr. Walker's statements are clearly referring to his conduct in the workplace at Charter prior to his termination:

Q Had anybody told you that you had behaved unprofessionally **in the workplace**?

A No, they hadn't.

Q Anybody told you that you had acted in an angry or aggressive manner?

A No, they hadn't.

Q Did you ever act in an angry or aggressive manner **at work**?

A No, I kept it professional.

Walker Transcript at 83:7–15 (emphasis added). His comments about his assertiveness were even more specific, referring to when he reports issues about his employment:

Q Is it your style to -- when you're reporting issues about **your employment**, to be aggressive or angry when you do that?

A Well, my style is assertive. I don't know about the character of angry or aggressive, but, you know, I'm very assertive because, you know, as a **former business owner**, I do realize you have to be on top of things to make things run smoothly.

Walker Transcript at 30:8–12 (emphasis added). These statements are not contradicted by emails from Mr. Walker acting as his own zealous attorney to an antagonistic opposing counsel four years after his employment was terminated by Charter.

Even on cross-examination, when Charter's counsel arguably prompted a broader statement that Mr. Walker is "always professional in [his] communication," Charter's counsel still referred to Mr. Walker's previous testimony, suggesting the context remained the workplace. *See* Walker Transcript at 113:5–17. So even the statement Mr. Walker made on cross-examination, viewed in context, is not contradicted by emails from years later in a completely different context. In any event, Charter cannot use cross-examination about collateral matters—i.e. all of Mr. Walker's communications, which the Court noted "is a side issue," Walker Transcript at 168:14—to smuggle in inadmissible character evidence as impeachment evidence.

Because none of Mr. Walker's statements about assertiveness were directly contradicted by the emails, the narrow exception to Rule 608(b) for "impeachment by contradiction" does not apply, and the emails were not admissible as impeachment evidence.

**weintraub tobin** chediak coleman grodin
law corporation

### 3.    The emails are irrelevant and unfairly prejudicial.

The Ninth Circuit has noted that, in cases like this, "[w]here termination decisions rely on **subjective evaluations**," such as Mr. Walker's allegedly raised voice, "careful analysis of possible impermissible motivations is warranted because such evaluations are particularly 'susceptible of abuse and more likely to mask pretext.'" *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136–37 (9th Cir. 2003) (quoting from *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990)) (emphasis added); *see Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 652 (6th Cir. 2015) (noting that "[o]ne manager may call a black man 'aggressive' and a white man 'passionate' for the same speech").

Even ignoring that the emails Mr. Walker sent are inadmissible character evidence, the emails should have been excluded as irrelevant and unfairly prejudicial (and litigating their context and appropriateness in the course of a jury trial would constitute an undue waste of time). Only relevant evidence is admissible. Fed. R. Evid. 401. Courts may exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay [or] wasting time." Fed. R. Evid. 403.

As an initial matter, the emails Mr. Walker sent more than four years after his termination to opposing counsel, when he was representing himself in this lawsuit, are simply too far removed from Mr. Walker's communications in the workplace years before to have any tendency to make a "fact is of consequence in determining the action" more or less probable. Fed. R. Evid. 401. But even giving the emails some slim thread of relevance, their probative value was substantially outweighed by the aforementioned dangers.

As explained above, the emails injected into the case the issues of white supremacy and historical atrocities committed against black men when white women fabricated rape accusations against them; issues which were sure to discomfort the all-white jury and put them on the defensive and sure to affect their consideration of Mr. Walker's claims that he had been discriminated against for being black. *See* footnotes 1 and 2, *supra*. Either due to lack of relevance or to the aforementioned dangers, the emails should have been excluded, even ignoring its inadmissibility as character evidence.

**weintraub tobin** chediak coleman grodin
law corporation

As already indicated herein, while one may reasonably question whether it would be appropriate for a subordinate employee to send such emails to a supervisor, that was not what happened here. It appears beyond doubt that emails sent by a plaintiff acting as his own attorney in pro per to a co-equal opposing counsel would be accepted as the self-represented party simply being "persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious when acting [on his] behalf." *In re Dellinger,* 461 F.2d at 400. The fact that the context is totally different, coupled with the fact that such emails were dispatched four years after the termination of Mr. Walker's employment, shows that such emails had nothing to do with the merits of this case.

