**MORGAN, LEWIS & BOCKIUS LLP**
Ingrid A. Myers, Bar No. 6755
imyers@morganlewis.com
Kathryn T. McGuigan, *pro hac vice*
kmcguigan@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

Christopher J. Banks, *pro hac vice*
christopher.banks@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001

Attorneys for Defendant
CHARTER COMMUNICATIONS LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE WALKER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHARTER COMMUNICATIONS INC., and CHARTER COMMUNICATIONS LLC,<br><br>Defendants. | Case No. 3:15-cv-00556-RCJ-CBC<br><br>**DEFENDANT CHARTER COMMUNICATIONS LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3) [ECF 267]** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

DB2/ 38145482.1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   LEGAL ARGUMENT ............................................................................................... 3

    A.    The Court Properly Admitted Plaintiff's Emails To Impeach Plaintiff's Testimony By Contradiction And Properly Instructed The Jury At The End Of Trial. .......................................................... 3

        1.    Plaintiff's Arguments Grievously Mischaracterize His Testimony. ............................................................................... 4

        2.    Exhibits 526 and 527 Were Properly Offered And Admitted To Impeach Plaintiff's Testimony, Not His Character, And Should Not Have Been Excluded Under Rules 401 Or 403. ............................................................... 11

        3.    The Court Properly Instructed The Jury. .................................. 14

    B.    The Court Properly Exercised Its Discretion To Exclude Plaintiff's Unemployment Determination From Evidence. ................ 17

    C.    Charter Never Asserted That Plaintiff Was Terminated Based On Conduct in 2013. ........................................................... 22

III.  CONCLUSION ........................................................................................................ 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldwin v. Rice*
144 F.R.D. 102 (E.D. Cal.1992)..............................................................18, 21

*Bradshaw v. Golden Rd. Motor Inn*
885 F. Supp. 1370 (D. Nev. 1995) .............................................................*passim*

*Bruton v. United States*
391 U.S. 123 (1968) ....................................................................................17

*Collins v. Omega Flex, Inc.*
2009 WL 10681438 (E.D. Penn. 2009)...................................................19, 21

*Greer v. Miller*
483 U.S. 756 (1987) ....................................................................................17

*Heyne v. Caruso*
69 F.3d 1475 (9th Cir. 1995) ......................................................................20

*Ohler v. United States*
529 U.S. 753 (2000) ....................................................................................22

*Pascual v. Anchor Advances Products, Inc.*
117 F.3d 1421 (6th Cir. 1997)....................................................................18

*Plummer v. Western Int'l Hotels Co.*
656 F.2d 502 (9th Cir. 1981).......................................................................20

*Reed v. Inland Intermodal Logistics Services, LLC*
2011 WL 4565450 (W.D. Tenn. Sept. 29, 2011)........................................18

*Rekhi v. Wildwood Indus., Inc.*
816 F.Supp. 1312 (C.D.Ill.1993) (Mihm, C.J.), *aff'd*, 61 F.3d 1313
(7th Cir.1995) ..............................................................................................19

*Richardson v. Marsh*
481 U.S. 200 (1987) ................................................................................4, 17

*U.S. v. Higa*
55 F.3d 448 (9th Cir. 1995) .........................................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

DB2/ 38145482.1

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Carthen*
  906 F.3d 1315 (11th Cir. 2018) (J. Pryor concur.opn.) ....................................... 12

*United States v. Chu*
  5 F.3d 1244 (9th Cir.1993) ................................................................................ 14

*United States v. Morgan*
  555 F.2d 238 (9th Cir.1977) .............................................................................. 14

*United States v. Pantone*
  609 F.2d 675 (3d Cir. 1979) .............................................................................. 13

*United States v. Ramirez*
  609 F.3d 495 (2d Cir. 2010) .............................................................................. 12

*Wiley v. Pless Security, Inc.*
  2006 WL 8431781 (N.D. Ga. July 13, 2006) ................................................ 19, 21

*Williams v. Sysco San Francisco, Inc. Teamsters Local 853*
  2013 WL 1320448 (N.D. Cal. April 1, 2013) ...................................................... 18

*Wittenberg v. Wheels, Inc.*
  963 F. Supp. 654 (N.D. Ill. 1997)....................................................................... 19

**Statutes**

NRS 612.533.............................................................................................2, 21, 22

**Rules and Regulations**

Fed. R. Civ. P.
  59 ....................................................................................................................... 1
  60(b)(3) ............................................................................................................... 1

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DB2/ 38145482.1

iii

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Evid.

    401 ...................................................................................................... 13, 18

    403 ...................................................................................................... 13, 18

    404 ..................................................................................................... 9, 11, 13

    408 ............................................................................................................. 3

    408(b) ....................................................................................................... 14

    607 ............................................................................................................ 11

    608 ............................................................................................................ 11

    608(b) ................................................................................................... 11, 12

    609 ............................................................................................................ 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

Defendant Charter Communications LLC ("Charter") respectfully submits the following Opposition to Plaintiff Terrance Walker's Motion for a New Trial Under Federal Rule of Civil Procedure 59 and for Relief from Judgment Under Federal Rule of Civil Procedure 60(b)(3) ("Motion") [ECF No. 267].

## I.    INTRODUCTION

Plaintiff's Motion for New Trial asks the Court to set aside the jury's verdict in favor of Charter based on three distinct arguments, each of which is fatally flawed for different reasons.  Plaintiff's primary argument is that the Court should grant a new trial because it admitted into evidence two exhibits, Trial Exhibits 526 and 527, allegedly on the issue of Plaintiff's character.  Plaintiff further contends, in the alternative, that the exhibits did not impeach his testimony by contradiction because – according to Plaintiff – he claimed to be professional only in his communications at work.

