LAW OFFICE OF JEFFREY D. FULTON
Jeffrey D. Fulton, *pro hac vice*
2150 River Plaza Drive, Suite 260
Sacramento, CA  95833
Telephone:    (916) 993-4900
Facsimile:    (916) 441-5575
Email:        JFulton@JFultonLaw.com

WEINTRAUB TOBIN
Brendan J. Begley, *pro hac vice*
400 Capitol Mall, 11ᵗʰ Floor
Sacramento, CA  95814
Telephone:    (916) 558-6000
Facsimile:    (916) 446-1611
Email:  bbegley@weintraub.com

Attorney for Plaintiff
TERRANCE WALKER

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE WALKER,<br><br>                    Plaintiff,<br><br>        v.<br><br>CHARTER COMMUNICATIONS LLC.,<br><br>                    Defendants. | CASE NO. 3:15-cv-0556-RCJ-CBC<br><br>REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59 AND FOR RELIEF FROM JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3)<br><br>Trial Date:    November 4, 2019<br>Judge:    Robert C. Jones<br>Judgment Filed:    December 23, 2019 |

*(left margin, rotated)* **weintraub tobin** chediak coleman grodin / law corporation

{2839056.DOCX;}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

I.    Introduction ....................................................................................................................... 1

II.   The Court should order a new trial based on conceded instructional error and erroneous admission of Mr. Walker's emails ................................................................. 2

    A.    The Court conceded its repeated instructional errors, but its purported curative instruction likely only further confused the jury ...................................................... 2

    B.    The Court erred in admitting the emails, which were inadmissible as character evidence, inadmissible as impeachment evidence, irrelevant, and overwhelmingly prejudicial ........................................................................................ 5

        1.    The emails were inadmissible as impeachment evidence. ............................. 5

        2.    The emails were irrelevant and Mr. Walker properly objected to their relevance at trial ............................................................................................. 7

        3.    The emails were unfairly prejudicial and mislead the jury, and Mr. Walker properly objected on these grounds at trial ................................................... 8

III.  The Court Should Grant Mr. Walker Relief From Judgment Due To Charter's Fraud, Misrepresentation, Or Misconduct In Contradicting Its Prior Position That Mr. Walker Was Not Terminated Based On Any Events From 2013 ................................................. 9

IV.   State evidentiary standards and the purported absence of other evidence cannot be relied upon to preclude Walker's ESD evidence ........................................................ 12

V.    Conclusion ....................................................................................................................... 13

**weintraub tobin chediak coleman grodin**
law corporation

TABLE OF AUTHORITIES

**<u>Cases</u>**

*Bd. of Prof'l Responsibility v. Custis*, 348 P.3d 823 (Wyo. 2015) ........................................ 12

*EEOC v. Bob Evans Farms*, 275 F.Supp.3d 635 (W.D. Pa. 2017) ..................................... 12

*EEOC v. Inland Marine Indus.*, 729 F.2d 1229 (9th Cir. 1984).......................................... 12

*Hernandez v. Hughes Missile Systems Co.*, 362 F.3d 564 (9th Cir 2004 ) ......................... 11

*Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995) ................................................................ 13

*Li v. Canarozzi*, 142 F.3d 83 (2nd Cir 1998) ..................................................................... 8

*McDowell v. Brown,* 392 F.3d 1283 (11th Cir. 2004) .................................................. 12, 13

*Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005) ........................................................ 2

*Planned Parenthood v. Center for Medical Progress*, 890 F.3d 828 (9th Cir 2018) ............. 12

*Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88 (6th Cir. 1982).... 11

*Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011) .................................................. 2

*Thomas v. Eastman Kodak Co.,* 183 F.3d 38 (1st Cir. 1999) .............................................. 12

*United States v. Carthen*, 906 F.3d 1315 (11th Cir. 2018).................................................. 8

*United States v. Higa* (9th Cir. 1995) 55 F.3d 448 ....................................................... 5, 6

*United States v. McFall* (9th Cir. 2009) 319 F.App'x 528..................................................... 6

*United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010).............................................. 6

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) .................................................. 11

*Washington v. Garrett,* 10 F.3d 1421 (9th Cir.1993)........................................................ 12

