**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TERRANCE WALKER,

        Plaintiff,

vs.

CHARTER COMMUNICATIONS LLC,

        Defendant.

Case No. 3:15-CV-00556-RCJ-CLB

**ORDER**

After the return of an unfavorable jury verdict, Plaintiff moves for new trial under Fed. R. Civ. P. 59(a) and 60(b)(3). He claims this Court erred in two evidentiary rulings and Defendant committed a fraud against the court. However, Plaintiff has not demonstrated fraud, and any error was unprejudicial. Thus, the Court denies the motion.

**FACTUAL BACKGROUND**

Plaintiff brought this case alleging that Defendant terminated his employment because of his race in violation of Title VII. (ECF No. 61.) The parties agree on the following facts: Defendant employed Plaintiff as a salesman from August 2013 to April 2014. (ECF No. 138 at 1.) Plaintiff's direct supervisor, Ms. Norma Castillo,[1] gave Plaintiff a glowing year-end review, and Plaintiff was

---

[1] Ms. Castillo was previously known as Ms. Perales. (ECF No. 277 Ex. J at 207:24–25.)

a top seller for Defendant in 2013. (*Id.* at 2.) Defendant permitted Plaintiff to take off work for three weeks to go to Vietnam to pursue his own business venture in early 2014. (*Id.* at 4.)

The parties disagree on whether Plaintiff always acted professionally while employed by Defendant. The Court granted summary judgment in favor of Defendant finding that Plaintiff exhibited unprofessional conduct and failed to present competent evidence of a similarly situated individual not of his protected class. (ECF No. 138.) However, the Ninth Circuit reversed and remanded finding that Plaintiff's testimony presented a genuinely-disputed material fact over whether he engaged in such unprofessional conduct. (ECF No. 154 at 2.)

In its appellate brief, Defendant stated, "The incidents from the Fall of 2013 were not the basis for Walker's termination and the corrective action report explaining Walker's termination does not reference any conduct occurring in 2013." (ECF No. 175 Ex. 2 at 19.) Plaintiff claims that this statement prevented Defendant from subsequently relying on any allegations of misconduct in 2013 at trial as forming the basis for its determination to fire Plaintiff. (ECF No. 267.) Nonetheless, its witnesses testified about events from 2013, and it raised these incidents in its arguments, (*see, e.g.*, ECF No. 277 Ex. G 22:12–14).

After the remand and before trial, Defendant filed a motion in limine, in which it moved to prevent Plaintiff from admitting into evidence a decision from the Employment Security Division of the Nevada Department of Employment. The department determined that Plaintiff did not commit any misconduct without any litigation. (ECF No. 61 Ex. 2.) The Court granted the motion. (ECF No. 215 at 4.)

At trial, Defendant impeached Plaintiff numerous times. On eight occasions, Defendant either contradicted his previous deposition testimony or could not remember facts to which he had previously testified. (ECF No. 277 Ex. B at 130:25–132:5, 139:4–18, 144:12–145:3, 146:15–147:9, 147:17–148:6, 151:20–152:21, 153:25–154:16, 157:10–159:9.) Additionally, the Court

allowed Defendant to question Plaintiff about two emails to contradict his testimony that he does not have a temper, (ECF No. 267 Ex. A at 10:20–21); has a "conservative" personality, (*id.* at 13:8–12); and is not "aggressive," (*id.* at 30:8–12). In these emails, Plaintiff, while acting pro se, called opposing counsel racist and compared her behavior to the white woman who falsely accused Emmett Till of raping her, which led to an angry mob lynching him. (*See, e.g.*, ECF No. 277 Ex. C ("Please don't scream rape like a typical racist white lady or even say that I tried to flirt with you in the fashion as the white woman who got Emit [sic] Till killed.").)

Defendant did not object to Plaintiff's testimony about his general character—rather, it sought to impeach him with the emails. In cross examination, Defendant asked Plaintiff whether he ever sent such an email to Defendant's counsel. Plaintiff made an objection, which the Court overruled. Then, he denied making such a statement, and Defendant moved to admit the emails. Plaintiff again objected, but the Court ruled in favor of Defendant allowing admission.

While the Court initially stated that the emails could be used by the jury in considering character, (ECF No. 267 Ex. at 114:15–115:2), it later clarified that statement and clearly instructed the jury to limit its consideration of the emails solely to Plaintiff's character for truthfulness, (ECF No. 277 Ex. F at 364:15–16 ("You may only consider [the emails] for one reason, and that's for the credibility of [Plaintiff].")).

