UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TERRANCE WALKER,

    Plaintiff,

vs.

CHARTER COMMUNICATIONS LLC,

    Defendant.

Case No. 3:15-CV-00556-RCJ-CBC

**ORDER**

Plaintiff alleged that Defendant violated his rights guaranteed by Title VII. The Court held a jury trial on November 4–6, 2019. The jury found in favor of Defendant, and Plaintiff has a filed an appeal with the Ninth Circuit, which is still pending. Defendant filed a bill of costs for $7,119.09. Plaintiff objected, but the Clerk ordered costs for Defendant for $7,119.09. Plaintiff now moves this Court to retax costs. The Court grants this motion in part and reduces the costs to $3,559.46 because of Plaintiff's indigence.

Plaintiff also moves under Fed. R. Civ. P. 62.1 for an indicative ruling that the Court would grant relief from judgment under Fed. R. Civ. P. 60(b). He claims that the Defendant's counsel conspired amongst each other to deprive Plaintiff of the right to call a witness earlier in the trial. This motion is frivolous, and the Court denies it.

## FACTUAL BACKGROUND

Plaintiff brought this case alleging that Defendant terminated his employment because of his race in violation of Title VII. (ECF No. 61.) The parties agree on the following facts: Defendant employed Plaintiff as a salesman from August 2013 to April 2014. (ECF No. 138 at 1.) Plaintiff's direct supervisor, Ms. Norma Castillo (formerly known as Ms. Norma Perales, (*see* ECF No. 277 Ex. J at 207:24–25)), gave Plaintiff a glowing year-end review, and Plaintiff was a top seller for Defendant in 2013. (ECF No. 138 at 2.) Defendant permitted Plaintiff to take off work for three weeks to go to Vietnam to pursue his own business venture in early 2014. (*Id.* at 4.)

The parties disagree on whether Plaintiff always acted professionally while employed by Defendant especially after his return in the spring of 2014. The Court granted summary judgment in favor of Defendant finding that Plaintiff exhibited unprofessional conduct and failed to present competent evidence of a similarly situated individual not of his protected class. (ECF No. 138.) However, the Ninth Circuit reversed and remanded finding that Plaintiff's testimony presented a genuinely-disputed material fact over whether he engaged in such unprofessional conduct. (ECF No. 154 at 2.)

After a three-day trial, a jury of Plaintiff's peers found that he had not proven his allegations and found in favor of Defendant. (ECF No. 257.) Plaintiff is appealing this judgment. (*See* ECF No. 285.) Pursuant to Fed. R. Civ. P. 54(d)(1), Defendant sought costs in the amount of $7,119.09 against Plaintiff. (ECF No. 258.) Plaintiff objected to this bill on three general grounds: "(1) his financial situation, (2) the case involved important issues of public policy, and (3) defendant's improper conduct." (ECF No. 280 (citing ECF No. 266).) The Clerk denied this objection and taxed costs at the requested amount. (ECF Nos. 280–81.) The Clerk stated, "The clerk finds none of these three objections rise above the strong language of the federal rules." (ECF No. 280.) Plaintiff is now moving to retax costs raising these same arguments.

While preparing for trial, Defendant's litigation counsel, Mr. Christopher Banks, was communicating with Defendant's in-house counsel, Ms. Desiree Peri, regarding trial preparation. On October 15, 2019, these parties exchanged emails regarding Mr. Christopher Larson's availability for trial. (ECF No. 289-1.) The only parties on these emails were these two attorneys as well as two other attorneys on Defendant's litigation team, Mr. Joseph Hadacek and Ms. Kathryn McGuigan. (*Id.*) In these emails, these parties discussed, among other things, Mr. Larson's availability for trial on November 4, 2019. (*Id.*) Mr. Banks discussed with Plaintiff's counsel, Mr. Jeffrey Fulton, the next day, stating that Mr. Larson had a meeting on that day and asked if it was okay for him to testify on November 5, 2019. (ECF No. 291 ¶ 2). Mr. Fulton agreed. (*Id.*)

On October 29, 2019, Mr. Banks inadvertently forwarded the email chain to Plaintiff. (ECF No. 291 ¶ 5.) That same day, Mr. Banks emailed Mr. Fulton to instruct Plaintiff to delete the email because it was subject to attorney-client privilege. (ECF No. 291 ¶ 6; ECF No. 291 Ex. A.) The next day, Mr. Fulton responded, "OK." (ECF No. 291 ¶ 7; ECF No. 291 Ex. B.)