Even removing the fact that Walker was representing himself four years after his termination, the introduction of his post-termination correspondence is prejudicial. *See Altman v. New Pub. Sch. Dist.*, 2017 U.S.Dist.LEXIS 2515, at *30 (S.D.N.Y. Jan. 6, 2017) (rejecting the defendant's assertions that "post-termination correspondence" beared on the plaintiff's "credibility" and finding it too "attenuated" and the "introduction of such evidence ... unnecessary, cumulative, confusing, and overly prejudicial")

Rather than have the jury focus on the merits of the case (i.e., whether the decision to terminate Mr. Walker's employment was tainted by racial discrimination), Charter (especially in closing arguments) was enabled to "position themselves as victimized, slammed, blamed, attacked, and being used as 'punching bag[s].'" DiAngelo, *supra*, at 64. Charter should not have been allowed to position itself at trial in a way to avoid the responsibility for the racial power that it wielded over Mr. Walker. Charter assailed Mr. Walker's opinion in closing, yet Mr. Walker's opinions in his litigation emails "do not even reach the dignity of evidence of character or character for truthfulness or untruthfulness, which would be of doubtful admissibility, even if it were offered." *Catipovic v. Turley*, 68 F.Supp.3d 983, 1002 (8th cir 2014) (holding that characterizations of a party "as a 'billionaire,' 'Wall Street type,' 'flush with cash,' or 'the King of Corn' are of little or no probative value whatsoever, and are laden with potential for prejudice or misleading the jurors, such that they will not be admissible").

///

{2793103.DOCX;}                    17            Pl.'s Mot. for New Trial under FRCP 59 and for Relief
                                                from Judgment under FRCP 60(b)(3); Mem. P. & A.

Walker was "substantially prejudiced" by the admission of these inflammatory emails – which surely misled and confused the jurors in light of the instructions given to them – and he was not given a proper "careful analysis" with proper evidence. *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir. 1995).  Indeed, a jury, unlike a judge, cannot be presumed to have based its verdict only on properly admitted evidence.  *See generally* E. Cleary, *McCormick on Evidence* § 60, at 137 (2d ed. 1972); 7 J. Moore, J.D. Lucas, *Moore's Federal Practice* ¶ 61.07[2-3] (2d ed. 1982).

Prejudice from the erroneous admission of the emails is presumed but, given the highly prejudicial subject of the email, especially in a racial discrimination case, coupled with the confusion that must have resulted from the conflicting instructions, Charter will not be able to carry its burden to show "that it is more probable than not that the jury would have reached the same verdict even if the evidence had [not] been admitted." *See Obrey*, 400 F.3d at 701; *Sanders v. Newport*, 657 F.3d at 781. When "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed," a district court's error is not harmless. *Id.* at 782–783; *accord Obrey*, 400 F.3d at 701 ("[P]resuming prejudice, rather than harmlessness, is required by Supreme Court precedent."). Accordingly, the Court should grant Mr. Walker a new trial.

B.     The Court improperly instructed the jury regarding the inadmissible email.

The Court should also grant Mr. Walker a new trial because the Court erred in its instructions to the jury numerous times regarding the inadmissible email, which compounded its prejudicial effect. "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Dang*, 422 F.3d at 804 (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002)). "The 'use of a model jury instruction does not preclude a finding of error.'" *Id.* at 805 (quoting *United States v. Warren*, 984 F.2d 325, 328 (9th Cir. 1993)). "In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Id.* (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001)).

**weintraub tobin chediak coleman grodin**
law corporation

**weintraub tobin** chediak coleman grodin
law corporation

"'An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.'" *Sanders v. Newport*, 657 F.3d at 781 (quoting *Dang*, 422 F.3d at 811). "[Courts] presume prejudice where civil trial error is concerned and the burden shifts to the [non-moving party] to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Id.*

Here, the Court's shifting instructions regarding the emails misstated the law and must have confused and, thereby, mislead the jury. When Charter first sought to admit an email into evidence, the Court told the jury that the evidence was relevant to rebut Mr. Walker's "character or propensity for assertive or nonassertive conduct" and to counter the claim that Mr. Walker "has a peaceful nature." Walker Transcript at 114:15–115:2. As an initial matter, Mr. Walker never made either of those claims. Mr. Walker claimed he was assertive when "reporting issues about [his] employment," and the word "peaceful" does not appear in Mr. Walker's testimony prior to the Court's use of it.