Plaintiff's arguments, however, are in error.  The exhibits in question were not offered as character evidence, but rather were properly offered and admitted to impeach by contradiction Plaintiffs' repeated claims to the jury – in both Opening Statement and throughout his testimony – that Plaintiff was the consummate professional and a "conservative" person who did not have a temper, that he did not get angry, and that he never used the phrase "kiss my butt's butt" or "anything like that" in any context or at any time.  *See, e.g.*, Declaration of Christopher J. Banks, filed concurrently herewith ("Banks Dec."), Exhs. A (11/4/2019 Opening Statements Transcript at 2:14-3:9, 6:21-25 (Plaintiff's Opening)), B (Walker Testimony Tr. at 10:10-15, 10:20-11:1, 13:5-15, 27:20-23, 30:6-18)).  Plaintiff did not constrain his testimony about his purported professionalism to his on-the-job communications, as he incorrectly contends in his Motion.  To the contrary, Plaintiff repeatedly proclaimed his alleged good temper in all contexts as evidence for the jury to consider on his contention that Charter's proffered legitimate reason for terminating his employment was invented pretext.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DB2/ 38145482.1

Plaintiff's second alleged ground for a new trial is his claim that the Court incorrectly ruled *in limine* that it would exclude a decision by the Employment Security Division ("ESD") of the Nevada Department of Employment, Training and Rehabilitation.  In making this argument, Plaintiff erroneously conflates the ESD unemployment determination with findings by the United States Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission ("NERC") findings, neither of which are at issue here.  In contrast with an EEOC or NERC probable cause determination, ESD unemployment hearings are designed to be short and expeditious and have no expertise in deciding discrimination claims.  Moreover, the Nevada law granting the ESD the power to hear unemployment claims is absolute that such determinations are "not admissible or binding" for any purpose in any subsequent arbitration or state or federal court action.  NRS 612.533.  Here, the Court found that the ESD's decision was "neither binding nor persuasive," because Plaintiff's ESD claim was, as Plaintiff has admitted, "uncontested and did not go through any process of litigation."  (Dkt. 215 at 4:5-7.)  The Court's *in limine* ruling to exclude the ESD determination was well within the court's discretion and consistent with numerous similar decisions in other federal courts similarly excluding state unemployment board decisions in employment discrimination cases, including in a prior decision by the Nevada District Court.  *Bradshaw v. Golden Rd. Motor Inn*, 885 F. Supp. 1370, 1374 (D. Nev. 1995) (finding ESD decision neither binding nor admissible in unemployment discrimination trial).

Finally, Plaintiff incorrectly contends that Charter committed a fraud on the Court by allegedly contending at trial that Plaintiff was terminated in April 2014 in part due to events from 2013.  Setting aside that Plaintiff has failed to show the other elements necessary to establish a fraud on the Court, Charter also ***never*** contended at trial that Plaintiff was terminated for things that happened in 2013, and there is nothing in the trial record that supports Plaintiff's contention.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

2

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

Moreover, even if Charter had made such a contention or introduced such evidence, Plaintiff never made any such objection at trial, even though he and his trial lawyers (which included his lawyer from the appeal) were fully aware of the positions taken by Charter on appeal and had every opportunity to make such objections.

For these and the following reasons, Plaintiff's Motion should be denied.

II.   LEGAL ARGUMENT

A.   The Court Properly Admitted Plaintiff's Emails To Impeach Plaintiff's Testimony By Contradiction And Properly Instructed The Jury At The End Of Trial.

Plaintiff's primary contention is that the Court erred in admitting two emails, Trial Exhibits 526 and 527[1], written by Plaintiff during the litigation process for the purpose of impeaching Plaintiff's testimony about his professionalism and professed lack of temper. Relatedly, Plaintiff contends the Court erred in its instructions to the jury about the reason the emails were admitted and with respect to which issues the jury could consider the emails.

The emails were admitted because, starting in Plaintiff's opening statement and continuing through Plaintiff's testimony, Plaintiff's principle theory of the case was that he was the consummate professional, a "conservative" person who never lost his temper or would have uttered the phrase "kiss my butt's butt" or "anything like that" in *any* context. Banks Dec., Exhs. A (Transcript of Opening Statements at 2:14-3:9, 6:21-25), B (Transcript of Testimony of Terrance Walker at 10:10-15, 10:20-11:1, 13:5-15, 27:20-23, 30:6-18, 113:5-17). Plaintiff's Motion ignores his own opening statement and most of his testimony to instead claim – falsely – that Plaintiff testified only about his professionalism *at work*, and that the emails in question therefore had no bearing on any issue he raised at trial.

Plaintiff's argument relies on various strawmen about the admissibility of the exhibits under Federal Rule of Evidence 408 and a selective reading of only

---

[1] Attached as Exhibits D and C to the Banks Declaration, respectively.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

3

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

portions of his trial testimony.  The exhibits in question were properly admitted for the purpose of impeaching Plaintiff's testimony and theory of the case *by contradiction*, and not to prove his proclivity for telling the truth in general or for any of the other reasons he sets up as strawmen in the Motion for New Trial. Because the exhibits in question were properly admitted, the primary basis for Plaintiff's Motion is in error and should be rejected.

As for Plaintiff's claim that the Court committed instructional error, Plaintiff's argument again ignores that the exhibits were offered for impeachment by contradiction.  While it is true the Court had to clarify its initial limiting instruction with respect to Trial Exhibits 526 and 527, the Court went out of its way to correct its initial limiting instruction in a timely and clear manner, and then correctly instructed the jury again at the conclusion of trial that the exhibits could only be considered on the question of Plaintiff's credibility.  "Juries are presumed to follow the court's instructions." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Yet here, Plaintiff offers nothing to overcome this presumption or indicate that the jurors in this case were, in fact, confused.  Plaintiff's request for a new trial because of the handling of Trial Exhibits 526 and 527 should be denied.

### 1.   Plaintiff's Arguments Grievously Mischaracterize His Testimony.

At the outset, Plaintiff's argument relies on a grievous mischaracterization of the trial record.  Plaintiff falsely claims he never testified about his *general* history of professional communication but testified only that he was professional in his communications at work.  *See* Dkt. 267 at 5:26-6:18, 14:26-15:25[2].  In fact, however, Plaintiff *repeatedly* claimed that he never lost his temper, was not an angry person, and has never communicated with anyone in any context similarly with what Ms. Perales said happened in her April 23, 2014 one-on-one conversation

---

[2] Plaintiff's Motion is at Dkt. 267.  Page numbers are references to the pages as numbered on the bottom of each page of Plaintiff's Motion, not to the page numbers of the ECF filing.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

4

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

with Plaintiff.