*Zhang v. Zhang*, 2019 U.S. Dist. LEXIS 24372, at *15 (S.D.N.Y. Feb. 14, 2019) ................. 4

**<u>Rules</u>**

Fed. R. Evid. 401............................................................................................................. 7

Fed. R. Evid. 402............................................................................................................. 7

Fed. R. Evid. 403.......................................................................................................... 8, 9

Fed. R. Evid. 608(b) ............................................................................................... 1, 4, 7, 8

Fed. R. Evid. 803(8)........................................................................................................ 12

weintraub tobin chediak coleman grodin
law corporation

**Other Authorities**

27 Charles Alan Wright et al., Federal Practice and Procedure § 6119 (2d ed. 2007)........... 8

Edward J. Imwinkelried, *Formalism Versus Pragmatism in Evidence*,

   48 Creighton L. Rev. 213, 234 (2015) ......................................................................... 8

weintraub tobin chediak coleman grodin
law corporation

**weintraub tobin** chediak coleman grodin
law corporation

I.    Introduction

Defendant Charter Communications, LLC, ("Charter") concedes that the Court erred in admitting into evidence two emails—defense exhibits 526 and 527, which plaintiff Terrance Walker sent to Charter's counsel almost five years after Charter terminated Mr. Walker—and then instructing the jury that it could consider the emails as evidence of Mr. Walker's character. Charter could hardly avoid this concession after the Court acknowledged its error and changed its reasoning, admitting the emails instead as evidence of Mr. Walker's "credibility with respect to his testimony on his propensity for calm, professional demeanor."

Charter now hangs its hat on the exception to Federal Rule of Evidence 608(b) that allows extrinsic evidence to be used to impeach by contradiction testimony given on direct examination. During trial, Charter's attorneys explained, like the Court, that Charter offered the emails "specifically to impeach [Mr. Walker's] claims that he always communicates professionally, that he does not communicate aggressively but only very assertively." Charter apparently later realized it referenced testimony Mr. Walker gave only on **cross-examination**, not direct, which falls outside the exception.

So, in its opposition, Charter turns instead to one statement by Mr. Walker about not having a temper and another statement about not using a unique and bizarre phrase ("kiss my butt's butt"). These statements are not contradicted by the emails, which do not reference a temper, kissing, or any butts. For that matter, the emails do not even contradict Mr. Walker's statements on cross-examination that he always behaved professionally and had an assertive manner *in the workplace*. First, the emails may arguably permit the inference that Mr. Walker was **acting** unprofessionally by writing them, but such evidence is propensity evidence, not impeachment by contradiction. Charter fails to point to any specific verbiage in the emails they actually refer to as impeaching Mr. Walker's testimony. Second, Mr. Walker's statements on cross-examination were about his manner *in* the workplace, while Mr. Walker sent the emails *outside* the workplace **while engaged in contentious litigation.**

///

///

weintraub tobin chediak coleman grodin
law corporation

Either the erroneous admission of the emails or the repeated erroneous instruction that the jury could consider the emails as evidence of Mr. Walker's would-be character for untruthfulness are sufficient to require a new trial.  The jury was told repeatedly that it could weigh Mr. Walker's character based on his pleas for opposing counsel to discontinue what he saw as racist tactics, which must have weighed heavily in a racial discrimination case, especially given that the emails were the only two exhibits Charter introduced during Mr. Walker's testimony.

II.    **The Court should order a new trial based on conceded instructional error and erroneous admission of Mr. Walker's emails.**

The Court should grant Mr. Walker a new trial because the Court erroneously admitted Mr. Walker's emails and concededly misdirected the jury to consider those emails as evidence of Mr. Walker's character. Charter has not carried its burden to show that either of those errors was more likely harmless than not. *See Sanders v. City of Newport*, 657 F.3d 772, 782–783 (9th Cir. 2011) (holding that, when "it is impossible to determine from the jury's verdict and evidentiary record that the jury would have reached the same result had it been properly instructed," it must be concluded that a "district court's error … was not harmless); *accord Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005) ("[P]resuming prejudice, rather than harmlessness, is required by Supreme Court precedent.").