### LEGAL STANDARD

After a jury returns a verdict in a civil trial, the losing party may move for a new trial for, among other reasons, an erroneous evidentiary ruling that prejudiced a verdict. Fed. R. Civ. P. 59(a)(1)(A); *Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005).[2] If the moving party shows that there was an erroneous evidentiary ruling, then there is a presumption of prejudice that the

---

[2] In *Obrey*, the Ninth Circuit was applying the appellate standard of review for vacating a verdict, however, the district courts have applied the same standard for motions for a new trial under Rule 59(a). *See, e.g.*, *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1095 (D. Mont. 2019).

nonmoving party can overcome by showing that the jury would more likely than not have reached the same verdict absent the erroneous ruling. *Id.* at 701.[3]

Additionally, the party may move to vacate the judgment under Fed. R. Civ. P. 60(b)(3) upon showing that the opposing party successfully obtained the judgment through "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct." The moving party must show, by clear and convincing evidence, the nonmoving party perpetrated a fraud in an effort "to prevent the judicial process from functioning 'in the usual manner.'" *United States v. Estate of Stonehill*, 660 F.3d 415, 445 (9th Cir. 2011). That is:

> [T]he inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process . . . .

*In re Intermagnetics America, Inc.*, 926 F.2d 912, 917 (9th Cir.1991).

Thus, not every fraud "'connected with the presentation of a case to a court' is necessarily a fraud on the court." *Estate of Stonehill*, 660 F.3d at 444 (9th Cir. 2011) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2870 (2d ed.1987)). Such a showing requires "more than perjury or nondisclosure of evidence, unless that perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself." *Id.* at 445.

---

[3] A subsequent Supreme Court case casts significant doubt on this presumption. In *Shinseki v. Sanders*, 556 U.S. 396 (2009), the Court, in the administrative context (which applies the same rules "that courts ordinarily apply in civil cases," *id.* at 406), held that the burden of prejudice is on the party attacking the ruling. *Id.* at 409. Nonetheless, subsequent Ninth Circuit cases have not applied a consistent standard. *Compare Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) (en banc) ("[T]he burden [is] on the beneficiary of the error . . . to prove that there was no injury . . . .") (quoting *Obrey*, 400 F.3d at 700) (alterations in original), *with Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014) ("[A] showing of prejudice is required for reversal."). In one case, the Ninth Circuit noticed the apparent conflict and declined to resolve it because "[r]egardless of which party bears the burden of persuasion, we conclude that the error was harmless in this case." *Molina v. Astrue*, 674 F.3d 1104, 1120 n.11 (9th Cir. 2012). This Court follows *Molina* and likewise declines to determine this legal issue, since the Court finds a lack of prejudice even if there is a presumption in Plaintiff's favor.

**ANALYSIS**

Plaintiff presently claims that the Court should grant him a new trial for two reasons: First, Defendant's reliance on incidents from 2013 amounts to a fraud on the court. Second, the Court erred by granting Defendant's motion in limine regarding the decision of the Nevada Department of Employment and by allowing the testimony and admission of the emails.

*I.     Defendant's Actions Do Not Amount to Fraud on the Court.*

Turning first to the allegations of fraud, Plaintiff claims that Defendant could not have relied on Plaintiff's actions in 2013 as a basis for terminating his employment at trial because Defendant rejected them in its arguments before the Ninth Circuit. Plaintiff has not demonstrated by clear and convincing evidence that Defendant committed a fraud on the court.

Even if Plaintiff is correct that Defendant could not have relied on 2013 incidents as a basis for terminating Plaintiff's employment at trial: Defendant did not. Plaintiff points to two instances of testimony from Defendant's witnesses about Plaintiff's actions in 2013: the testimony of Mr. Christopher Larson and the testimony of Ms. Castillo. Mr. Larson's testimony does not mention 2013 events—he merely stated that he had considered past events in making the determination to fire Plaintiff. (ECF No. 267 Ex. D at 11:1–9.) However, it is not clear if these past events included 2013 or only the events that occurred earlier in 2014. Even more, Plaintiff—not Defendant— elicited this testimony on cross examination. (*Id.*)

Additionally, while Defendant did elicit testimony about 2013 events from Ms. Castillo, she never testified that Defendant relied on these events in its determination to terminate his employment. The testimony served at least two other purposes: First, the testimony contradicted Plaintiff's claim that he "never received a coaching." (ECF No. 277 Ex. B at 85:4.) Second, the testimony provided support for Defendant's claim that it treated Plaintiff fairly by having provided him a warning in 2013 before ultimately firing him for conduct that occurred in 2014.