On October 31, 2019, Mr. Larson's schedule cleared for November 4, 2019, so Mr. Banks emailed Mr. Fulton that Mr. Larson would be available to call to testify any time. (ECF No. 291 ¶ 8; ECF No. 291 Ex. C.) Mr. Banks again indicated this availability to Mr. Fulton the day before trial on telephone. (ECF No. 291 ¶ 9.) During trial, Mr. Larson acted as the Defendant's representative and sat at counsel's table throughout the trial. (*Id.* at ¶ 10.)

More than two months later, on January 7, 2020, Plaintiff sent an email to twelve email addresses, including Mr. Banks, Ms. Peri, Mr. Hadacek, Mr. Brendan Begley (another one of Plaintiff's attorneys), and Mr. Fulton. (ECF No. 291 ¶ 11; ECF No. 291 Ex. D.) The Court is unaware of the identity of the remaining seven recipients. In this email, Plaintiff threatened to file a bar complaint against Mr. Banks, claiming that the inadvertently disclosed email chain showed that he lied about Mr. Larson's availability. (ECF No. 291 ¶ 11; ECF No. 291 Ex. D.) Mr. Banks

again emailed Mr. Fulton, that same day, asking him to have Plaintiff delete this email chain as it is privileged. (ECF No. 291 ¶ 12; ECF No. 291 Ex. E.) Plaintiff's counsel indicated that they have destroyed all copies of the email in their records and indicated that they would again so instruct Plaintiff. (ECF No. 291 ¶ 13.)

On January 12, 2020, Plaintiff again emailed Mr. Banks, Ms. Peri, Mr. Hadacek, Mr. Brendan Begley, and Mr. Fulton and nine other unidentified recipients. (ECF No. 291 ¶ 14; ECF No. 291 Ex. G.)[1] This time Plaintiff threatened to press criminal charges against Mr. Banks, stating:

> Update: You guys (of course Charter's lawyers will need no invite except by the marshalls [sic]) will all be invited to CRIMINAL trial of Charter's lawyer for conspiracy to lie to a federal court as is evident by their email [which they TRIED to tell my lawyers to get me to delete]. TOO LATE!! Evidence of a crime should not and will not be hid.

Mr. Banks responded again by contacting Plaintiff's attorneys and asking for a third time to have Plaintiff delete this email chain. (ECF No. 291 ¶ 15; ECF No. 291 Ex. H.)

Despite these repeated requests to have Plaintiff delete this email chain, Plaintiff has not complied. He now moves this Court to issue a ruling under Fed. R. Civ. P. 62.1 indicating that the Court would grant relief from judgment under Fed. R. Civ. P. 60(b) were there not a pending appeal. (ECF No. 289.) Plaintiff attached a copy of the email chain to his motion, which he filed on July 15, 2020. (ECF No. 289-1.) Plaintiff filed this motion pro se, while still represented by counsel on the docket.

///

///

///

---

[1] The unidentified recipients in these emails appear to Plaintiff's friends and family. One of the recipients is listed as "Mom." (ECF No. 291 Ex. G.)

**LEGAL STANDARD**

*I.     Bill of Costs*

Fed. R. Civ. P. 54(d)(1) states, "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." This rule therefore creates "a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003). Nonetheless, a district court is allotted "discretion to refuse to award costs." *Association of Mexican–American Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). A court should consider the following non-exhaustive list of bases for denying an award of costs: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (citing *Ass'n of Mex.–Am. Educators*, 231 F.3d at 592–93).