Then, when Charter sought to introduce a second email, the Court reiterated that "the issue of whether [Mr. Walker] has written quote/unquote irate e-mails to other persons, including counsel on this case, has been opened, so it's an issue." Walker Transcript at 166:13–15. The Court's subsequent caution reiterated that Mr. Walker's character was at issue: "it's not something you consider on the merits, it's simply on the issue of characterization of [Mr. Walker's] reactions." The Court then tried to ameliorate these problems during the jury instruction conference, instructing Charter's counsel to preface or conclude any argument about the email by saying the jury should only consider such argument "as to [Mr. Walker's] truthfulness or his ability to perceive." Jury Instruction Transcript at 10:3–4.

First, as explained above, all of these explanations as to why the jury could consider the emails are incorrect statements of Federal Rules of Evidence 404 and 608. For that reason alone, the Court erred in instructing the jury. But the Court's alternative reasons (as the Court and Charter's counsel worked out why the emails should be admissible, if not as character evidence) must also have mislead the jury, one way or another. The inclusion of a model jury instruction about impeachment in general did not cure either of these errors.

Lastly, in the emails at issue, Walker stated his opinion that Charter had, post-termination, fabricated racist characterizations of him; that was his theory of the case (that he should "not to be misinterpreted as a threatening Black guy (something you and your client like to fabricate stories of)").   Meanwhile, "Rule 608(b) [of the Federal Rules of Evidence] authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement." *United States v. Heard,* 709 F.3d 413, 433 (5th Cir. 2013).

Finding that these emails were permissible under that rule was tantamount to ruling that Mr. Walker's theory of the case was equivalent to perjury, fraud, swindling, forgery, bribery, and embezzlement. This further impeded Mr. Walker from "argu[ing his] theory of the case to the jury" by implicitly deeming Mr. Walker's theory of the case (e.g. that Charter fabricated stories about his professional "tone") as untruthful or unprofessional. *Fiorito Bros., Inc. v. Fruehauf Corp.,* 747 F.2d 1309, 1316 (9th Cir. 1984).

This, unfairly, added the extra burden to Walker to prove the truth and appropriateness of his litigation emails. "[W]hen the trial court erroneously adds an extra element to the plaintiff's burden of proof, it is unlikely that the error w[ill] be harmless." *Clem v. Lomeli* 566 F.3d 1177, 1182 (9th Cir. 2009) (internal punctuation and citations omitted).   For these reasons, and based on the prejudicial nature of the emails explained above, the Court should also grant Mr. Walker a new trial due to the Court's instructional error.

C.     The Court erred by refusing to admit evidence of an administrative ruling finding Mr. Walker committed no misconduct.

The Court granted Charter's third motion in limine, over Mr. Walker's opposition, and barred Mr. Walker from offering evidence or argument concerning his claim against Charter with the Nevada Department of Employment ("NDE"). *See* ECF No. 215 at 3:17–4:9; *see also* ECF No. 226. NDE had determined that Mr. Walker committed no misconduct prior to Charter firing him, but the Court ruled the NDE decision "irrelevant as well as potentially prejudicial," because "the claim was uncontested and did not go through any process of litigation," and excluded it under Federal Rules of Evidence 401 and 403. *See* ECF No. 215 at 4:5–8. This too was error justifying a new trial.

**weintraub tobin** chediak coleman grodin
law corporation

{2793103.DOCX;}                    20

The Ninth Circuit has "held that it is reversible error for the district court to exclude an EEOC probable cause determination from a Title VII trial," even though "in a probable cause determination the EEOC determines only that there is probable cause to conclude that a violation of Title VII has occurred" and "does not suggest to the jury that the EEOC has already determined that there has been a violation." *Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) (citing *Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 504 (9th Cir. 1981)).

In *Plummer*, the EEOC determination did not involve any contest or litigation, just and investigation that served as a pre-cursor to conciliation or the issuance of a right to sue letter. *Plummer*, 656 F.2d at 503. The Ninth Circuit appears to have adopted a per se rule that "a plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before a judge or jury." *Id*. at 505. The Ninth Circuit has "also concluded that the probative nature of the EEOC probable cause determination far outweighs the prejudicial effect it may have on a jury." *Heyne*, 69 F.3d at 1483 (citing *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir. 1986)). Even when the EEOC investigator simply "considered all information that either party cared to submit, but conducted no other investigation," the Eleventh Circuit still found "that the danger of unfair prejudice was too little to overcome the 'highly probative' nature of this evidence." *Barfield v. Orange Cty.*, 911 F.2d 644, 651 (11th Cir. 1990).