This began in Plaintiff's opening statement, which *started* with the statement to the jury that, "[t]his is a case about the old and ugly stereotype of the angry black man," and then repeatedly and falsely claimed that Charter had in fact called Plaintiff "an angry black man." Banks Dec., Exh. A (11/4/2019 Opening Statements Transcript at 2:14-15, 2:22-3:9, 4:13-5:1, 6:21-25 (Plaintiff's Opening)). Plaintiffs' opening statement thereafter continued stressing his central theme of the case; namely, that he never would have been unprofessional at work because *in general* he was not an "angry" person and was not the type of person who "had a problem with his temper" and that he **"is too smart to lose his temper"**:

> This is a case about the old and ugly stereotype of the angry black man.
>
> […]
>
> Terrance Walker was known for doing what we call the kitchen table sale, or the living room sale. It's a tough job. […]
>
> ***This takes a certain personality type.*** This takes a person who can take having doors slammed in his face. This takes a personality type that can handle rejection. **This is not a job for angry people. This is not a profession for angry people. Terrance Walker could never have been successful if he was, or is, the person that they claim him to be. It's not possible.**
>
> […]
>
> **… [T]hey call him an angry black man. They claim that he loses his temper.**
>
> Mr. Walker was not shy about asking for more leads. Again, that's how he makes his money. Mr. Walker was not shy about speaking up when he was assigned the same territory twice in a row. Imagine how hard it is to make a sale to a person who has already closed a door in your

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

5

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

face.  It didn't make any sense.

***But simply because Mr. Walker asked questions, or pressed for his commissions didn't give Charter the right to label him an angry black man*** and to terminate his employment and to take away his ability to make a living, to put a roof over his head, food in his belly, clothes on his back.

[…]

***Mr. Walker could not sell the way he sold if he had a problem with his temper.***  It's not possible.  There's too much rejection, there's too many types of people that you have to deal with.  ***Mr. Walker, quite frankly, is too smart to lose his temper.***

*Id*. (emphasis added).

Plaintiff continued with this theme during his testimony on direct examination by his attorneys.  Contrary to the select quotations he offers in his Motion, Plaintiff's testimony about his temperament was generally ***not*** limited to his behavior or communications at work; instead, he testified that he was a "conservative" person who did not have a temper, that he did not get angry, and that he never used the phrase "kiss my butt's butt" or "anything like that" in any context or at any time:

Q.    And do you like doing door-to-door cable sales?

A.    Yeah, it was actually pretty fun and challenging. There's always something interesting, I mean, you know. You have to think on your toes and -- but, you know, **my personality is I like to meet people, I like to talk to people**, so I -- it kind of grew on me after years of doing it.

…

Q.    Okay.  **And do you consider yourself to have a temper?**

A.    **No. *No, I don't, not at all.***

Q.    With a -- in your opinion, with all the years of experience you have doing door-to-door sales,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

6

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

**could somebody with a temper survive in that business?**

A.    **No,** you couldn't go around being — you can't angry your way into a sale, that's not going to work.

…

Q.    Okay. And when you moved here, did you like the Reno area? Did you like living here?

A.    Yeah, I loved it. I mean, the people were nice.  I mean, I didn't know what to expect being in the middle of a desert in a casino town. **It took me aback a little bit because I was very conservative.**  We don't – I mean, we didn't have the time, there wasn't a lot of casinos there so — but, yeah.  Other than that, the people, when I was going door-to-door, everybody was really nice and genuine and – you know, so I — it just was an added bonus.

…

[Q.]    Had you ever heard the phrase kiss my butt's butt?

A.    No, I had never heard of that before ever.

Q.    **Have you *ever* said anything like that?**

A.    **No, I haven't said *anything* like that.**

…

Q.    Is it your style to -- when you're reporting issues about your employment, to be aggressive or angry when you do that?

A.    **Well, my style is assertive. I don't know about the character of angry or aggressive, but, you know, I'm very assertive because, you know, as a former business owner, I do realize you have to be on top of things to make things run smoothly.**

And I took it seriously when I read this, and understood Charter had basically turned a new leaf, and, you know, that was what was preached to me on the -- the ramp-up period, the two-week training period.  So I took it upon myself to treat my professionalism as if I was running my own business.

Banks Dec., Exh. B (Walker Testimony Tr. at 10:10-15, 10:20-11:1, 13:5-15,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

7

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

27:20-23, 30:6-18) (emphasis added).  Of these excerpts, *only* the last one, in the question, was limited to Plaintiff's on-the-job behavior or temperament; however, even in that exchange, it is not at all clear that Plaintiff's answer was limited to his on-the-job communications.  *Id.*  Moreover, the rest of Plaintiff's testimony was not so limited.

The next day, on cross-examination, Charter followed-up on this testimony.  Far from attempting to "smuggle" in some new contention that was different or inconsistent from what Plaintiff had been asserting throughout his opening statement and direct testimony, the cross-examination followed-up on Plaintiff's contentions about his lack of temper, professionalism and that he never would have said "anything" like "kiss my butt's butt" by asking Plaintiff to confirm that he was, in fact, contending that he was "always professional in [his] communications," which Plaintiff agreed was his contention:

> Q.    All right.  You were talking there at the end about kind of the distinction between assertive and something more than assertive, right?
>
> A.    I was just giving the definition of assertive.
>
> Q.    And yesterday, though, you distinguished between being very assertive and aggressive or angry, right?
>
> A.    Well, I didn't distinguish, I just said that I consider myself assertive.
>
> Q.    You said you were very assertive yesterday, right?
>
> A.    I don't remember saying anything like that, no.
>
> Q.    **And would you contend that you're always professional in your communications.**
>
> A.    **Yeah, I do.**

Banks Dec., Exh. B (Walker Testimony Tr. at 113:5-17) (emphasis added).

Given the statements made in Plaintiff's Opening Statement, his testimony on direct, and now his recommitment to the claim that he was "always professional" on cross-examination, Charter moved forward by seeking to introduce

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

DB2/ 38145482.1

Trial Exhibit 526 for the express purpose of "impeachment," and ***not*** as character evidence (which Plaintiff's counsel did not even assert originally as its objection):

> Q.     So do you remember Katherine McGuigan, my partner?
>
> A.     Yes, I do.
>
> Q.     Was it professional when you told her not to scream rape like a typical racist white lady?
>
> MR. FULTON: Objection, your Honor; hearsay, relevance.
>
> THE COURT: Correct.  I'll sustain it.  You need to establish a foundation did he say such.
>
> Q.     Did you ever write such a thing to Ms. McGuigan?
>
> A.     Not that I can recall.
>
> MR. BANKS: Your Honor, permission to approach the witness with a document.
>
> THE COURT: No, but you can display it on the screen first.  Do you just want to refresh his memory or what are you doing?
>
> MR. [BANKS]: **We would like to use it for impeachment.**

Banks Dec., Exh. B (Walker Testimony Tr. at 113:18-114:10) (emphasis added). Charter's counsel thereafter introduced Trial Exhibit 526, and it was admitted over Plaintiff's objection that the exhibit constituted inadmissible character evidence under Federal Rule of Evidence 404.  *Id.* at 114:11-116:11.