A.    **The Court conceded its repeated instructional errors, but its purported curative instruction likely only further confused the jury.**

The Court erred by repeatedly instructing the jury to consider Mr. Walker's emails as evidence of his character. When Mr. Walker's counsel first objected the introduction of the emails, the Court explained:

> I have to overrule that. You – the plaintiff has raised the issue of **character or propensity for assertive or nonassertive conduct**, and therefore I have to let him rebut it. So I'm going to overrule that on that issue, you know, not on all 404 evidence.

> That means, ladies and gentlemen, we don't take evidence that you didn't like your dog yesterday and so you whipped him in a trial on some other issue. That's what 404 evidence is.

> So in this case plaintiff has raised the issue that he has a peaceful nature, and that's appropriate, but I have to let the other side counter that. So on that limited area of **character**, you may question.

Walker Transcript at 114:12–115:2.

When Charter sought to introduce the second email, the Court reiterated to the jury that it could consider the emails as evidence of Mr. Walker's character, even explaining to the jury that the emails could be characterized as "irate":

> This is really a side issue, ladies and gentlemen. You know, interaction between plaintiff and opposing counsel is not for you to consider on the merits of this case, but the issue of whether he has written quote/unquote **irate** e-mails to other persons, including counsel on this case, has been opened, so it's an issue. I have to let them go back and forth. But I simply add the caution, it's not something you consider on the merits, it's simply on the issue of **characterization of the witness's reactions**.

Walker Transcript at 166:10–19. The Court emphasized character shortly thereafter when it admitted defense exhibit 527: "This is a side issue, and the only issue here at all is Mr. Walker's discourse with opposing counsel. It doesn't bear on the actual merits of the case, just on the question of **character**." Walker Transcript at 168:14–17.

The Court later admitted these instructions to the jury were erroneous: "I probably used that term [(character)], and that was wrong." Jury Instruction Transcript at 1:1–2. Charter too obliquely concedes that the emails were not admissible as character evidence and the Court's instructions to the contrary were erroneous. *See* Def.'s Opp. to Mot. for New Trial at 20:21–23[1] ("The next day, during the conference settling jury instructions, the Court recognized that it had misspoken when it referred to the admission of Exhibit 526 as relevant to the issue of character.").

The Court then attempted to cure the erroneous instructions at the end of the trial:

> Now, let me pause and intercede at the request of the parties. We did receive into evidence some testimony, emails and testimony, about colloquy that went on between Mr. Walker when he was representing himself as an attorney some years after the events in question here with one of the lawyers on the other side.
> In addition, some evidence was received only for a limited purpose. When I instructed you to consider certain evidence only for a limited purpose, you must do so, and you must not consider that evidence for any other purpose.
> I told you that there was a limiting instruction. That evidence does not go to — and may not be considered by you on the question of character of Mr. Walker. For that purpose, it's improper.

---

[1] Mr. Walker uses the ECF page numbers at the top of the pages when referring to Charter's opposition, rather than the numbers Charter put at the bottom of the pages. Charter failed to follow Local Rule IA 10-1(a)(5), which requires that **all** pages be numbered consecutively, so Charter's opposition contains two different sets of numbers.

**weintraub tobin** chediak coleman grodin
law corporation

We don't admit, as I already told you, character evidence of other events, for example, like I hit my dog on Thursday night, for my present character. We don't do that.

And you may not consider any of that testimony regarding Mr. Walker's character. You may only consider it for one reason, and that's for the credibility of Mr. Walker.

In other words, Mr. Walker testified that he was, rightfully or wrongfully, that's for to you decide, he testified that he has a calm demeanor and does not raise his voice and did not raise his voice. You've been able to observe him here on the stand.

I had to allow defense attorneys, therefore, to use this evidence to attack his credibility. You will have to make the decision on that. I'm not telling you how to decide it.

But what I am telling you is you may not consider any of that evidence, which occurred several years after the facts at issue here, on any of the merits or even on the character of Mr. Walker. You may only consider it for purposes of determining his credibility when he testifies as to his own character or demeanor, okay?