Plaintiff also points to three instances where Defendant cited to events from 2013 in its arguments. However, these are not assertions that the 2013 events formed the basis for termination. In two instances, Defendant only referenced the events and stated that Defendant warned him against losing his temper. (ECF No. 277 Ex. A 14:3–5 ("He wasn't disciplined for this, he was advised at the time, you know, be careful in your communications, communicate professionally."); ECF No. 277 Ex. G at 22:12–14 ("He was warned on November 14, 2013, after the incident with the tech operations supervisor, you know, be careful how you're talking to people.").)

In the third instance, Plaintiff points to a statement in Defendant's closing:

> And [Ms. Castillo and Mr. Larson] agreed, you can't make a special exception and allow someone to be a jerk in the office just because they made good sales, right? That's fairness. Don't make special exceptions for people just because they make a little more money for us than other people do. It's not a reason to abuse your coworkers. It's not a reason to hang up the phone on people. We can't excuse and tolerate that behavior even though you've otherwise been a good employee. This is not acceptable, and you've been warned before.

(ECF No. 277 Ex. G at 23:17–24:5.) Plaintiff contends that Defendant referred to an incident where Plaintiff hung up the phone in November 2013. (ECF No. 278 at 10:24–25.) While Defendant is discussing the basis for terminating Plaintiff's employment here, it was not likely referring to this incident. Rather, Defendant was probably referring to a 2014 incident where Defendant hung up the phone on Ms. Castillo, which it raised just a few paragraphs before. (ECF No. 277 Ex. G at 23:3–4.) Thus, the Court denies the Rule 60(b) motion.

## II.    *The Alleged Errors Did Not Prejudice Plaintiff.*

Plaintiff next argues that the Court erred in two instances: First, the Court should have allowed Plaintiff to admit into evidence a determination from the Employment Security Division of the Nevada Department of Employment that Plaintiff did not commit any misconduct. Second, the Court should not have allowed Defendant to inquire about and admit into evidence the two emails Plaintiff sent to opposing counsel.

The Court stands by its determination that the decision is inadmissible evidence. Defendant did not contest this decision as it had no effect on it; thus, it did not go through any litigation. (ECF No. 215 at 4:5–7.) For this reason, Nevada forbids its judicial proceedings from considering these decisions. NRS 612.533. In a sound opinion, this District previously considered this exact issue and held that such decisions are inadmissible. *Bradshaw v. Golden Rd. Motor Inn*, 885 F. Supp. 1370, 1373–75 (D. Nev. 1995). Thus, the Court did not err.

Turning to the emails, even if this Court did err, such an error did not prejudice the verdict. First, while the Court initially stated that the jury could consider the emails as evidence of Plaintiff's character, (ECF No. 267 Ex. A 168:13–17), it later limited such consideration to only Plaintiff's character for truthfulness, (ECF No. 277 Ex. F at 364:15–16 ("You may only consider [the emails] for one reason, and that's for the credibility of [Plaintiff].")), and repeatedly noted that the emails were a side issue, (*see, e.g.*, ECF No. 267 Ex. A 166:10–16). The Court's limiting instruction lessened any prejudice. *See United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) ("Any resultant prejudice was minimized by the limiting instruction . . . . [W]e must presume that juries will follow the district court's limiting instructions.").

As the Ninth Circuit ruled, Plaintiff's testimony established a genuine dispute of material fact over whether he "actually engaged in the unprofessional conduct." (ECF No. 154 at 2.) Thus, his credibility was vital to his case, and he contradicted or could not remember his deposition testimony on eight occasions. (ECF No. 277 Ex. B at 130:25–132:5, 139:4–18, 144:12–145:3, 146:15–147:9, 147:17–148:6, 151:20–152:21, 153:25–154:16, 157:10–159:9.)

Defendant's witnesses further undermined Plaintiff's testimony. For example, Ms. Castillo testified that Plaintiff engaged in unprofessional conduct on numerous occasions. (ECF No. 277 Ex. J at 245–248; 255–261.) However, Plaintiff admits that she previously gave him a positive year-end review, (ECF No. 277 Ex. B at 133:18–134:18), and arranged for him to go on a three-

week vacation for him to pursue a business venture, (ECF No. 277 Ex. B at 136:11–15). Ms. Castillo's favorable treatment of Plaintiff prior to his professional misconduct in 2014 directly contradicts Plaintiff's claim that she harbored discriminatory animus against him. And it bolsters Defendant's claim that Plaintiff's actions forced its hand to terminate his employment against its desire to keep one of its top salesmen.

In sum, Plaintiff's case was weak (even to the point that this Court previously granted summary judgment). Thus, the Court finds that the verdict would have likely been the same regardless of the alleged errors, and the Court denies Plaintiff's motion for a new trial.

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for a New Trial (ECF No. 267) is DENIED.

IT IS SO ORDERED.

Dated July 8, 2020.

_____
ROBERT C. JONES
United States District Judge