*II.    Motion for Indicative Ruling*

Fed. R. Civ. P. 62.1(a) allows for a court to issue a ruling indicating that if a judgment were not subject to an appeal that it would grant relief from the judgment under Fed. R. Civ. P. 60(b). Rule 60(b)(3) allows a court to grant relief from judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." For a motion under Rule 60(b)(3) to succeed, the movant "must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

///

**ANALYSIS**

*I.     Motion to Retax Costs*

For this motion, Plaintiff first points to the importance of Title VII cases to protect the civil rights of victims in the employment context. This argument is unavailing because Plaintiff's case was neither close nor difficult. His self-serving testimony was contradicted by his two supervisors: Ms. Castillo and Mr. Larson. Plaintiff testified that he "kept it professional" and denied ever acting in "an angry or aggressive manner at work." (ECF No. 263 at 83.) In direct contradiction to this testimony, Ms. Castillo provided several instances where Plaintiff acted unprofessionally. In sum, the evidence in this case was lopsided even to the point that this Court previously found that this case failed to survive the low bar of summary judgment. (ECF No. 138.)

For example, Ms. Castillo called Plaintiff on April 4, 2014 to request that he speak with one of his customers. (ECF No. 273 at 249–50.) Plaintiff however "got very upset and started talking in a very loud tone over phone" and claimed that it was not his job, resulting in Ms. Castillo having to make the call for him. (*Id.*) Again, on April 23, 2014, Plaintiff was on a conference call because he did not get any sales the day before with all other sales reps who failed to get sales and a couple supervisors. Plaintiff became "very upset and frustrated on the call" when asked by the supervisor why he had started late the previous day. (*Id.*) After continuing to speak over the supervisor in a loud tone, Ms. Castillo told Plaintiff to get off the call and speak with her privately. When speaking on a private line, Plaintiff continued to speak in a loud tone, even after Ms. Castillo said that this unprofessional behavior, and he stated that she could "kiss his butt's butt." (*Id.* at 255–60.) She contemporaneously noted these incidents in her reports regarding Plaintiff. (ECF No. 128 Ex. B at 7–10.)

Plaintiff also argues that he should not have to pay any costs because Defendant litigated the case in bad faith. While the Ninth Circuit has noted that this may be a basis for denying costs,

*see Ass'n of Mexican-Am. Educators*, 231 F.3d at 592, Defendant did not engage in any misconduct. Plaintiff's only claim (in this motion) that Defendant did is that it impeached Plaintiff with an email quoted, in part, below to show that Plaintiff does not always act professionally. (ECF No. 263 at 113–19.) This was not a vexatious argument—the Court ultimately agreed with it and allowed the admission of the email into evidence. (*Id.*) Indeed, Plaintiff—not Defendant—litigated vexatiously. The Magistrate Judge found that many of Plaintiff's motions were "meritless, redundant, scurrilous, oppressive and designed to merely annoy and harass the opposing party and to use this court as a sounding board for plaintiff's petty discovery grievances." (ECF No. 113.) She therefore threatened to declare Plaintiff "a vexatious litigant and impose a pre-filing restriction on the plaintiff pursuant to *DeLong v. Hennessy*, 912 F.2d 1144, 1147 (9th Cir. 1990)" if his actions continued. (*Id.*) Additionally, Plaintiff compared opposing counsel to the woman who murdered Emmett Till in email correspondence between him and them, stating:

> Please don't scream rape like a typical racist white lady or even say that I tried to flirt with you in the fashion as the white woman who got Emit [sic] Till killed. If you are antagonized or in fear in [sic] me it is because of the white supremacist indoctrination that you've received living in this society that you've failed to shed due to the lack of your education.

(ECF No. 185-1 Ex. A.) This prompted this Court to issue its own stern warning against such egregious behavior. (ECF No. 192.)

Plaintiff lastly argues that he should not have to pay costs because he is indigent and there is a great economic disparity between him and Defendant. Plaintiff has attached affidavits stating that he has less than $400 in his bank, no significant assets besides a 2010 Ford Focus (worth approximately $1,400), and between his wife and him, they have made less than $15,000 in the past year. While Plaintiff has shown that he lacks much economic means, he was still able to retain counsel for this case. On the other hand, Defendant is a subsidiary company of Charter Communications Inc., which earned more than $45,000,000,000 in revenue in 2019. Charter

Communications Inc., Annual Report (Form 10-K) (Jan. 31, 2020) (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1091667/000109166720000024/chtr12312019-10k.htm). Even though Defendant does have significantly more economic resources than Plaintiff, this fact does not entail that Defendant should have to pay for all of the costs of the lawsuit that was not close and litigated against it vexatiously by Plaintiff. For these reasons, the Court grants the motion in part and reduces the costs that Plaintiff must pay by half to $3,559.46.