As the Ninth Circuit concluded: "A civil rights plaintiff has a difficult burden of proof, and should not be deprived of what may be persuasive evidence." *Plummer*, 656 F.2d at 505. "[T]he *Plummer* ruling **is not restricted solely to EEOC findings** … **but extends to** similar administrative determinations, including [**Nevada Equal Rights Commission**] **findings**." *Heyne*, 69 F.3d at 1483 (emphasis added); *see also Salinas Valley Broad. Corp. v. NLRB*, 334 F.2d 604, 612 (9th Cir.1964) (noting that a non-final administrative decision of the California Unemployment Appeals Board may serve as "substantial evidence" as to "the cause of … [the] discharge"); *Baldwin v. Rice*, 144 F.R.D. 102, 105 (E.D. Cal. 1992) (explaining that "[a]ny disadvantage to defendant can be addressed by referring to deficiencies in the record or other evidence which discredits the administrative findings").

**weintraub tobin** chediak coleman grodin
law corporation

{2793103.DOCX;}                21                Pl.'s Mot. for New Trial under FRCP 59 and for Relief from Judgment under FRCP 60(b)(3); Mem. P. & A.

"A party opposing the introduction of a public record bears the burden of coming forward with enough negative factors to persuade a court that a report should not be admitted." *Johnson v. City of Pleasanton,* 982 F.2d 350, 352-353 (9th Cir 1992). "This rule is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Id*. (internal punctuation and citations omitted). "Factually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)(C)." *Id*. at 352 (internal punctuation and citations omitted). Here, Charter presented no evidence that the NDE's conclusion was determined upon something other than facts. Charter, further, did not produce evidence that it could not participate in the NDE's determination and process, which found that Mr. Walker was not fired for misconduct.

In this lawsuit, where Charter's reasons for terminating Mr. Walker changed over time, the NDE report (which was an administrative determination) would have been especially relevant evidence of what Charter's position was at that point in time. Such important evidence cannot be substantially outweighed by the danger of unfair prejudice when Charter is permitted to adduce evidence showing that the NDE investigation was incomplete or lacked key information. *See Barfield v. Orange County*, 911 F.2d 644, 651 n.7 (11th Cir. 1990) (holding that "a finding of misconduct is clearly relevant to a charge that an employee has been fired not for any proper reason but because of racial discrimination, this discussion is also applicable to the admission of the report of the Florida Unemployment Appeals Commission"). Accordingly, the Court should also grant Mr. Walker a new trial on this ground because the exclusion of the NDE report was reversible error under *Heyne*.

IV. **The Court Should Grant Mr. Walker Relief From Judgment Due To Charter's Fraud, Misrepresentation, Or Misconduct In Contradicting Its Prior Position That Mr. Walker Was Not Terminated Based On Any Events From 2013.**

Federal Rule of Civil Procedure 60(b)(3) authorizes a trial court to relieve a party from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." For the purposes of motions under that rule, "[f]raud is the knowing misrepresentation of a material fact, or concealment of the same when there is a duty

**weintraub tobin chediak coleman grodin**
law corporation

to disclose, done to induce another to act to his or her detriment." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008). Although "fraud on the court" is not easily defined, it may occur when the acts of a party prevent his adversary from fully and fairly presenting his case or defense. *Toscano v. Commissioner,* 441 F.2d 930, 934 (9th Cir. 1971).

"Pursuant to [Rule 60(b)(3)], judgments have been set aside on a wide variety of alleged frauds, such as allegations that adverse parties failed to properly respond to discovery requests, thus preventing opposing parties from adequately preparing for trial, to claims that evidence presented at trial itself consisted of perjured testimony or false documents." 12 Moore's Federal Practice § 60.43[1][b] (3d ed. 1999). "Fraud thus includes 'deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material.'" *Info-Hold*, 538 F.3d at 456 (internal citations omitted). "Accordingly, to establish grounds for relief under Rule 60(b)(3), the moving party need not demonstrate that the adverse party has committed all the elements of fraud specified in the law of the state where the federal court is sitting, but rather must simply show that the adverse party's conduct was fraudulent under this general common law understanding." *Id.*

"'[P]rejudice should be presumed[] once the moving party has shown by clear and convincing evidence that misbehavior falling into one or more of the three categories set out in Rule 60(b)(3) has occurred.' The burden then shifts to the non-moving party 'to demonstrate by clear and convincing evidence that the misbehavior which occurred had no prejudicial effect on the outcome of the litigation.'" *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1333 (Fed. Cir. 2006) (citations omitted). Similarly, under rule 59 of the Federal Rules of Civil Procedure, a court can grant a new trial where a verdict was "based upon false or perjurious evidence." *Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007) (internal punctuation and citations omitted).