Contrary to Plaintiff's characterizations of Exhibit 526 in his Motion as merely an email that "discussed the issues of white supremacy and historical atrocities committed against black men when white women fabricated against them accusations of rape," Trial Exhibit 526 levied a barrage of over-the-top allegations against Charter and its counsel, far more colorful and offensive than the phrase "kiss my butt's butt" – something the supposedly temper-free Mr. Walker testified he had never said anything like in his life during his direct

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

DB2/ 38145482.1

testimony.  The exhibit thus contradicted and impeached Plaintiff's prior *testimony*, not his general *character*.

Trial Exhibit 527 was admitted later, after Plaintiff's counsel asked Plaintiff some questions about what had caused him to write Trial Exhibit 526.  Banks Dec., Exh. B (Walker Testimony Tr. at 162:8-163:3).  In answering the questions from his attorney, Plaintiff attempted to downplay Exhibit 526, implying it was a single incident, written in response to having allegedly been mischaracterized as "being irate and aggressive and angry" by opposing counsel:

> …it got to the point where it was so ridiculous that I wrote that facetious e-mail back to her to make it a point that, you know, her characterizations were clearly out of line.
>
> I was not being irate.  I had never wrote an irate e-mail.  I don't even know what an irate e-mail looks like.

*Id.*

In fact, Trial Exhibit 526 was not an isolated incident; Plaintiff wrote *many* such emails to Charter's counsel.  Thus, on re-cross, Charter followed up on Plaintiff's testimony, asking:

> Q.   Mr. Walker, in your testimony just now you referred to a facetious e-mail you sent to Mr. Hadacek and Ms. McGuigan, right?
>
> A.   Yes.
>
> Q.   Okay.  You sent several e-mails like that, didn't you?
>
> A.   No.
>
> Q.   Did you send any other e-mails like that?
>
> A.   No.

Banks Dec., Exh. B (Walker Testimony Tr. at 165:7-14).  Plaintiff's denials were false, leading to the admission of Exhibit 527 to impeach this new testimony by contradiction and show that Plaintiff had, in fact, sent other emails making the same kinds of over-the-top accusations as were in Trial Exhibit 526.  *Id.*, (at 165:3-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

10

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

169:3). Again, the exhibit was used to impeach Plaintiff's specific *testimony*, and not his general *character*.

### 2. Exhibits 526 and 527 Were Properly Offered And Admitted To Impeach Plaintiff's Testimony, Not His Character, And Should Not Have Been Excluded Under Rules 401 Or 403.

Plaintiff contends that Exhibits 526 and 527 were offered as evidence to attack Plaintiff's character generally. His argument relies on a number of false claims about what happened at trial and legal strawmen. First, Plaintiff argues that Charter's reasons for offering the exhibits changed over time (Motion at 5:4-25), but he offers no citations to any statement by Charter's counsel to support this false assertion because no such assertion was ever made by Charter. In fact, Charter consistently maintained throughout trial the Trial Exhibits 526 and 527 were being offered to impeach Plaintiff's testimony, and not to impugn his general character. This included when the Exhibits were first offered into evidence (Banks Dec., Exh. B (Walker Testimony Tr. at 113:18-114:10)) and when the parties engaged in more extensive argument before the Court on this subject on the third day of trial (*Id.*, Exh. E (Jury Instruction Transcript at 9:7-12)).

Second, Plaintiff claims that the exhibits should have been excluded as improper character evidence under Federal Rule of Evidence 404, taking great pains to explain why none of the exceptions to Rule 404 in Rules 607, 608 and 609 applied, with particular emphasis on Rule 608(b). (Motion at 12:4-14:5). These are strawman arguments; Charter never offered the exhibits to prove Plaintiff's general character, and specifically did not offer the exhibits pursuant to Rule 608(b), which allows the use of extrinsic evidence, in certain circumstances, "to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). As Charter's counsel explained at trial, Exhibits 526 and 527 were offered to impeach specific testimony offered by Plaintiff, not to attack Plaintiff's general "character for truthfulness." Banks Dec., Exh. E (Jury Instruction Transcript at 9:7-12). The cases cited by Plaintiff in support of his arguments about Rules 607, 608 and 609

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

11

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

are thus not relevant here.

As reluctantly acknowledged by Plaintiff later in his Motion (Motion at 14:6-12, citing *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010)), the Federal Rules of Evidence, and in particular Rule 608(b), do ***not*** prohibit the cross-examiner from introducing extrinsic evidence of specific instances of conduct for other relevant purposes, such as to ***contradict the witness' testimony***.  *United States v. Carthen*,  906 F.3d 1315, 1324-1325 (11th Cir. 2018) (J. Pryor concur.opn.) (collecting cases) (majority of circuits hold that Rule 608(b) does not bar impeachment by contradiction); *United States v. Higa*, 55 F.3d 448 (9th Cir. 1995) (explaining that impeachment by contradiction is not prohibited by Rule 608(b), and explaining differences between introducing extrinsic evidence of a past event to show general character for dishonesty and the admission of extrinsic evidence to specifically contradict testimony offered at trial).  Plaintiff nevertheless contends that Exhibits 526 and 527 should not have been admitted as impeachment by contradiction, either, based on his false characterization of his own testimony.  Per Plaintiff, his "statements about his assertiveness all referred to a specific time period and context."  (Motion at 14:26-28).  In fact, as detailed in the preceding section, Plaintiff prominently contented in Opening Statement and testified extensively under his counsel's direct examination about his supposedly mild "temper," his "conservative" and friendly nature, that he never said "kiss my butt's butt" or "anything like that" in any context, regardless of time period or context.  Banks Dec., Exhs. A (Opening Statements Tr. at 2:14-3:9, 6:21-25), B (Walker Testimony Tr. at 10:10-15, 10:20-11:1, 13:5-15, 27:20-23, 30:6-18).