Banks Dec. in Opp. to Mot. for New Trial, Exh. F (11/6/2019 Tr. at 363:21-365:6).

The Court's curative instruction was insufficient for three reasons. First, the Court used the same example about hitting a dog that it had previously used in explaining to the jury that it **was allowed** to consider the emails on a "limited issue" of Mr. Walker's character. *See Walker Transcript* at 114:12–115:2. The use of the same story in both situations surely confused the jury as to when character evidence was allowed and was not, and the jury may have assumed it was allowed to consider the emails on the "limited issue" of Mr. Walker's character that the Court previously referred to.

Second, the Court referred only to testimony, not the emails, when explaining "you may not consider any of that testimony regarding Mr. Walker's character." When coupled with the Court's earlier erroneous instruction regarding the emails specifically—given at the time the jury was shown the emails—this was not sufficient to explain to the jury that it could not consider the emails as evidence of Mr. Walker's character.

Third, the Court confusingly explained: "You may only consider it for purposes of determining his credibility when he testifies as to his own character or demeanor, okay?" This is a distinction without a difference and underlines the inadmissibility of the emails (discussed below). *See Zhang v. Zhang*, 2019 U.S. Dist. LEXIS 24372, at *15 (S.D.N.Y. Feb. 14, 2019) ("To the extent that the evidence spoke to **credibility**, Rule 608(b) bars extrinsic evidence.") By this statement, the Court authorized the jury to determine whether its interpretation of Mr.

**weintraub tobin** chediak coleman grodin
law corporation

Walker's act in sending the emails to opposing counsel, the text of which did not contradict any of Mr. Walker's testimony, should lead the jury to distrust Mr. Walker's testimony about his behavior in the workplace. This instruction is a textbook example of character evidence, and it certainly could not cure the Court's earlier repeated erroneous instructions that the jury should consider the emails as character evidence.

Because the Court erred in instructing the jury, and because Charter has not carried its burden to show the error was harmless, the Court should grant Mr. Walker a new trial.

**B. The Court erred in admitting the emails, which were inadmissible as character evidence, inadmissible as impeachment evidence, irrelevant, and overwhelmingly prejudicial.**

The Court and Charter seemingly agree that the emails were not admissible as character evidence. The emails also were not admissible as impeachment evidence and, in any event, were irrelevant and unduly prejudicial.

**1. The emails were inadmissible as impeachment evidence.**

The Court suggested that "the only reason we let in 40[4] evidence in that regard is as to Mr. Walker's credibility. When he makes the statement, 'I'm always professional, I don't raise my voice,' I have to let the jury decide that question." Jury Instruction Transcript at 5:4–7; *see also* Jury Instruction Transcript at 5:19–21 ("It's not -- it doesn't go to character, it just goes to credibility with respect to his testimony on his propensity for calm, professional demeanor."). Thus, the Court determined that the jury could infer from the language of Mr. Walker's emails that he was not acting professionally or calmly and therefore tends not to act professionally or calmly in general. The words of the emails do not contradict Mr. Walker—he does not say he is unprofessional—only the jury's possible interpretation of his actions contradicts the proposition that he is always professional.

The Court's reasoning on this point has two shortcomings. First, there is a distinction between conduct and statements. In *United States v. Higa*, cited by Charter, the Ninth Circuit ruled that impeachment by contradiction is only permitted if based on something a defendant said in the past, not something a defendant does:

///

weintraub tobin chediak coleman grodin
law corporation

Their testimony was not about something [the defendant] had done in the past, which would tend to show that he was a dishonest person. That would be impeachment by past conduct. Rather, the testimony was about what [the defendant] had said in the past, which would tend to show that his past accounts of what had happened differed from his present account. That is impeachment by prior inconsistent statements, or, as it is sometimes called, impeachment by contradiction.

(*United States v. Higa* (9th Cir. 1995) 55 F.3d 448, 451–452; *cf.* Jury Instruction Transcript at 3:8–10 ("I've ruled that [Mr. Walker] can be challenged on prior inconsistent statements with respect to interaction with Ms. McGuigan.") Under the Court's ruling, Mr. Walker's act in sending an email with racially charged language contradicts his statement that he acts professionally in the workplace. This erroneously allows propensity evidence to sneak in through the impeachment by contradiction exception.