## II.   *Motion for Indicative Ruling*

Plaintiff filed the motion for an indicative ruling improperly. The docket indicates that Plaintiff is represented by Mr. Begley, Mr. Fulton, and Mr. Mark Mausert. (ECF Nos. 224, 227.) Plaintiff, however, filed the motion pro se. Plaintiff claims that he is no longer represented by these attorneys; however, no motion to withdraw or substitute counsel has been filed. Indeed, the motion to retax costs is a motion filed by Plaintiff's counsel that is still pending. This motion therefore violates LR IA 11-6(a):

> [A] a party who has appeared by attorney cannot while so represented appear or act in the case. This means that once an attorney makes an appearance on behalf of a party, that party may not personally file a document with the court; all filings must thereafter be made by the attorney.

Accordingly, the Court denies it on that basis.

Even if the Court reached the merits, Plaintiff fails to satisfy every element for a motion under Rule 60(b)(3). First, he does not have any evidence that Mr. Banks or any other person associated with Defendant committed a fraud or any other misconduct. The email chain merely shows that Defendant believed that Mr. Larson would not be available for trial on November 4, 2019—not that it was conspiring to prevent Mr. Larson from testifying earlier. Second, even if Defendant was initially attempting to prevent Plaintiff from calling Mr. Larson earlier in the trial, there was no prejudice. Mr. Larson was actually there for the whole trial, and Plaintiff could have

called him at any time that he chose during the trial—he merely chose to wait to call Mr. Larson until later. Furthermore, even if Plaintiff did not call him until later in the trial because of this email chain, Plaintiff was able to fully examine Mr. Larson. Lastly, Plaintiff could have "fully and fairly presented" this argument at or before trial; he had the email almost a week before the trial even started. *De Saracho*, 206 F.3d at 880. For all of these reasons, Plaintiff's motion is frivolous.

In its response, Defendant requests that this Court order Plaintiff to delete the email chain as it is subject to attorney client privilege. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice . . . ." *In re Grand Jury Investigation (Corporation)*, 974 F.2d 1068, 1070 (9th Cir. 1992). This communication was initially only between Defendant's litigation counsel and its in-house counsel. It was in regard to planning for trial. Therefore, the email chain is subject to the privilege.

Plaintiff argues that this communication falls under the crime-fraud exception to the attorney client privilege doctrine. To show that this exception applies, a party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme" and that communications were "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *In re Grand Jury Proceedings*, 87 F.3d 377, 381–83 (9th Cir. 1996). However, as discussed above, the emails merely indicate that Defendant thought that Mr. Larson would not be available on November 4, 2019—there was no crime or fraud.

Plaintiff next argues that the privilege was waived by disclosing the email chain to him and not immediately asking to claw the communication back. Disclosure does not constitute waiver of attorney client privilege where "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure

26(b)(5)(B)." Fed. R. Evid. 502(b). Plaintiff contends that Defendant did not promptly seek to rectify the error, claiming that Defendant did not request Plaintiff to destroy the email until January; however, Defendant has produced an email that it sent to Plaintiff's counsel within hours seeking to have the email destroyed. Thus, the Court finds that the email chain is still subject to attorney client privilege and orders that Plaintiff destroy all copies of the email that are in his possession and not to share it with any other party.

## CONCLUSION

IT IS HEREBY ORDERED that Motion Re-Taxation of Costs by Plaintiff (ECF No. 281) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff shall pay costs in the amount of $3,559.46.

IT IS FURTHER ORDERED that MOTION FOR INDICATIVE RULING UNDER RULE 62.1; FRCP 60(b)(1,3); FRAP 12.1 RE: EMAIL OF DEFENDANT FABRICATION ABOUT WITNESS CHRIS LARSON'S UNAVAILABILITY TO WITHHOLD ITS REAL RACIST MOTIVE FOR TERMINATING WALKER HE BELIEVED WALKER DISHONEST by Plaintiff (ECF No. 289) is DENIED.

IT IS FURTHER ORDERED that Plaintiff must immediately destroy all copies of the email chain dated October 15, 2019 (ECF No. 289-1).

IT IS SO ORDERED.

Dated November 12, 2020.

_____
ROBERT C. JONES
United States District Judge