Here, Charter either misled Mr. Walker or the courts about its reasons for his termination. When the Court's summary judgment ruling in favor of Charter was on appeal in the Ninth Circuit, Charter claimed: "The incidents from the Fall of 2013 were not the basis for

**weintraub tobin** chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

Walker's termination and the corrective action report explaining Walker's termination does not reference any conduct occurring in 2013. ER 406 at ¶¶ 17-19; ER 448." See ECF No. 175-2 at 19; ECF No. 128 at 5–6; ECF No. 128-8 at 2. Charter cited to a declaration of Mr. Walker's former supervisor, Norma Perales, wherein Ms. Perales claimed that Mr. Walker's behavior on one training call on April 23, 2014 and during her follow-up with him after the call were the basis for Mr. Walker's termination. See ECF No. 128 at 5–6.

Despite the representations of Ms. Perales and Charter that nothing from 2013 was the basis for Mr. Walker's termination, Charter said exactly the opposite at trial. Ms. Perales's supervisor, Christopher Larson, testified that, even after the training call and the follow-up call, he had been instructed that "there was not enough there for even a termination." Larson Transcript at 10:17–25. Instead, Mr. Larson directed Ms. Perales to gather information from Mr. Walker's past to try to get approval to terminate him. *Id.* at 11:1–9. Mr. Larson stated twice at trial that it was past behavior in conjunction with the two phone calls that convinced him to terminate Mr. Walker, precisely the opposite of what Charter's attorneys stated in their appellate brief. *See id.* at 11:6–9; 12:10–13.

Of course, it was undisputed at trial that Mr. Walker had stellar reviews and that Charter failed to inform him of the supposed reason for the termination. *See Deffenbaugh-Williams v. Wal-Mart Stores*, 156 F.3d 581, 589-590 (5th Cir. 1998) (finding that "the evidence was sufficient" to find a discriminatory animus, in part, because the plaintiff "had positive performance evaluations prior to the" adverse action); *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 253-254 (4th Cir. 2015) (holding that the employer's failure to "initially provide [the plaintiff] with a reason for her termination" and contradictory performance assessment "rendered the employer's reason so questionable as to raise an inference of deceit," which could allow reasonable jurors to find "that the [employer]'s proffered justifications were not its real reasons for firing [the plaintiff).

Charter was thus able to have its cake and eat it too. It tried to convince the Ninth Circuit that no inference of discrimination could be drawn from events in 2013, yet Charter managers testified that they did fire Mr. Walker based on events in 2013. Those managers

cannot be cross-examined about earlier contradictory statements by Charter's appellate attorneys (including Ms. McGuigan, to whom Mr. Walker sent the aforementioned emails), and the Court would never allow those attorneys to be called as witnesses on the subject. Thus, Charter was able to change its story without the changes being evidence of pretext. The Court should not allow such deception when Charter had a duty not to mislead in its briefing.

"In determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct prejudiced the opposing party, but whether it harmed the integrity of the judicial process." *United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (internal punctuation and citation omitted). Although "one of the concerns underlying the 'fraud on the court' exception is that such fraud prevents the opposing party from fully and fairly presenting his case," this showing alone is not sufficient. *Abatti v. Comm'r*, 859 F.2d 115, 119 (9th Cir. 1988). At the same time, a showing of prejudice to the party seeking relief is not required. *Dixon v. C.I.R.*, 316 F.3d 1041, 1046 (9th Cir. 2003). Further, the Court has discretion to simply enter judgment in favor of the movant rather than ordering a new trial. 316 F.3d at 1047. Accordingly, the Court should grant Mr. Walker relief from judgment based on Charter's misleading actions by which it obtained the judgment.

## V.   CONCLUSION

The Court should order a new trial due to erroneous evidentiary rulings and erroneous jury instructions, which cannot be shown to be more likely harmless than not. The Court should, alternatively, grant Mr. Walker relief from judgment due to Charter's fraud, misrepresentation, or misconduct in contradicting its prior position that Mr. Walker was not terminated based on any events from 2013.

Dated:  January 21, 2019

WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
Law Corporation

By:____/s/ Brendan J. Begley_____
        Brendan J. Begley, SBN 202563

Attorneys for Plaintiff TERRANCE WALKER

weintraub tobin chediak coleman grodin
law corporation