Third, Plaintiff also claims his testimony under cross-examination that he was "always professional in [his] communications" (*Id.*, Exh. B (Walker Testimony Tr. at 113:5-17)) was insufficient to warrant the admission of 526 to impeach that testimony, because cross-examination – according to Plaintiff – cannot be used to "'smuggle in' an impeaching opportunity that would otherwise be excluded under

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

12

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

the Federal Rules of Evidence." (Motion at 14:13-23) (citations omitted). However, as explained in *United States v. Pantone*, the case relied upon by Plaintiff for this proposition, the rule is only that a party "may not cross-examine on *collateral matters* not testified to on direct in order to establish a ground for the admission of otherwise inadmissible evidence." 609 F.2d 675, 683 (3d Cir. 1979) (emphasis added). Here, the cross-examination was not on a collateral matter; the questioning directly followed Plaintiff's own claims, in opening statement and his direct testimony, and only sought to have him re-commit to those claims before impeaching him. Banks Dec., Exhs. A (Opening Statements Tr. at 2:14-3:9, 6:21-25), B (Walker Testimony Tr. at 10:10-15, 10:20-11:1, 13:5-15, 27:20-23, 30:6-18).

Finally, Plaintiff argues that, even if Exhibits 526 and 527 were admissible as impeachment by contradiction, they should have been excluded as irrelevant and unduly prejudicial under Rules of Evidence 401 and 403. (Motion at 16:1-18:17). Plaintiff, however, did not object to the admission of Exhibits 526 or 527 on those bases. Banks Dec., Exh. B (Walker Testimony Tr. at 114:12-14 and 16:5-9 (objection to admission of Exhibit 526 under Rule 404), 116:3-9 (objecting to admission of Exhibit 527 based on "the objections I made earlier")). Rather, Plaintiff objected only under Rule 404. (*Id.*). Nor should the Exhibits have been excluded under Rules 401 or 403; Plaintiff's entire argument remains premised on his false characterization of his own testimony as limited to discussing the nature of his communications and temper at work. In fact, and as detailed above, Plaintiff's opening statement and direct testimony made numerous representations about his temper and communications in general, which he then re-committed to under cross-examination. Banks Dec., Exhs. A (Opening Statements Tr. at 2:14-3:9, 6:21-25), B (Walker Testimony Tr. at 10:10-15, 10:20-11:1, 13:5-15, 27:20-23, 30:6-18). If Plaintiff did not want to face questioning about his offensive communications outside the workplace, he should not have made his general temper and general nature of his communications a central and recurring theme of his opening

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

13

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

statement and direct testimony.

"The district court has broad discretion over whether to admit extrinsic evidence to rebut a witness' direct testimony, particularly on a matter collateral to the case." *United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir.1993).  In particular, the trial judge has a "high degree of flexibility" in deciding how much inconsistency is enough to permit use of a prior statement for impeachment.  *United States v. Morgan*, 555 F.2d 238, 242 (9th Cir.1977).  Here, in light of Plaintiff's heavy emphasis on his good temper and communications in his opening statement and direct testimony, the Court acted well within its discretion to allow the impeachment of Plaintiff's claims by contradiction through the admission of Exhibits 526 and 527.

### 3.     The Court Properly Instructed The Jury.

Plaintiff's final argument with respect to Exhibits 526 and 527 is that the Court allegedly erred in its instructions to the jury about the exhibits.  (Motion at 18:18-20:19).  Plaintiff's argument first mischaracterizes the Court's instructions, claiming the Court "erred in its instructions to the jury numerous times," then contends the Court's corrective instruction relied on Rule 408(b) for the admission of the exhibits (it did not), and then fails to fully quote the corrective and final jury instructions given to the jury regarding the exhibits.

It is true that the Court's initial limiting instruction to the jury instructed the jury that Exhibits 526 could only be considered on the question of Plaintiff's "character," as opposed to his credibility.  Banks Dec., Exh. B (Walker Testimony Tr. at 114:15 115:2).  Plaintiff further criticizes the Court for stating that the emails were "relevant to rebut Mr. Walker's 'character or propensity for assertive or nonassertive conduct' and to counter the claim that Mr. Walker 'has a peaceful nature,'" denying that Plaintiff ever said such things.  (Motion at 19:6-13 (quoting Walker Testimony Tr. at 114:15 115:2)).  The Court, however, did not have the benefit of a trial transcript and can hardly be faulted for paraphrasing Plaintiff's

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DB2/ 38145482.1

14

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

contentions and testimony in opening statement and direct examination. Although the exact wording may have been different, Plaintiff most certainly represented many times to the jury that he did not have a temper, he did not get angry, and that he never would have said "anything like" what he was accused of saying to his supervisor, Ms. Castillo (Perales), *i.e.*, "kiss my butt's butt." Banks Dec., Exhs. A (Opening Statements Tr. at 2:14-3:9, 6:21-25), B(Walker Testimony Tr. at 10:10-15, 10:20-11:1, 13:5-15, 27:20-23, 30:6-18).

The Court did not, however, link the admission of Exhibit 527 to Plaintiff's character. Instead, the Court correctly cautioned the jury that Exhibits 526 and 527 were admitted for the limited purpose of impeaching Plaintiff's testimony of whether he had written "irate emails" to other people (something he had just denied at Walker Testimony Tr. at 165:7-14 (Banks Dec., Exh. B)) and not to be considered on liability:

> This is really a side issue, ladies and gentlemen. You know, interaction between plaintiff and opposing counsel is not for you to consider on the merits of this case, but the issue of whether he has written quote/unquote irate e-mails to other persons, including counsel on this case, has been opened, so it's an issue. I have to let them go back and forth.

> But I simply add the caution, it's not something you consider on the merits, it's simply on the issue of characterization of the witness's reactions.

Banks Dec., Exh. B (Walker Testimony Tr. at 166:10-19).

The next day, during the conference settling jury instructions, the Court recognized that it had misspoken when it referred to the admission of Exhibit 526 as relevant to the issue of character, and agreed to give a corrected limiting instruction, explaining that the exhibits could only be considered on the question of credibility. Banks Dec., Exh. E (Jury Instruction Settling Tr. at 3:13-5:12). The parties also agreed that Jury Instruction No. 7 appropriately instructed the jury on how to consider impeachment evidence. *Id.* (at 10:10-11:13).