Second, the Court refers to statements Mr. Walker made on cross-examination, as Charter's counsel was angling to open the door to get in the emails. *See* Walker Transcript at 113:15–21. "Impeachment by contradiction, however, is not permitted to rebut statements that a witness makes during cross-examination." (*United States v. McFall* (9th Cir. 2009) 319 F.App'x 528, 531.)   Even ignoring that limitation, Mr. Walker's statements on cross-examination were about his manner in the workplace, while Mr. Walker sent the emails outside the workplace. *See United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010) (error to admit testimony about a witness's prior contact with drugs to contradict the witness's statements that he had never seen drugs because those statements, taken in context, referred to a specific time period, not the time of the drug contact the prosecution sought to introduce). Moreover, Walker was engaged in the process of contentious litigation.

Charter similarly stretched what Mr. Walker actually said as it prepared to discuss his emails in its closing statement, starting with professional communication and then dropping professional and switching to written communication, which was otherwise nowhere at issue or in evidence in this case, not to mention substituting aggressive for assertive. Supp. Decl. of B. Begley, Ex. F ("Defendant's Closing Transcript") at 16:18–20 ("Is it true that Mr. Walker never communicates unprofessionally, that he's never aggressive in his communications, especially his written communications?").

weintraub tobin chediak coleman grodin
law corporation

Perhaps acknowledging the shortcomings of the previous explanation, Charter points to completely different statements by Mr. Walker that are supposedly contradicted by the emails: "Plaintiff most certainly represented many times to the jury that he did not have a temper, he did not get angry, and that he never would have said 'anything like' what he was accused of saying to his supervisor, Ms. Castillo (Perales), i.e., 'kiss my butt's butt.'" Def.'s Opp. to Mot. for New. Trial at 20:2–5; see Walker Transcript at 10:20–21; 27:19–23.[2] These statements are not contradicted by the emails, which do not reference a temper, kissing, or any butts. In other words, Charter implicitly argues that the jury should be able to infer from Mr. Walker's actions that he had a propensity to be hot-tempered or unprofessional, as evidenced by his past conduct in sending the emails. But, as the Court explained, propensity evidence is not admissible here: "I'm not going to let them consider it for character, [that] he has a propensity to lose his temper. I'm not going to permit that, and I'll make that clear." Jury Instruction Transcript at 8:20–22.

Charter does not even attempt to argue that the erroneous admission of the emails was not prejudicial, so it has failed to carry its burden to show that the error was more likely harmless than not. Accordingly, the Court should also grant Mr. Walker a new trial based on this error.

> ### 2.    The emails were irrelevant and Mr. Walker properly objected to their relevance at trial.

As established above, Mr. Walker's emails, unless the jury was allowed to use them as propensity evidence, were not relevant to the material issues in the case. Fed. R. Evid. 401, 402. The emails were sent nearly five years after Mr. Walker's termination and were not sent in a workplace, but rather as a plea to opposing counsel in this litigation to cease using tactics Mr. Walker perceived to be racist. Charter claims Mr. Walker did not object to the relevance of the emails but, in fact, Mr. Walker's counsel's first objection upon Charter's initial reference to the emails was to relevance. Walker Transcript at 113:22–23. Mr. Walker's counsel also referenced the irrelevance of the emails in moving for a mistrial and reiterated those arguments

---

[2] Charter also refers extensively to comments made by Mr. Walker's counsel in opening statement, but statements by counsel have no relevance to the impeachment by contradiction exception to Rule 608(b).

weintraub tobin chediak coleman grodin
law corporation

in seeking a curative instruction that the emails should not have been admitted. Mot. for Mistrial Transcript at 2:14–15; Jury Instruction Transcript at 8:5–10. The emails are not relevant, Mr. Walker objected properly, and the Court should grant a new trial to remedy the error.

### 3. The emails were unfairly prejudicial and mislead the jury, and Mr. Walker properly objected on these grounds at trial.