The Court then proceeded to give the instructions it said it would give,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

15

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

advising the jury carefully that it could not consider the exhibits as evidence of Plaintiff's general character, but rather only as to the credibility of his own claims to the jury about his demeanor and style of communications:

> Now, let me pause and intercede at the request of the parties. We did receive into evidence some testimony, e-mails and testimony, about colloquy that went on between Mr. Walker when he was representing himself as an attorney some years after the events in question here with one of the lawyers on the other side.
>
> In addition, some evidence was received only for a limited purpose. When I instructed you to consider certain evidence only for a limited purpose, you must do so, and you must not consider that evidence for any other purpose.
>
> I told you that there was a limiting instruction. That evidence does not go to — and may not be considered by you on the question of character of Mr. Walker. For that purpose, it's improper.
>
> We don't admit, as I already told you, character evidence of other events, for example, like I hit my dog on Thursday night, for my present character. We don't do that.
>
> And you may not consider any of that testimony regarding Mr. Walker's character. You may only consider it for one reason, and that's for the credibility of Mr. Walker.
>
> In other words, Mr. Walker testified that he was, rightfully or wrongfully, that's for to you decide, he testified that he has a calm demeanor and does not raise his voice and did not raise his voice. You've been able to observe him here on the stand.
>
> I had to allow defense attorneys, therefore, to use this evidence to attack his credibility. You will have to make the decision on that. I'm not telling you how to decide it
>
> But what I am telling you is you may not consider any of that evidence, which occurred several years after the facts at issue here, on any of the merits or even on the character of Mr. Walker. You may only consider it for purposes of determining his credibility when he testifies as to his own character or demeanor, okay?

Banks Dec., Exh. F (11/6/2019 Tr. at 363:21-365:6). The Court also gave Jury Instruction No. 7, a model jury instruction on witness credibility that was approved by both parties, which included detailed and evenhanded instructions about how the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

16

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

jury could consider evidence that a witness's testimony had been contradicted. *Id.* (at 366:7-367:20). Moreover, Charter followed the Court's instructions and only made limited reference to Exhibits 526 and 527 in closing, and only in the limited context of Plaintiff's credibility on his testimony and contentions about how he communicates with others. Banks Dec., Exh. G (Defendants' Closing Argument Tr. at 16:18-17:21).

"Juries are presumed to follow the court's instructions." *Richardson*, 481 U.S. at 210. That presumption may only be overcome when "there is an 'overwhelming probability' that the jury will be unable to [do so], and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (*citing Richardson*, 481 U.S. at 208; *Bruton v. United States*, 391 U.S. 123, 136 (1968)). Here, in light of the Court's detailed, final instructions that corrected the Court's prior, single misstatement in front of the jury about considering Exhibit 526 on the issue of Plaintiff's character, and the limited use made of these exhibits at trial, there is no reason to believe the jury was unable to follow the Court's corrected instruction and the model instruction on witness credibility. Plaintiff's request for a new trial based on alleged instructional error should thus be denied.

### B. The Court Properly Exercised Its Discretion To Exclude Plaintiff's Unemployment Determination From Evidence.

The decision by the Employment Security Division ("ESD") of the Nevada Department of Employment, Training and Rehabilitation[3] on Plaintiff's claim for unemployment benefits was properly excluded at trial. On September 23, 2019, the Court granted Charter's Motion *in Limine* No. 3, finding that the ESD's decision was "neither binding nor persuasive," because Plaintiff's ESD claim was "uncontested and did not go through any process of litigation." (Dkt. 215 at 4:5-7.)

---

[3] Plaintiff's brief refers to this agency as "Nevada Department of Employment ("NDE")."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

17

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

The Court concluded that evidence and argument relating to Plaintiff's ESD claim was "irrelevant as well as potentially prejudicial" and was therefore "inadmissible pursuant to Federal Rules of Evidence 401 and 403." (Dkt. 215 at 4:7-8.)

The Court was correct to exclude the ESD's decision and acted well within its discretion. This same issue was previously decided by the District Court of Nevada in the oft-cited decision *Bradshaw*, 885 F. Supp. at 1374, in which the Nevada District Court held that unemployment determinations by the ESD are not binding or admissible because (1) they do not satisfy the requirements for collateral estoppel or other doctrine of preclusion to apply; (2) the admission of such evidence would be unduly prejudicial and insufficiently (if at all) probative; and (3) the admission of such evidence could create incentives undermining the Nevada legislature's purposes in creating the unemployment hearings. *Bradshaw v. Golden Rd. Motor Inn*, 885 F. Supp. 1370, 1374 (D. Nev. 1995). *Bradshaw* has been cited favorably in numerous opinions and decisions around the United States similarly considering whether to admit a state unemployment board's decision in a discrimination case and concluding that the decisions should be excluded. *See, e.g., Pascual v. Anchor Advances Products, Inc.*, 117 F.3d 1421 (6th Cir. 1997) (finding district court acted within its discretion to exclude determination by Tennessee Department of Employment Security); *Williams v. Sysco San Francisco, Inc. Teamsters Local 853*, 2013 WL 1320448, *4 (N.D. Cal. April 1, 2013) (excluding California Unemployment Insurance Appeal Board decision)[4]; *Reed v. Inland Intermodal Logistics Services, LLC*, 2011 WL 4565450, *3 (W.D. Tenn. Sept. 29,

---

[4] Prior to the *Williams* decision, the Eastern District of California denied a motion in limine to exclude a California state unemployment decision in an employment discrimination trial. *Baldwin v. Rice*, 144 F.R.D. 102 (E.D. Cal.1992). *Baldwin* is distinguishable, as noted by the Nevada District Court in *Bradshaw*, because it was a contested proceeding where the defendant "participated fully in the unemployment appeals process" and "the parties had ample incentive to litigate the unemployment claim, the unemployment decision was a part of the EEO file (which itself would be admissible), and the unemployment hearing appeared to have been more extensive and reliable than the EEO investigation." 885 F. Supp.at 1374. None of those factors were present here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

18

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

2011) (excluding decision of Tennessee Department of Labor & Workforce Development); *Collins v. Omega Flex, Inc.*, 2009 WL 10681438, *1 (E.D. Penn. 2009) (excluding decision from Pennsylvania unemployment compensation hearing); *Wiley v. Pless Security, Inc.*, 2006 WL 8431781, *13-*14 (N.D. Ga. July 13, 2006) (excluding Georgia unemployment decision).  Other federal courts not citing *Bradshaw* have also reached similar decisions.  *Rekhi v. Wildwood Indus., Inc.*, 816 F.Supp. 1312 (C.D.Ill.1993) (Mihm, C.J.), *aff'd*, 61 F.3d 1313 (7th Cir.1995); *Wittenberg v. Wheels, Inc.*, 963 F. Supp. 654, 660-61 (N.D. Ill. 1997) (excluding Illinois unemployment decision).