Courts have recognized that evidence of collateral prior acts, even if admissible to impeach, "often threatens to 'utterly destroy[]' 'the purpose of Rule 608(b)' by permitting a party to mount a de facto attack on a witness's character for truth." *United States v. Carthen*, 906 F.3d 1315, 1324 (11th Cir. 2018) (Pryor, J., concurring) (quoting 27 Charles Alan Wright et al., Federal Practice and Procedure § 6119 (2d ed. 2007)). "When this threat arises, there is a serious risk of 'undue consumption of time entailed in the presentation of the extrinsic evidence' and a 'danger that the jurors'[] consideration of the extrinsic credibility evidence will distract them from the historical merits.'" *Id.* at 1324–25 (quoting Edward J. Imwinkelried, *Formalism Versus Pragmatism in Evidence*, 48 Creighton L. Rev. 213, 234 (2015)).

"Because of this problem, '[w]hen extrinsic evidence offered to contradict undermines the[] purposes of Rule 608(b), that evidence becomes a strong candidate for exclusion under Rule 403,' especially when the evidence is not otherwise 'admissible to prove facts pertinent to other issues in the case.'" *Id.*at 1325 (quoting Wright et al., *supra*, § 6119).

Here, as the Court noted, the emails are "a side issue" not "on the merits of this case." Walker Transcript at 166:10–13. To the extent the Court decides the emails had even slight relevance as would-be impeachment evidence, it was overwhelmingly outweighed by the unfair prejudice and danger of confusing the jury as to the issues in the case. Mr. Walker repeatedly raised these objections at trial. Mot. for Mistrial Transcript at 2:8–15; Jury Instruction Transcript at 6:14–17; *see also* Jury Instruction Transcript at 7: 2–4; *Li v. Canarozzi*, 142 F.3d 83, 88 (2nd Cir 1998) ("Although the court did not cite Rule 403 by number at trial, it is clear that its ruling was based on that Rule.").

///

///

**weintraub tobin** chediak coleman grodin
law corporation

The emails injected into the case the issues of white supremacy and historical atrocities committed against black men when white women fabricated rape accusations against them; issues which were sure to discomfort the all-white jury and put them on the defensive and sure to affect their consideration of Mr. Walker's claims that he had been discriminated against for being black. Given the minimal evidentiary value of the emails in this case, the Court should have excluded the emails under Rule 403, even if for no other reason. Again, Charter has not attempted to argue that the admission of the emails was more likely harmless than not, so it has not carried its burden. The Court should also grant a new trial on this ground.

III.    **The Court Should Grant Mr. Walker Relief From Judgment Due To Charter's Fraud, Misrepresentation, Or Misconduct In Contradicting Its Prior Position That Mr. Walker Was Not Terminated Based On Any Events From 2013.**

As explained in the memorandum accompanying Mr. Walker's motion for a new trial, Charter either misled Mr. Walker or the courts about its reasons for his termination. In its opposition, Charter has ignored the declaration of Mr. Walker's former supervisor, Norma Perales, wherein Ms. Perales claimed that Mr. Walker's behavior on one training call on April 23, 2014 and during her follow-up with him after the call were the basis for Mr. Walker's termination. See ECF No. 128 at 5–6. Charter now insists that it based its decision to terminate Mr. Walker on conduct before April 23, 2014, in March and April of 2014 but not from 2013. (Def.'s Opp. to Mot. for New Trial at 28:19–21.) This is an admitted contradiction of Charter's prior position.

Additionally, though Charter claims repeatedly in its opposition that "Charter never contended at trial that Plaintiff was terminated for things that happened in 2013," Charter fails to mention testimony and argument by Charter's counsel that show otherwise:

- Q Now, you would agree you had at least one incident in the fall of 2013 when you apologized to Ms. Perales, correct?
  A I might have, vaguely.
  . . .
  So you admit that you apologized to Ms. Perales because you got mad at an installer for not getting your job in?
  A No, that's not the correct characterization of what happened.
  Q You got mad at the installers for not doing their job, and you hung up on Ms. Perales, correct?
  A That's not a correct characterization of what happened.
  Q Again, you gave that deposition on March 18th, 2016, correct?
  A I didn't give that characterization of what you're talking about, getting mad

**weintraub tobin** chediak coleman grodin
law corporation

and hanging up and yelling at an installer, no, that's not the characterization. That's not the correct verbiage of -- that's not the correct incident -- that's not the correct -- what do I want to say? That's not the correct details of that incident.