Importantly, Plaintiff's Motion makes **no mention** of *Bradshaw* or any of the other on-point authorities discussing the admissibility of a state unemployment board's determination.  Instead, Plaintiff relies on cases considering the admissibility of "an EEOC probable cause determination" and determinations by NERC (Motion at 21:1-18.), which are separate and distinct from ESD determinations and are not at issue here.

The probative value and risks of undue prejudice and confusion in the admission of a decision by the EEOC or NERC are completely different from the probative value and risks of prejudice in admitting an unemployment decision.  Thus, in *Bradshaw*, the Nevada District Court specifically compared the admissibility of an EEOC determination and an ESD determination, and found them materially distinct on these questions:

> The [ESD] hearing may well be procedurally fair and an adequate record may be made on the issue of discrimination.  Still, state unemployment statutes are even less likely than collective bargaining agreements to contain provisions that "conform substantially" to Title VII; the question at the hearing is whether the employee is entitled to compensation under state statutes, not whether the employee was discriminated against in violation of federal law.  Also, the hearing officer or board will typically have no special competence in deciding claims of discrimination.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

19

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

> Related to the fact that an unemployment hearing is not designed to resolve discrimination *1375 claims is a serious policy concern … [omitting block quotation from *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1284 (9th Cir.1986)]. The *Mack* court held that unemployment proceedings have no collateral estoppel effect in a federal discrimination suit, but the concerns expressed by the court also apply to the question whether a decision based on those proceedings should be admitted into evidence in such a suit.
>
> *Evidence* introduced at an unemployment benefits hearing should, presumably, be admitted in a later lawsuit, subject to the normal rules governing admissibility. But we think that an unemployment hearing officer's *decision*, though it may be admitted in a federal discrimination suit, normally should not be. Unemployment benefits hearings are designed to be quick and inexpensive. If the decision resulting from such a hearing were given collateral estoppel effect in a federal lawsuit, the parties, as the *Mack* court noted, would have every incentive to turn the hearing itself into a full-blown lawsuit. The same incentives would be present, though in weaker form, if the parties knew the decision would be admitted, though not given preclusive effect, in the federal lawsuit.

*Bradshaw*, 885 F. Supp. at 1374-1375 (emphasis in original).

In contrast, the EEOC and NERC both have expertise in making determinations on discrimination claims (which are specifically their charges), the claims decided in such proceedings specifically concern allegations of discrimination (unlike unemployment hearing claims before the ESD), and the consequences of admitting an EEOC or similar state-level probable cause determination are completely different. As the 9th Circuit explained in the *Heyne v. Caruso* opinion relied upon by Plaintiff in support of his motion, an EEOC probable cause determination is only a determination that probable cause exists to conclude that a violation of Title VII may have occurred and does not suggest to the jury that the EEOC has already determined that there has been a violation. 69 F.3d 1475, 1483 (9th Cir. 1995) (*citing Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 504 (9th Cir. 1981)). Consequently the risks of undue prejudice and confusion are **less** than with the admission of a **final** determination by the ESD, which would

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

20

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

be far more likely to create confusion by suggesting to the jury that the claim at issue had actually been decided. *Collins*, 2009 WL 10681438 at *1 ("The risk of unfair prejudice inheres as the Decision 'contain[s] factual conclusions that, if taken at face value, might reasonably be construed as foreclosing deliberation on whether the firing of plaintiff was pretextual'") (citations omitted).

Another important (but not dispositive) distinction between an EEOC determination and an ESD unemployment decision is the Nevada legislature's policy decision that such decisions are not binding or admissible for any reason in a subsequent state or federal court action. NRS 612.533 (unemployment determinations are "not admissible or binding in any separate or subsequent action or proceeding, between a person and that person s present or previous employer brought before an arbitrator, court or judge of this State or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts"). Although Nevada's statutory determination is not binding on a federal court, "it certainly merits consideration as an expression of the state's policy concerns." *Bradshaw*, 885 F. Supp. at 1375 n.5. In particular, *Bradshaw* warned that "an unemployment hearing may turn into full-blown litigation if the parties know that a decision resulting from the hearing will be admissible in a subsequent discrimination suit," transforming what are supposed to be "quick and inexpensive" proceedings concerning only an employee's eligibility for unemployment benefits. *Id.*

Thus, "the determination of a state legislature that certain agency proceedings are not to be utilized in court proceedings should not be dismissed lightly" because: (1) the state legislature knows the process in which unemployment insurance disputes are resolved; (2) the state legislature "is in a good position to evaluate the weight to give to such a process"; and (3) "decisions of fact or law should not differ simply because the court in which one happens to litigate is federal as opposed to state." *Wiley*, 2006 WL 8431781, *13 (quoting *Baldwin*, 144

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

21

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

F.R.D. at 106). Here, again, Plaintiff's Motion makes no mention of NRS 612.533 or the Nevada legislature's policy decision that ESD decisions should not be admissible, let alone why Nevada's clear policy against the admissibility of the ESD's decisions should be disregarded.

Finally, Plaintiff's argument that the ESD determination "would have been especially relevant evidence of what Charter's position was [at the time of the ESD determination]" is contradicted by Plaintiff's own admission that Charter did not oppose Plaintiff's ESD unemployment claim and offered no position to inform or influence the ESD's determination. (Dkt. 267 at 26:8-14.) Plaintiff's ESD was thus properly excluded from evidence.