Q All right. So you didn't get mad at the installer?

A Well, I don't know, I probably did, but I didn't yell at him.

Q You apologized to Ms. Perales because you got mad at the installer, and you hung up the phone on Ms. Perales.

A I don't know if I hung up on her per se. I might have been out in the field, I might have hung up on accident, I don't know. Like I said, it's been about five years ago.

Walker Transcript at 137:16–18, 138:10–139:8.

- Q And let me move forward -- well, let me just first ask in general, was there an incident in the fall of 2013 that came up where you were concerned Mr. Walker may have had an interaction with a tech operations manager that may have been inappropriate?
  A Yes.

Decl. of C. Banks Opp. Mot. for New Trial, Ex. J at 217:4–9; *see also* Decl. of C. Banks Opp. Mot. for New Trial, Ex. J at 217:10–222:9 (detailing incident at length).

- What happened, unfortunately, is that Mr. Walker did lose his temper at work, and he lost it with his supervisors, and he didn't just do it once on the zero sales call, he did it repeatedly.

  The first time it shows up is back on November 14th, 2013, when he was actually doing really well with his sales, and Ms. Perales was brought into an incident where Mr. Walker had an disagreement with an installing technician about this installation of cable, and there was a question about an asbestos plate.

  And she received differing accounts from Mr. Walker and from the technicians. Mr. Walker said the technicians got mad at him, but the technicians said Mr. Walker got mad at them, that he had yelled at them on the phone and cussed them out.

  He wasn't disciplined for this, he was advised at the time, you know, be careful in your communications, communicate professionally.

Decl. of C. Banks Opp. Mot. for New Trial, Ex. A at 13:13–14:5.

- He was warned on November 14, 2013, after the incident with the tech operations supervisor, you know, be careful how you're talking to people.

Defendant's Closing Transcript at 22:12–14; *see also* Defendant's Closing Transcript at 24:1–5 (referring to the November 2013 phone hang up incident as justifying Mr. Walker's termination).

All of this testimony and argument uses the November 2013 incident as justification for Mr. Walker's termination, which further contradicts Charter's claim when the Court's summary judgment ruling in favor of Charter was on appeal in the Ninth Circuit: "The incidents from the

weintraub tobin chediak coleman grodin
law corporation

Fall of 2013 were not the basis for Walker's termination and the corrective action report explaining Walker's termination does not reference any conduct occurring in 2013. ER 406 at ¶¶ 17-19; ER 448." See ECF No. 175-2 at 19; ECF No. 128 at 5–6; ECF No. 128-8 at 2. Thus, Charter was able to change its story without the changes being evidence of pretext.

Charter asserts estoppel, waiver, and claims that Walker was "fully aware" of the reasons for his termination, but Charter cites no evidence or authority for its contentions. (Def.'s Opp. to Mot. for New Trial at 29:24–30:16. Charter's own argument should be deemed waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Nonetheless, Charter's defenses have no application in this Title VII matter because, thanks to Charter's vacillating explanations, Charter's "legitimate ground" for terminating Walker was never clearly articulated to him and Walker could not be held to have simply "known" or been "fully aware." *See Hernandez v. Hughes Missile Systems Co.*, 362 F.3d 564, 569 (9th Cir 2004 )("We are disquieted ... by an employer who `fully' articulates its reasons for the first time months after the decision was made."); *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 97 (6th Cir. 1982) ("Without an articulated reason presented by the employer, the plaintiff does not know whether the employment decision was made upon his work record or upon an illegitimate racial preference. His offer of proof is somewhat thwarted by this confusion. A plaintiff cannot disprove as a cause for his [termination]  a source of dissatisfaction of which he is unaware.")

At termination, Walker was simply given a paper to sign with listing "unprofessional conduct" and "performance" listing only dates in April 2014; no mention was made of events in 2013 or in March 2014.  Walker Transcript at 154:20–22. To hold Charter's defenses valid would be rewarding Charter for "hiding the ball"—a result inconsistent with Title VII precedent. As such, Charter's defenses based upon its assertion that Walker was "fully aware" fails.