Two additional reasons also support denying Plaintiff's Motion on this ground. First, given the overwhelming weight of the evidence showing that Plaintiff was terminated for legitimate reasons, and the complete absence of any evidence of racial animus or pretext by Charter, the exclusion of this evidence did not and could not have caused Plaintiff "substantial prejudice"; the verdict would not have come out any differently had the ESD decision been admitted, providing an independent basis for denying his second ground for a new trial. Second, the Court's order excluding the ESD decision was only a "preliminary" ruling, as noted in the Court's order. (Dkt. 215 at 2:9-15). The Court described its order as "not binding" and advised that the Court could "change [its] mind during the course of trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)). Plaintiff thereafter never sought to introduce the ESD decision, let alone lay foundation for it or attempt to satisfy the other evidentiary prerequisites to its admission. Thus, Plaintiff's Motion with respect to the ESD decision should also be denied because (1) the exclusion of the ESD decision did not substantially prejudice Plaintiff and (2) Plaintiff did not properly preserve the issue at trial.

**C.     Charter Never Asserted That Plaintiff Was Terminated Based On Conduct in 2013.**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

22

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

Finally, Plaintiff claims that Charter committed a fraud on the Court, thereby warranting a new trial, by allegedly contending at trial that Plaintiff was terminated in April 2014 in part due to events from 2013.

Plaintiff's contention is false. Charter never contended at trial that Plaintiff was terminated for things that happened in 2013. Plaintiff cites to a portion of Larson's cross-examination **by Plaintiff's counsel**, wherein Larson was asked whether his superiors agreed that Plaintiff's employment should be terminated based solely on the events of April 23, 2014, when Plaintiff had been disrespectful to a supervisor, Adrian Ybarra, on a group "Zero Sales Call" and then even more disrespectful to a second supervisor, Norma Castillo (Perez) during a follow-up, coaching call. Larson Cross-Examination Transcript at 10:17-11:9. After Larson agreed that his supervisors had found those events insufficient, he was then asked vaguely **by Plaintiff's counsel** (*i.e.*, not by Defendants' counsel) whether he then "instructed Ms. Perales to gather information from the past." *Id.* Larson responded, "To put the corrective action documents together, yes, sir." Neither the question nor the answer said anything further about *which* events were considered or *from what year*. *Id.* This is the **sole citation** to the record provided by Plaintiff to support his preposterous contention that Defendants defrauded the Court.

Although Larson was never asked by Plaintiff's counsel what "information from the past" was considered, the rest of the trial record makes clear that the prior incidents considered were from March and April 2014 – **not 2013**. This is shown in the "corrective action documents" referenced by Larson in his cited testimony and which were admitted at trial as Trial Exhibit 518.[5] The only corrective actions referenced in Trial Exhibit 518 were from April 7, 8 and 23, 2014 (Exhibit 518, p. 1), while the "Investigative Facts and Details" only reference events from March 26 and April 4, 7, 8, 23 and 24, 2014 (Exhibit 518, pp. 2-3). No incidents from 2013 were referenced. (*Id.*). Similarly, the direct testimony of Norma Castillo (Perales)

---

[5] Attached to the Banks Declaration as Exhibit I.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

23

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

confirmed that the "earlier unprofessional behavior" that she and Larson considered when making their decision to terminate Walker's employment specifically referred to incidents on April 4, 7 and 8, 2014.  Banks Dec., Exh. J (11/5/2019 Trial Tr. 262:19-263:10, 265:4-267:24 (Castillo Direct)).  The same position was taken in closing argument, where only the 2014 incidents were presented as bases for Walker's termination.  *Id.*, Exh. G (11/6/2018 Defendants' Closing Tr. at 14:16-17:21).  At no point did Larson, Castillo (Perales) or anyone else testify, or Charter argue that Walker was terminated due to events in 2013.

To the extent events in 2013 were referenced by Defendants at trial, they were only to show that (1) Charter, far from discriminating against Plaintiff, treated Plaintiff fairly and praised his performance until after his attitude changed at work following his trip to Vietnam in February 2014; and (2) Walker had received a warning for inappropriate communications with a co-worker in November 2013, to rebut Walker's oft-made contention[6] that he had never received any prior coachings or warnings about his communications before he was terminated.  Banks Dec., Exh. J (11/5/2019 Tr. at 213:8-214:17 (Castillo Direct), at 290:16-291:7, 293:7-294:8 (Larson Direct)), Exh. G (11/6/2019 Defendants' Closing Tr. at 13:17-13:21, 21:3-23:4).  But aside from the November 2013 incident which lead to a coaching (but which was not one of the incidents cited by Defendants as a reason for the termination of Walker's employment), Charter and its witnesses testified consistently that they saw nothing negative about Walker's other interactions with Charter's employees and supervisors in 2013, including his interactions with Larson.  *Id.*

Finally, to the extent Walker believed Charter or its witnesses offered testimony or made arguments about events in 2013 that Charter should have been

---

[6] *See* Banks Dec., Exhs. A (11/4/2019 Opening Statements Tr. at 5:6-9, 7:18-20 (Plaintiff's Opening)), B (11/4/2019 Walker Tr. at 84:19-85:7, 88:4-89:25 (Walker Direct)), G (11/6/2019 Tr. 382:2-11, 382:20-383:3, 384:16-18 (Plaintiff's Closing)).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

24

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC

estopped from making, Walker never made any such objection. This is important because Walker's last basis for asking for a new trial cannot remotely be considered as a "fraud on the court," even if Charter had argued (and, to be clear, Charter did not) that Walker was terminated for events in 2013. After all, Walker's argument does not concern some new fact or piece of evidence he only learned about after trial. Walker was fully aware of the statements or representations made by Charter on appeal and he had the opportunity to object to anything he believed was contradictory, to ask that Charter be estopped from making such contentions, to ask that the jury be instructed on any fact he believed was established during the appellate process, or to try to introduce statements from the appellate process to impeach Charter's witnesses at trial. But he never sought to do any of those things. Charter submits that Walker did not try to do these things because Charter never made any argument and never introduced any evidence to contend that Walker was terminated due to events in 2013, but even if it had, Walker waived any such objection because he was fully aware of this issue and never made an objection or sought any other relief at trial.

## III.   CONCLUSION

For the foregoing reasons, Walker's Motion for New Trial should be denied.

Dated:  October 8, 2019                MORGAN, LEWIS & BOCKIUS LLP


By /s/ Christopher J. Banks
    Ingrid A. Myers
    Christopher J. Banks
    Kathryn T. McGuigan

Attorneys for Defendant,
CHARTER COMMUNICATIONS LLC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 38145482.1

25

OPP TO MOTION FOR NEW TRIAL
3:15-CV-00556-RCJ-CBC