///

///

weintraub tobin chediak coleman grodin
law corporation

{2839056.DOCX;}                    11            Reply in Supp. of Pl.'s Mot. for New Trial under FRCP 59 and for Relief from Judgment under FRCP 60(b)(3)

The Court should not allow such deception when Charter had a duty not to mislead in its briefing. There is clear and convincing evidence of this. See e.g. *Bd. of Prof'l Responsibility v. Custis*, 348 P.3d 823, 834 (Wyo. 2015)(finding "clear and convincing evidence" that an attorney's misleading briefs caused actual injury to the "State and the judiciary"). Accordingly, the Court should grant Mr. Walker relief from judgment based on Charter's misleading actions by which it obtained the judgment.

## IV.   State evidentiary standards and the purported absence of other evidence cannot be relied upon to preclude Walker's ESD evidence.

Charter's claim that a lack of animus or pretext would be cause to uphold the exclusion of ESD evidence is circular and without merit. *See Def.'s Opp. to Mot. for New Trial at 27:14.* Nonetheless, as shown above, Charter has shifted their termination justifications showing pretext. *See Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993) ("fundamentally different justifications" give rise to finding of pretext). Also, it was shown Charter was motivated to dig up reasons to terminate Walker due to an unfounded stereotype held by Mr. Larson that Walker was dishonest. *See* Begley Decl. in Supp. of Mot. for New Trial, Ex. D ("Larson Transcript") at 6:2–7:1; *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 58-61 (1st Cir. 1999) (applying principles regarding sex stereotyping, including discussion of Supreme Court's *Price Waterhouse* decision, in racial discrimination context); *EEOC v. Bob Evans Farms*, 275 F.Supp.3d 635, 653 (W.D. Pa. 2017) (discrimination exists here where a "decision-maker is motivated by perceived stereotypes and even paternalistic notions regarding the protected class status — whether or not any negative feeling or ill-will is harbored"); *EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1235 (9th Cir. 1984) ("[F]inding that this discrimination manifested itself subtly, rather than through the 'culpability' of the foreman, or though a 'scheme or plan', does not diminish the fact that the court did find intentional discrimination.") (citations omitted).

Charter claims NRS 612.533 presents sufficient basis to exclude Walker's ESD evidence. *See Def.'s Opp. to Mot. for New Trial at 26–27.* Yet this standard conflicts with Federal Rule of Evidence 803(8) and "if there is a contest between a state procedural rule and the federal rules, the federal rules of procedure will prevail." *Planned Parenthood v. Center for Medical Progress*, 890 F.3d 828, 833–834 (9th Cir 2018) (citation omitted); *McDowell v.*

weintraub tobin chediak coleman grodin
law corporation

*Brown,* 392 F.3d 1283, 1294-95 (11th Cir. 2004) ("Rules of procedure encompass rules of evidence, and therefore, the Federal Rules of Evidence, not state evidentiary rules, apply.") There is no discretion to apply state admissibility standards in a federal court case, especially where Walker sought to prove the suspicious "timing" of Charter's decision-making for pretext (not the fact of discrimination).

Finally, Charter claims that Walker did not preserve the error.  Charter's argument runs afoul of *Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995): One is "not required to make a specific offer of proof on the exact substance and purpose of each witness's testimony in order to preserve the issue" where there was a "motion in limine, granting a blanket exclusion."  *Id.* at 1482.

## V.    Conclusion

The Court should order a new trial due to erroneous evidentiary rulings and erroneous jury instructions, which cannot be shown to be more likely harmless than not. The Court should, alternatively, grant Mr. Walker relief from judgment due to Charter's fraud, misrepresentation, or misconduct in contradicting its prior position that Mr. Walker was not terminated based on any events from 2013.

Dated:  March 18, 2020          WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN
                                Law Corporation

                                By:____/s/ Brendan J. Begley_____
                                      Brendan J. Begley, SBN 202563

                                Attorneys for Plaintiff TERRANCE WALKER

**weintraub tobin** chediak coleman grodin
law corporation