**Terrance Walker**
*Plaintiff, in propria persona*
212 Hillcrest Drive # 1
Reno, NV 89509
Tel: +1.775.971.8679
Email: walkerbillion@gmail.com

### IN THE UNITED STATES DISTRICT COURT FOR NEVADA

| | |
|---|---|
| Terrance Walker, | : **CIVIL CASE NO.** 3:15-CV-0556- |
| Plaintiff, | :MOTION FOR RELIEF FROM (i) DISCRIMINATION |
| vs. | : JUDGMENT PURSUANT TO FRCP 60(b)(6) DUE |
| Charter Communications, et. al. | : TO AN INTERVENING CHANGE OF LAW -- |
| Defendant. | : Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th |
| | : 1231 (9th Cir. 2021) |

COMES NOW, Plaintiff Terrance Walker ("Walker"), moving for relief of the discrimination judgment pursuant to FRCivP 60(b)(6) due to an intervening change of law, , stating:

**PLEASE TAKE NOTICE** that, as soon as is convenient to the Court so that counsel may be heard before the District Court. , Plaintiff Terrance Walker ("Plaintiff") will and hereby does move for an Order granting relief from judgments that were entered in favor of Defendants on about March 4, 2020 and affirmed on appeal (and any attorney fees and costs, including those on appeals). This Motion is and will be based on FRCivP 60(b)(6), as well as Local Rules 7-2 and 7-3 due to an intervening change in Circuit law as interpreted and clarified in Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) .

This Motion is and will be based upon this Notice of Motion for Relief from Judgment, the accompanying exhibit attached thereto, the complete files and records in this action (and previous appeals) which should all be judicially noted, and upon such oral argument as may be made by counsel and/or the parties during the hearing on this Motion.

Dated July 15, 2022

Respectfully submitted,

/s/ TERRANCE WALKER

Signed, Terrance Walker

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................................................................3

I. FACTUAL BACKGROUND.............................................................................................6

II. PROCEDURAL BACKGROUND.....................................................................................9

III. MEMORANDUM OF LAW..........................................................................................11

A. Rule 60(b)(6) Motions can be based upon an intervening change in circuit law

     1. The Court should conduct a multi-factored, studied evaluation

     2. The Law of the Case Doctrine is no Impediment to Change in Law Motions

IV. POINTS AND AUTHORITIES.......................................................................................14

  A. Walker is entitled to relief under Rule 60(b)(6) due to an intervening change of circuit law

   1. Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) was an intervening Change in Circuit Law that rejected application of Shinseki to civil jury instructions – which was previously unsettled law in the circuit

     a. Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) now mandates a presumption of prejudice and that Defendant make a showing that "more likely than not" harmless as to claimed jury instruction errors –a finding never made.....

     b. Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) would not allow a simple appellate finding of "no reversible error" on Walker's jury instructions issue, especially due to Charter's "aggressive" Black man schtick and unintelligible instructions to the jury

        i. Defendant made no showing under Bladeroom that "the jury's verdict indicates that the result would have been" the same.  Nor has any Court found such.

        ii. Defendant made no showing under Bladeroom that the jury was allowed to "determine the issues presented intelligently". Nor has any Court found such

     c. That Defendant did not urge it could establish  "more probable/likely than not harmless" as to the jury instructions would have mandated reversal  under Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021)

     d. The Ninth Circuit would have remanded for a decision in keeping with Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) had it been  decided a few months earlier

  2. Plaintiff Exhibited Diligence in Pursuing Relief

  3. Reliance Interest in Finality of the Case factor weighs in Walker's favor

  4. No delay between the Judgment and Rule 60(b)(6) Motion weighs in favor of relief

  5. Relationship Between the Original Judgment and the Change in the Law

  6.  Comity is inapplicable factor

  7. Additional Considerations weigh in Walker's favor

V. CONCLUSION...............................................................................................................31

**TABLE OF AUTHORITIES**

**Cases**

Askew v. Secretary of Health & Human Services,Case No. 10-767V, 2012 WL 2061804 (Fed. Cl. May 17, 2012)..................................................19,20

Aetna Casualty and Sur. Co. v. Gosdin, 803 F.2d 1153 (11th Cir.1986)..................................18

Altman v. New Pub. Sch. Dist., 2017 U.S.Dist.LEXIS 2515 (S.D.N.Y. Jan. 6, 2017).............21

Am. Legion v. Am. Humanist Ass'n, 139 S. Ct. 2067, 204 L. Ed. 2d 452 (2019)...................23

BladeRoom Grp. v. Emerson Elec. Co., 20 F.4th 1231 (9th Cir. 2021)..1,11,14,15,16,17,18,23,24,25,26,27,30,31

Bonds v. Rising Star Casino Resort, No. 4:19-CV-151-JMS-DML, 2020 WL 564281 (S.D. Ind. Feb. 5, 2020)....................................................................6

Brooks v. United States, 367 A.2d 1297 (D.C.1976)...................................................17

Brandt v. Fitzpatrick, 957 F.3d 67 (1st Cir. 2020)..........................................21,23

Bryant v. City of Memphis, 644 F. App'x 381 (6th Cir. 2016)....................................21

Cain vs. Esthetique, 182 F.Supp.3d 54 (S.D. New York 2016)................................19,21

Chapman v. California, 386 U.S. 18 (1967)................................................17

Chapman v. United States, 547 F.2d 1240 (5th Cir.) (per Irving Goldberg, J.), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977)..................................17

Clem v. Lomeli 566 F.3d 1177 (9th Cir. 2009) ..............11,17,25,27

CTIA - The Wireless Ass'n v. City of Berkeley, 928 F.3d 832 (9th Cir. 2019).........................25

Crawford v. Lungren, 96 F.3d 380 (9th Cir. 1996)..................................................26

Daily v. City of Phoenix, Daily v. City of Phoenix, No. CV-14-00825-PHX-SPL, 2019 WL 571805 (D. Ariz. Nov. 5, 2019).......................21

Dang v. Cross 422 F.3d 800 (9th Cir. 2005)..................................................11

Effie Film, LLC v. Pomerance, 909 F.Supp.2d 273 (S.D.N.Y. 2012).............................................8

Estate of Barabin v. AstenJohnson, Inc.,740 F.3d 457 (9th Cir. 2014)(en banc)........................10,16

Falk v. Allen, 739 F.2d 461 (9th Cir. 1984)................................................12

Fikes v. Cleghorn, 47 F.3d 1011 (9th Cir. 1995)................................................11,25

Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale, 901 F.3d 1235 (11th Cir. 2018)................................................22

Gracie v. Gracie, 217 F.3d 1060 (9th Cir. 2000)................................................10,11

Gonzalez v Crosby, 545 U.S. 524, 125 S.Ct. 264  (2005)................................................12,27,31

Haddad v. Lockheed California Corp., 720 F.2d 1454 (9th Cir.1983)......................................18

Harrington v. California, 395 U.S. 250,  89 S.Ct. 1726 (1969)................................................18

Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344 (7th Cir. 1995)........................18,19

Henson v. Fid. Nat'l Fin., Inc., 943 F.3d 434 (9th Cir. 2019)............13,14,15,16,26,27,28,29,30,31

Hopkins v. Integon Gen. Ins. Co., No. 21-35196, 2022 WL 851750 (9th Cir. Mar. 22, 2022)................................................16

Hynes v. Coughlin 79 F.3d 285 (2nd Cir. 1996) ................................................21

Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)................................................30

Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).....................16,17

Leavitt v. Siems, 330 P.3d 1  (Nev. 2014)................................................30

Lee v. City of L.A., 250 F.3d 668 (9th Cir. 2001) ................................................24

Lewis v. Velez, 149 F.R.D 474 (SD NY 1993)................................................21

Lingo v. State, 263 Ga. 664, 674 (Ga. 1993)................................................18

Lopez v Ryan, 678 F.3d 1131 (9th Cir 2012)....................................................................29

McGinest v. GTE Service Corp., 360 F.3d 1103 (9th Cir. 2004).............................................20,22

Middleton v. McNeil, 541 U.S. 433, 124 S. Ct. 1830,
      158 L. Ed. 2d 701 (2004) (per curiam)....................................................................11

Miller v. Gammie 335 F.3d 889 (9th Cir 2003)..................................................................30

Minidoka Irrigation Dist. v. Dep't of Interior, 406 F.3d 567 (9th Cir. 2005)...............................14

Northeast OH Coalition for the Homeless v. Husted 837 F.3d 612 (6th Cir. 2016)........................6

Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005).........................................................10,16,27

Patu v. Albert, No. C15-0721JLR, 2017 WL 2729862 (W.D. Wash. June 26, 2017)...............12

Phelps v. Alameida, 569 F.3d 1120 (9th Cir. 2009) .......................11,12,13,16,26,27,28,29,30,31

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)............................................................23

Reynoso v. Giurbino, 462 F.3d 1099 (9th Cir. 2006)..........................................................26

Rieman v. Gilbert, No. 3:16-CV-05250-RBL, 2020 WL 2494712
      (W.D. Wash. May 14, 2020), aff'd, 860 F. App'x 103 (9th Cir. 2021)...........................21

Ritter v. Smith, 811 F.2d 1398 (11th Cir. 1987)...........................................................12,28,29

Sanders v. City of Newport, 657 F.3d 772 (9th Cir. 2011)....................................................27

Scott v. Ross, 140 F.3d 1275 (9th Cir.1998) ..............................................................20,22

Shinseki v. Sanders, 556 U.S. 396 (2009)..................................................10,11,14,15,17,31

Staub v. Proctor Hospital 562 U.S. 411, 131 S. Ct. 1186 (2011)...........................................25

Stokes v. Williams, 475 F.3d 732 (6th Cir. 2007)........................................................11,12,31

Styers v. Ryan, No. CV-98-2244-PHX-JAT, 2013 WL 1149919
      (D. Ariz. Mar. 20, 2013), aff'd, 632 F. App'x 329 (9th Cir. 2015).....................................11

Swinton v. Potomac Corp, 270 F.3d 794 (9th Cir. 2001).......................................................23

Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir. 1999)...................................................23

Walker v. Charter Commc'ns, Inc., No. 17-15138,
      741 F. App'x 497(Mem) (9th Cir. 2018) ("Walker I") ...................................7,9,10

Walker v. Charter Commc'ns, LLC, No. 20-16339,
      2022 WL 1439125 (9th Cir. May 6, 2022)("Walker II").................10,11,14,15,17,23,25,26

Wexler v. White's Furniture, Inc., 317 F.3d 564 (6th Cir. 2003).............................................23

Williams v. U.S. Elevator Corp. 920 F.2d 1019 (D.C. Cir. 1990)............................................17

United States v. Bettencourt, 614 F.2d 214 (9th Cir. 1980)....................................................21

United States v. Cade, 236 F.3d 463 (9th Cir. 2000)...........................................................13

United States v. Bad Marriage, 439 F.3d 534 (9th Cir. 2006)..................................................13

United States v. Camp , 723 F.2d 741 (9th Cir. 1984)...........................................................8

U.S. v. Curtin, 489 F.3d 935 (9th Cir. 2007).....................................................................21

United States v. Ebens, 800 F.2d 1422 (6th Cir. 1986).........................................................24

United States v. Elmore, No. C05-810JLR, 2009 WL 10651377
      (W.D. Wash. Apr. 29, 2009) ...........................................................................12

United States v. Sec. Indus. Bank, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982)...30

United States v. Tussa, 816 F.2d 58 (2d Cir.1987)..............................................................17

United States v. Washington, 98 F.3d 1159 (9th Cir. 1996)....................................................12

United States v. Washington, 19 F.Supp.3d 1317 (W.D. Wash. 2000) ......................................12

**Rules**

Fed. R. Civ. P. 60(b)(6)................................................................1,11,12,13,14,27,28,29,31

Fed. R. Civ. P. 60(c)(1))..............................................................................................12

Fed. R. Evid. 403.......................................................................................................21

Fed. R. Evid. 404.................................................................................................................7

Fed. R. Evid. 608(b) ..........................................................................................................21

Fed. R. Evid. 611(b) ..........................................................................................................21

Local Rules 7-2....................................................................................................................1

Local Rules 7-3....................................................................................................................1

**Statutes**

18 U.S.C. § 245  ................................................................................................................24

28 U.S.C § 2244(d)(2).........................................................................................................11

42 U.S.C. § 2000  ("Title VII")......................................................................................18,23


**Other**

*Popular and Pervasive Stereotypes of African Americans***,** Smithsonian National Museum of African American History & Culture

Available at:
https://nmaahc.si.edu/explore/stories/popular-and-pervasive-stereotypes-african-americans
.................................................................................................................................................8

Robin Diangelo (PhD), "White Fragility," 3 International Journal of
Critical Pedagogy 3:54, 64 (2011)
Available at:
https://robindiangelo.com/2018site/wp-content/uploads/2016/01/White-Fragility-Published.-1.pdf
.............................................................................................................................................20,22

*White fragility: Why it's so hard for white people to talk about racism."*
Robin DiAngelo PhD, Boston, MA: Beacon Press, 2018; 154 pp., ISBN
9780807047415
.............................................................................................................................................20,22

*Temperament and Its Role in Developmental Psychopathology* Harv Rev
Psychiatry. 2005 Jan-Feb; 13(1): 14–27. doi: 10.1080/10673220590923146
Appearing at:  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3319036/
................................................................................................................................................19

*From "brute" to "thug:" the demonization and criminalization of unarmed Black male victims in America* J Hum Behav Soc Environ. 2016; 26(3-4): 350–366. doi:
10.1080/10911359.2015.1129256   CalvinJohn Smiley and David Fakunle

Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5004736/
................................................................................................................................................20

 *Danette Mitchell: The legendary Tubman deserves better than 'Harriet',* The Reporter**,**

Available at: https://www.thereporter.com/2019/11/10/danette-mitchell-the-legendary-tubman-deserves-better-than-harriet/
................................................................................................................ 20

**I. FACTUAL BACKGROUND**

Plaintiff's view of the facts in the case was set forth in his Ninth Circuit Appellant brief (Exhibit 1, Ninth Circuit Case 20-16339, Opening Discrimination Trial Appeal Brief, Dkt 10 of the consolidated appeal) which references the relevant exhibits and Orders of this court so Walker will not belabor the point with repeating the facts.  In short,

As the record reflects (as more clearly and completely pointed out in Walker's briefs in this case  (EFC's 294, 267)(Also see Dkts 10, 32,  59, and 60 in Ninth Circuit Case no 20-16339) , this case involved abhorrent stereotypes (e.g. Walker was "dishonest") used in the workplace to justify Walker's termination and subsequently in the District Court and the use of "aggressive" Black man stereotypes to hijack Walker's discrimination trial.

In sum, Charter used Walker's pre-trial litigation emails (Exhibits 526 and 527) he sent four years after his termination (the main subject of the trial) to levy claims that the emails displayed "aggressive" personality due to Walker characterizing himself as Emmett Till when juxtaposed

to Defense Counsel Karen McGuigan. The District Court, relying on Defendant's *ahistorical*[1] renditions of the Emmet Till tragedy, even missed Walker's point[2] in equating himself with Emmett Till.  Yet, Defendant's ignorance of history and context was allowed to be infused into a barrage of conflicting and confusing jury instructions which had no basis in fact, nor in the record: Compare Walker Transcript at 114:15–18 (stating that "the plaintiff has raised the issue of character or propensity for assertive or nonassertive conduct, and therefore I have to let [them] rebut it"), with Mot. for Mistrial Transcript at 2:24–3:2 ("You talked, both in your opening statement and in questions to Mr. Walker about his normal disposition to act in a very calm

---

1. ("Plaintiff compared opposing counsel to the woman who murdered Emmett Till in email correspondence between him and them"# (EFC 295, pg 9 ll. 11-12). But See, Northeast OH Coalition for the Homeless v. Husted 837 F.3d 612, 641 (6th Cir. 2016)(Carolyn Bryant was not the "woman who murdered Emmett Till" it was her husband and brother in-law -- "two men took Till from his bed, beat him, shot him and dumped his body in the Tallahatchie River." )

2. " any person of ordinary historical or social understanding would interpret as expressing the idea that [he] was the victim of racism— could be characterized as failing to connect the alleged mistreatment to race" Bonds v. Rising Star Casino Resort, No. 4:19-CV-151-JMS-DML, 2020 WL 564281, at *7 (S.D. Ind. Feb. 5, 2020)(noting filing stating that "that Rising Star employees "routinely have shown blatant racial intolerance and hostility toward black patrons," mentioning a "sinister, racist plot," and referencing Emmett Till in the context of an interaction between a black man and a white woman)

manner[3], so he -- I had to let him open up that line of inquiry."), and Jury Instruction Transcript at 1:1–2 ("I probably used that term [(character)], and that was wrong."), and Jury Instruction Transcript at 4:20–24 ("You know the main merit issue, the factual issue that you're addressing, is whether or not he raised his voice or acted in an unprofessional manner. They do have to decide that factual issue as a predicate to determining whether there was sole or motivating factor."), and Jury Instruction Transcript at 5:4–7 ("But The only reason we let in 40[4] evidence in that regard is as to Mr. Walker's credibility. When he makes the statement, 'I'm always professional, I don't raise my voice,' I have to let the jury decide that question."), and Jury Instruction Transcript at 5:19–21 ("It's not -- it doesn't go to character, it just goes to credibility with respect to his testimony on his propensity for calm, professional demeanor."); see Walker Transcript at 168:14–17 ("This is a side issue, and the only issue here at all is Mr. Walker's discourse with opposing counsel. It doesn't bear on the actual merits of the case, **just on the question of character.**");

Jury Instruction Transcript at 9:7–12 (counsel for Charter arguing:

"And I want to be clear we did not offer the evidence to prove character, including to prove character for truthfulness, which is what 608(b) applies to. This was specifically to impeach his claims that he always communicates professionally, that he does not communicate **aggressively** but only very assertively").

Yet, these character misrepresentations were all Charter was able to do to shamelessly attempt to sway the all-white jury in its case. See ECF Nos. 245–247; Decl. of Attorney Brendan Begley ("Begley Decl.") at ¶ 2 (noting an all-white jury). This was because Defendant had flip-flopped on the reasons for Walker's termination. Charter convinced a Circuit panel in Walker v. Charter Commc'ns, Inc., 741 F. App'x 497(Mem) (9th Cir. 2018)("Walker I") before Walker's discrimination case trial that Walker was terminated for

"..behavior included arguing with and hanging up on his direct supervisor, Norma Perales; raising his voice and openly questioning another supervisor on a conference call attended by numerous co-workers and supervisors; and telling Perales to 'kiss my butt's butt." (Ninth Circuit Case 20-16339, Dkt 42, pg 39 "Answer-Br")

However, at the trial, Charter revealed that Perales' April 23, 2014 phone call termination grounds were rejected. Charter Supervisor Chris Larson said "there was not enough there for even a termination." Larson Transcript at 10:17–25; Charter's HR person Mindi Brenner said there was not even enough for Walker's suspension . (Opening Brief, Dkt 32, pg 21, Ninth Circuit 20-16339; hereinafter "Opening-Retal-Br")

---

3. Neither "normal disposition", nor "propensity", nor "temperament", nor "calm manner" appear in Walker's testimony

In fact, Chris Larson said specifically he was motivated to terminate Walker because he simply felt Walker, the best (but Black) sales guy in the office, was "dishonest"[4] . Larson directed Perales to dig up dirt on Walker, even investigating Walker's hard-won sales:

"Q You didn't have any reason to believe that he was dishonest, did you?
A No.
****
**********
Q And that would indicate that **you believe that Mr. Walker was dishonest**, isn't that right?
A **I guess that would be a strong way of putting it, but, yes**, sir"
(Larson Transcript EFC 267-1, pg 195-196)
Larson had a chance to correct his statement and he did not:
"Q Okay. But how would you judge Mr. Walker's credibility?
A I wouldn't really have a basis......" 2-SER-144 at 20-21
Larson Transcript at 6:2–7:1.

Charter, in Walker I, Id. 741 F. App'x at 498 ., claimed its decision-makers "all agreed **with Perales's termination decision**.'(Charter's Appellate Answering brief in Walker I, Ninth Circuit case 17-15138, Dkt 25, pg 19)" . Charter fails to explain its new rendition which was revealed, later, at the Nov. 2019 discrimination trial.

In fact Charter, concedes misrepresentations by stating "Perales, Larson, and Brennan decided to recommend Walker's termination" Answer-Br 21 Yet, Charter said nothing of "Larson, and Brennan " initiating the termination or it being *their* decision before, or why it left out two potential retaliators. Nor did Charter ever set forth, before, that Brenner told her superiors that Walker quit, that Larson investigated Walker for "dishonesty", nor the whole story[5] that it belatedly reveals now. In fact, it now appears "most — if not all — of the relevant decision-makers" Walker I, Id. 741 F. App'x at 498 . were told a lie by Charter's HR Mindi Brenner that Walker resigned. [she told her bosses it was "Walker's stated decision to leave the company" 5-SER-877 at 5-25)]. Charter never disclosed that Brenner failed to substantiate its lie that Walker

---

4. This is a Black stereotype. See Smithsonian website at:
https://nmaahc.si.edu/blog-post/popular-and-pervasive-stereotypes-african-americans
".....characteristics of submissiveness, backwardness, lewdness, treachery, and dishonesty, historically became stereotypes assigned to African Americans."; United States v. Camp , 723 F.2d 741, 744 n.** (9th Cir. 1984) ("governmental documents which courts have judicially noticed." ); Effie Film, LLC v. Pomerance, 909 F.Supp.2d 273, 298-303 (S.D.N.Y. 2012) (noting that a court may and should take notice of undisputed historical facts).
5. It was Larson, not Perales, that insisted on terminating Walker for insubordination (5-SER-1017 at 25 to 5-SER-1018 at 1-9 )

quit[6] or never fully investigated Walker's termination (as was her job) Opening-Retal-Br at 65; 4-SER-790-792

Charter, thus, got away with deceiving the Ninth Circuit on the 1st appeal (Walker I) because, at trial, it mentioned nothing of Larson being motivated because he felt Walker was "dishonest" or Brenner's policy lapses and lies before.

Furthermore, for the first time after the retaliation claim affirmance, Charter claims events happening April 4, 7-8, 2014. support Walker's termination.      According to Brenner April 7, 2014 was really a non-event and which she described as Walker's "apology". 5-SER-861 The April 8, 2014 "event" was clearly about about "performance" 5-SER-861 which Larson disclaimed as a ground for Walker's termination:

"A I didn't want -- his sales performance didn't make my decision one way or the another" 2-SER-142 at 21-22

This leaves us with the April 4, 2014 "event". Yet, The April 4, 2014 date is omitted altogether from the corrective action report. 5-SER-826. This report was supposed to reference all conduct that was ground for termination. Opening-Retal-Br 22

"Review the reasons for the termination as referenced in the Corrective Action Report. This explanation should focus on the performance deficiency, policy violation, or misconduct that led to the decision to terminate" 4-SER-791

Without a sound rationale for Walker's termination at trial, Charter resorted to using a racist, dog-whistled claims of Walker's "aggressive" nature due to his litigation emails 4 years removed from Walker's termination. Charter shamelessly levied these racist characterizations and benefited from prejudicial jury instructions thereon.

**II. PROCEDURAL BACKGROUND**

On April, 19, 2016, Plaintiff-Appellant Terrance Walker ("Walker") filed the operative complaint asserting state and federal Title VII claims (See EFC 61, ¶ 39-40) against Defendant in the related U.S. Dist. Court of Nevada ("District Court") matter. Walker's claims of discrimination and retaliation were decided against him on summary judgment in the District Court. Walker filed his 1st appeal [Walker I ] in the United States Ninth Circuit Court of Appeals

---

6. Brenner concocted that it was Walker's "decision to leave the company" (Brenner Transcript, pg 425 ll.20-21)

(the "Ninth Circuit").  That court reversed the ruling on the discrimination claims, but affirmed on the retaliation claims.

## A. RETALIATION CLAIM CASE

After the affirmation of the summary judgment in <u>Walker I</u> and trial on the discrimination case, Walker initially brought a motion to vacate in the Ninth Circuit which was translated as a motion to recall. The motion for recall was decided without opinion on Nov. 9, 2020. (Ninth Circuit Case No. 17-15138, Dkt. 59).  Walker, then, brought a motion to vacate in the District Court (EFC 294), but it was stricken on Nov. 12, 2020  (EFC 295) and that Court, as well as the Ninth Circuit panel held that it was properly stricken due to local rules because Walker's lawyers had not withdrawn. <u>Walker v. Charter Commc'ns, LLC</u>, No. 20-16339, 2022 WL 1439125, at *1 (9th Cir. May 6, 2022). ("Walker II")

## B. DISCRIMINATION CLAIM CASE

After partial reversal of the summary judgment in <u>Walker</u> I, Walker was represented by two attorneys at the discrimination trial in the District Court in Nov. 2019.

At trial, Walker strenuously objected to the admission of pre-litigation emails (Exhibits 526 and 527) of Walker to portray an "aggressive" character. Walker's attorneys even filed a motion for a new trial based upon the admission of such and the related jury instructions.

Yet, the District Court claimed the harmless error jury trial analysis erected by the Ninth Circuit panel in <u>Obrey v. Johnson</u>, 400 F.3d 691, 701 (9th Cir. 2005)(presuming prejudice and requiring beneficiary of jury instruction error to show "more probable than not" harmless) and backed by the en banc case of <u>Estate of Barabin v. AstenJohnson, Inc.</u>,740 F.3d 457, 465-66 (9th Cir. 2014)(en banc) were "subsequently" called into question the presumption of prejudice of jury instructions and declined to decide the jury trial error asserted under the "more probable than not" standard:

"A subsequent Supreme Court case casts significant doubt on this presumption. In <u>Shinseki v. Sanders</u>, 556 U.S. 396 (2009), .....This Court follows Molina and likewise declines to determine this legal issue, since the Court finds a lack of prejudice even if there is a presumption in Plaintiff's favor." ( EFC 284 pg 4, n.3 )

Walker appealed, and the Ninth Circuit panel made a pallid two-sentence finding that,

"The district court did not commit reversible error in its instructions to the jury regarding Exhibits 526 and 527. Taken as a whole and viewed in context, the instructions were not misleading and clearly conveyed the limited purpose for which the jury could consider that evidence. *See Gracie*

*v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000); *cf. Middleton v. McNeil*, 541 U.S. 433, 437–38, 124 S. Ct. 1830, 1832–33, 158 L. Ed. 2d 701 (2004) (per curiam)." Walker v. Charter Commc'ns, LLC, No. 20-16339, 2022 WL 1439125, at *1 (9th Cir. May 6, 2022) ("Walker II")

The Ninth Circuit, thus, affirmed the District Court on the issue[7] of Shinseki v. Sanders 556 U.S. 396 (2009), but several months after briefing (See briefs in the 2nd appeal (Walker II)), the Ninth Circuit changed – or at least clarified - - circuit law in deciding that Shinseki v. Sanders 556 U.S. 396 (2009) has no application to jury instructions in civil cases:

"Shinseki did not involve the abnormal situation of jury instruction errors like the errors in Clem or the present appeals. And the Sixth Circuit's Kocher decision involved evidentiary errors. 969 F.3d at 628-29. At bottom, Clem recognized the abnormality that arises from jury instruction errors because the errors prevent the jury from 'determin[ing] the issues presented intelligently.' 566 F.3d at 1182 (quoting *Fikes v. Cleghorn*, 47 F.3d 1011, 1013 (9th Cir. 1995))." BladeRoom Grp. v. Emerson Elec. Co., 20 F.4th 1231, 1244 (9th Cir. 2021)

Walker now properly brings his Rule 60(b)(6) motion due to an intervening change of law.

## III. MEMORANDUM OF LAW

### A. Rule 60(b)(6) Motions can be based upon an intervening change in circuit law

A Rule 60(b)(6) motion may be predicated on an intervening change in the law. Phelps v. Alameida, 569 F.3d 1120, 1132 (9th Cir. 2009) In fact, in this seminal case, "*Phelps,* for example, an **intervening change in circuit law** clarified how to determine finality of a California postconviction petition for the purpose of tolling the limitations period under § 2244(d)(2)." Styers v. Ryan, No. CV-98-2244-PHX-JAT, 2013 WL 1149919, at *5 (D. Ariz. Mar. 20, 2013), aff'd, 632 F. App'x 329 (9th Cir. 2015)

#### 1. The Court should conduct a multi-factored, studied evaluation

Rule 60(b)(6) provides,

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
*********

---

7. The Court cited to, and ostensibly relied on *Dang v. Cross, in footnote 3* but actually applied the rationale used in *Shenseki* because it did not present any probing analysis based upon the "more probable than not" standard. Nor did the Court cite the new precedent of *Bladeroom* or the factors therein

(6) any other reason that justifies relief."

The Rule "is meant to be remedial in nature and therefore must be liberally applied." United States v. Elmore, No. C05-810JLR, 2009 WL 10651377, at *3 (W.D. Wash. Apr. 29, 2009) (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)). "Motions under Rule 60 must be brought `within a reasonable time.'" Patu v. Albert, No. C15-0721JLR, 2017 WL 2729862, at *2 (W.D. Wash. June 26, 2017) (quoting Fed. R. Civ. P. 60(c)(1)). "The primary inquiry on any motion under Rule 60(b)(6) is whether there are `extraordinary circumstances' that warrant vacating the judgment." United States v. Washington, 19 F.Supp.3d 1317, 1373 (W.D. Wash. 2000) (quoting United States v. Washington, 98 F.3d 1159, 1163 (9th Cir. 1996)). "[T]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." Phelps, 569 F.3d at 1133 (quoting *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007)).

In Phelps, the Ninth Circuit considered the two factors laid out by the Supreme Court in Gonzalez v. Crosby, 545 U.S. 524 (2005), and the four factors laid out by the Eleventh Circuit in Ritter v. Smith, 811 F.2d 1398 (11th Cir. 1987), in determining whether there were extraordinary circumstances justifying relief under Rule 60(b). Phelps, 569 F.3d at 1135. It noted that those cases did not "impose a rigid or exhaustive checklist." Id. Rather, the Rule "affords courts the discretion and power `to vacate judgments whenever such action is appropriate to accomplish justice.'" Id. (quoting *Gonzalez*, 545 U.S. at 542). But it "`cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in the timeliness and finality' of judgments." Id. (internal quotation omitted).

In Gonzalez, the Supreme Court considered (1) whether the intervening change in law overruled an otherwise settled legal precedent, and (2) the petitioner's diligence in pursuing review. Id. at 1136 (citing Gonzalez, 545 U.S. at 536, 537). Applying those factors to Phelps, the Ninth Circuit held, first, that the change in law "did not upset or overturn a settled legal principle." Id. Rather, the law was "decidedly *un*settled" at the time of the petition. Id. (emphasis in original). Second, it held that that Phelps had "demonstrated more diligence than [it] could ever reasonably demand from a *habeas* petitioner." Id. Both factors weighed in favor of granting relief under Rule 60. Id. at 1136-37. Under Ritter, the Eleventh Circuit considered (1) whether granting the relief sought would "`undo the past, executed effects of the judgment,' thereby disturbing the

parties' reliance interest in the finality of the case," (2) the delay between the final judgment and the Rule 60(b)(6) motion, (3) the relationship between the original decision and the subsequent decision that represented a change in the law, and (4) principles of comity. Id. at 1137-40 (quoting Ritter, 811 F.2d at 1402). The Ninth Circuit in Phelps held that neither party had undergone any change in legal position due to the district court's judgment, that Phelps filed his petition promptly within four months of his judgment becoming final, that the intervening change in law directly overruled the decision for which reconsideration was sought and resolved a conflict among courts, and that it did not need to be concerned about upsetting the principles of comity as Phelps had sought reconsideration not of a judgment on the merits of his *habeas* petition, but of an erroneous judgment that prevented the court from reaching the merits of that petition. Id. It concluded that Phelps' motion "demonstrate[d] the extraordinary circumstances necessary to grant relief under Rule 60(b)(6)." Id. at 1140.

The Ninth Circuit recently provided District Courts with additional guidance for applying the six Phelps factors, particularly beyond the *habeas corpus* context. See Henson v. Fidelity National Financial Inc 943 F.3d 434 (9th Cir. 2019) In concluding that "many of the Phelps factors are relevant to the Rule 60(b)(6) analysis in the [non-*habeas* context]," Henson "reemphasize[d] that courts must consider all of the relevant circumstances surrounding the specific motion before the court to ensure that justice be done in light of all of the facts." Id. (citing Phelps, 569 F.3d at 1120). Henson v. Fidelity National Financial Inc 943 F.3d 434, 446 (9th Cir. 2019)( "equitable considerations related" to change of law is " relevant to assessing whether Rule 60(b)(6) relief is warranted in a non-habeas context")

This court should conduct a studied evaluation pursuant to this holding. Henson v. Fidelity National Financial Inc  943 F.3d 434, 446-447 (9th 2019)("a district court should weigh whether the specific nature of the change in the law in the case before it makes granting relief more or less justified under all of the circumstances, and should support its conclusion with a *reasoned explanation* grounded in the equitable considerations raised by the case at bench.")

**2. The Law of the Case Doctrine is no Impediment to Change in Law Motions**

The law of the case doctrine "requires courts to follow a decision of an appellate court on a legal issue in all later proceedings in the same case." United States v. Cade, 236 F.3d 463, 467-68 (9th Cir. 2000) (citation omitted).

There is an exception to the law of the case doctrine "where intervening controlling authority makes reconsideration appropriate." United States v. Bad Marriage, 439 F.3d 534, 538 (9th Cir. 2006) (citing *Minidoka Irrigation Dist. v. Dep't of Interior,* 406 F.3d 567, 573 (9th Cir. 2005)).

## IV. POINTS AND AUTHORITIES

The intervening change of law in Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) was a Change in Circuit Law that rejected Shinseki applied to civil jury instructions. Bladeroom held that Shinseki did not remove the mandatory presumption of prejudice in a civil jury trial where error is urged, as was held in this case (EFC 284 pg 4, fn. 3) and affirmed in this case's 2nd appeal (Walker II)

Since Bladeroom was an intervening change of law going to the merits of Walker's discrimination claim appeal, Rule 60(b)(6) relief is warranted as further explained below.

**A. Walker is entitled to relief under Rule 60(b)(6) due to an intervening change of circuit law**

> 1. **Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) was an intervening Change in Circuit Law that rejected application of Shinseki to civil jury instructions – which was previously unsettled law in the circuit**

According to the Ninth circuit "[t]he first Phelps factor considers the nature of the intervening change in law." Henson 943 F.3d at 446 (citing *Phelps*, 569 F.3d at 1135-36).

In Henson, the Ninth Circuit clarified that analysis of the first Phelps factor may require more than a simple inquiry into whether the law at issue was *settled*. Henson v. Fidelity National Financial Inc 943 F.3d 434, 446 (9th Cir. 2019) ("[C]ourts considering this factor should not in rote fashion rely on the conclusion from a different context that any particular type of change in the law favors or disfavors relief."). "[A] district court should weigh whether the specific nature of the change in the law in the case before it makes granting relief more or less justified under all of the circumstances." Id.

While in Henson, "the court had to assess whether to grant relief in the context of an unfavorable change in the law," this case is more analogous to *Phelps*, as "the [C]ourt must decide whether to reopen a case to grant the benefit of a favorable change of law." Henson 943 F.3d 434, 447

Here there are "circumstances surrounding the change of law [making it] . extraordinary".

The District Court noted the uncertainty presented by Shinseki (EFC 284, pg 4, fn. 3 "A subsequent Supreme Court case casts significant doubt on this presumption. In Shinseki v. Sanders, 556 U.S. 396 (2009),... 'that courts ordinarily apply in civil cases,' ….....subsequent Ninth Circuit cases have not applied a consistent standard.") The Ninth Circuit in Bladeroom, also recognized the previously unsettled application of Shinseki noting,

"several Ninth Circuit cases have applied *Shinseki*'s harmless error review instead of *Clem*'s," Bladeroom Id. 20 F.4th at 1244

In fact, the panel in Walker's 2nd appeal (Walker II) did not even mention the presumption of prejudice, the holding in *Clem* or the "more probable than not harmless" standard.

In this case there was a complete disregarding of the presumption of prejudice, as well as the failure of Defendant to argue or urge it had shown "more probable than not" harmless as to a claimed jury instruction error.

Under the new circuit law in Bladeroom, the judgment cannot stand. Certainly, under Bladeroom, such a concession (as Defendant as made in this case as to its inability to show "more probable than not harmless") would have resulted in the Ninth Circuit reversing the judgment.

Thus, the favorable change to unsettled law on the application of the "more probable than not" showing required (and not restricted by Shinseki) as to civil jury instructions weighs in favor of granting plaintiffs' requested relief. Henson v. Fidelity National Financial Inc 943 F.3d 434, 446 (9th Cir. 2019)("the fact that the relevant……law was 'decidedly *un*settled' cut in favor of relief in *Phelps")

**a. Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) now mandates that Defendant make a showing that "more probable/likely than not" harmless as to claimed jury instruction errors -- a finding never made**

Bladeroom was a change of circuit law that ran directly contrary to this Court's (and *Walker II*'s) approach. Bladeroom does not allow a Defendant to simply disclaim any jury instruction error without any argument or showing by Defendant that the claimed erroneous jury instructions were "more probable/likely than not" harmless". *Walker II*'s approach is inapposite.

As the District Court previously noted (EFC 284 n. 3), the law was not settled on whether a could disregard the jury instruction error by merely claiming it harmless and not requiring a showing of "more probable than not" harmless by the beneficiary. The law was also unsettled as

to if the appellate court could excuse a failure by Defendant to make a showing that a claimed jury instruction was "more probable/likely than not" harmless. See e.g. Henson v. Fid. Nat'l Fin., Inc., 943 F.3d 434, 446 (9th Cir. 2019) ("the law in our circuit was decidedly *un* settled at the time Phelps' habeas petition was before the district court." quoting *Phelps*) In fact, the Ninth Circuit cited the same authorities that were within Bladeroom but came to the opposite conclusion -- that it did not have to force Defendant to make a showing of "more probable/likely than not" harmless. Since Bladeroom was decided after the briefing of Walker's 2nd appeal (Walker II), as shown above, it represented an intervening change in law.

Nonetheless, Circuit law under Bladeroom **now** *mandates* a showing that jury instruction error requires a **showing** of the beneficiary that it the claimed jury instruction error is "more probable/likely than not" harmless:

"has failed to sustain his burden to show that the district court's error w**as more likely than not than not harmless**. See Bladeroom Grp. Ltd v. Emerson Elec. Co., 20 F.4th 1231, 1243 (9th Cir. 2021). At closing, and throughout trial, Hopkins emphasized that Integon failed to give equal consideration to Hopkins's interests. Moreover, part of Integon's defense was that it had the right to question the evidence that Hopkins's injuries were permanent and caused by the 2016 accident. Accordingly, we cannot conclude that the **jury more probably than not** would have returned the same verdict had it been properly instructed. *See id.* claims.Hopkins v. Integon Gen. Ins. Co., No. 21-35196, 2022 WL 851750, at *2 (9th Cir. Mar. 22, 2022)(vacating and remand for a new trial)

**b. Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) would not allow a simple appellate finding of "no reversible error" on Walker's jury instructions issue, especially due to Charter's "aggressive" Black man schtick and unintelligible instructions to the jury**

As had been urged before (see Div I), Walker specifically asserted,

"'[T]he burden [is] on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.' Id. At 700 (citation omitted). Thus, 'we begin with a presumption of prejudice. That presumption can be rebutted by a showing that it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted.' (citation omitted)" Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 464-65 (9th Cir. 2014)(en banc)

(Ninth Circuit case 20-16339, Dkt 10, pg 66 )(Opening Brief, Discrimination claim)

The Ninth Circuit panel hearing the 2nd appeal (Walker II) simply thought it proper to

"usurp the jury's function, by merely deleting improper evidence from the record and assessing the sufficiency of the evidence to support the verdict below.' 720 F.2d at 1459 (citing Kotteakos,328 U.S. at 764-65, 66 S.Ct. 1239; TRAYNOR, THE RIDDLE OF HARMLESS

16

ERROR at 18-22)." Obrey v. Johnson, 400 F.3d 691, 701 (9th Cir. 2005)(bold added)" (Ninth Circuit case 20-16339, Dkt 10, pg 66 )(Opening Brief, Discrimination claim)

Now, Circuit law under Bladeroom Id. 20 F4th at 1243 which embraced pre-Shinseki precedent (e.g. *Kotteakos v. United States* , 328 U.S. 750, 760–61, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) does not permit this superficial[8] harmless error determination that Defendants advocated for against Walker and held proper (in Walker II) in two sentences[9].

The new, or at least clarified circuit law rule is that:

"We first presume prejudice. *Id.* Thus, 'the burden shifts to [the beneficiary of the claimed error] to **demonstrate that it is more probable than not that the jury would have reached the same verdict** had it been properly instructed.' *Id.* (internal quotations marks and citation omitted)." *BladeRoom Grp. v. Emerson Elec. Co.*, 20 F.4th 1231, 1243 (9th Cir. 2021)[words in brackets substituted] (emphasis added)

The Ninth Circuit has joined all other circuits, except the 6th circuit in holding that the standard of review is the same as in criminal jury cases. Williams v. U.S. Elevator Corp.920 F.2d 1019, 1023 (D.C. Cir. 1990) (also citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)) ("Whatever difference may be appropriate in specific cases with reference to the criteria to be applied under the *Kotteakos* standard, we have in the past applied the *Kotteakos* standard to civil cases and do so today." collecting cases under the 3rd, 7th , 8th, 9th, 10th 11th and D.C. circuits); also see *United States v. Tussa,* 816 F.2d 58, 67 (2d Cir.1987) (same) *Chapman v. United States,* 547 F.2d 1240, 1250 (5th Cir.) (per Irving Goldberg, J.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977));

As has been held under the now-clarified 9th circuit standard there must be a determination,

"'that the jury would have reached the same verdict had it been properly instructed.' *Id.* (internal quotations marks and citation omitted)." BladeRoom Grp. v. Emerson Elec. Co., 20 F.4th 1231, 1243 (9th Cir. 2021)

Further, as explained, the

---

8. "analysis under the harmless error doctrine should not be limited to **superficial** inquiry as to whether the same verdict would have been possible absent the tainted evidence." Brooks v. United States, 367 A.2d 1297, 1309 (D.C.1976) (citing *Kotteakos and Chapman v. California);* Aetna Casualty and Sur. Co. v. Gosdin, 803 F.2d 1153, 1159 (11th Cir.1986) ("in civil cases courts should apply the same standard as announced in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)"); Haddad v. Lockheed California Corp., 720 F.2d 1454, 1459 (9th Cir.1983)(applying *Kotteakos)*
9. Walker v. Charter Commc'ns, LLC, No. 20-16339, 2022 WL 1439125, at *1 (9th Cir. May 6, 2022)

"Ninth Circuit precedent under *Clem* addresses the abnormal civil cases when there is an errant jury instruction. 566 F.3d at 1182. The jury instruction error here, like in *Clem,* was abnormal because it affected Emerson's substantive rights. 566 F.3d at 1181 ('Each party is... `entitled to an instruction about [their] theory of the case if it is supported by law and has foundation in the evidence.')" *BladeRoom Grp. v. Emerson Elec. Co.*, 20 F.4th 1231, 1244 (9th Cir. 2021)[words in brackets substituted] (emphasis added)

Here, there's been no such determination as to if the jury instructions on the litigation emails (Exhibits 526, 527) affected Walker's ability to present his theory of the case, nor about the errant "motivating factor" instruction which allowed the Defendant to argue Walker's emails could defeat this element.  Undoubtedly, this affected Walker's substantial rights to have a jury instruction on this key element of discrimination presented "intelligently".  BladeRoom Id. 20 F.4th 1231, 1244

A correct instruction would only have allowed an employer to prove it would have made the same decision to terminate Walker,

" 'in the absence of the impermissible motivating factor',  *see* 42 U.S.C. § 2000e-5(g)(2)(B),[though] it is not absolved of violating Title VII, for such a finding only serves to limit the plaintiff's remedies to declaratory and injunctive relief and limited attorney's fees and costs, *see* 42 U.S.C. § 2000e-5(g)(2)(B)(ii)." Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1350 (7th Cir. 1995) (brackets added)

Yet, the District Court, led by Defendant (once again), was under the false impression that Walker was fired about some emails when there's no record of that. The Court ruled "the issue of whether [Mr. Walker] has written quote/unquote irate e-mails to other persons, including counsel on this case, has been opened, so it's an issue." Walker Transcript at 166:13–15. It then instructed that the jury could consider the emails "as to [Mr. Walker's] truthfulness or his ability to perceive." Jury Instruction Transcript at 10:3–4.  It should be noted that the, "hostility and belligerence found so readily by the [Charter] and the trial judge from [Walker's] one response evoke stereotypical images of the angry black man, who, at the slightest provocation and at even the faintest appearance of challenging the status quo will be tagged 'hostile' or 'belligerent.'" Lingo v. State, 263 Ga. 664, 674 (Ga. 1993)  [alterations in brackets]

Courts must consider the probable effect on the trier itself; that is, its "probable impact . . . on the minds of an average jury." Harrington v. California, *supra,* 395 U.S. at 254, 89 S.Ct. at 1728

18

In this case, the jury were instructed on the emails that they were properly characterized as "aggressive", reflecting on Walker's "credibility", and that the emails could help Defendant disprove the "motivating factor" in this case. ("They do have to decide that factual issue as a predicate to determining whether there was sole or motivating factor."), and Jury Instruction Transcript at 5:4–7 ("But The only reason we let in 40[4] evidence in that regard is as to Mr. Walker's credibility. When he makes the statement, 'I'm always professional, I don't raise my voice,' I have to let the jury decide that question."), and Jury Instruction Transcript at 5:19–21 ("it just goes to credibility with respect to his testimony on his propensity for calm, professional demeanor.") None of these instructions comport with Title VII discrimination law. Hennessy v. Penril Datacomm Networks, Inc.,Id. (absolution of damages, only, 'in the absence of the impermissible motivating factor',") " Cain vs. Esthetique, 182 F.Supp.3d 54, 70 (S.D. New York 2016)( "Evidence that the plaintiff has a 'history of aggressive tendencies and confrontational behavior' does not conclusively establish that the defendant had a non-discriminatory reason for dismissing her") 733 F. App'x 8 (2d Cir. 2018);  Cain., Id. 182 F. Supp. At 69("the fact that neither Mr. Weinstein's case note nor Ms. Wolff's letter mentions threatening or aggressive behavior suggests that Mr. Rochester did not raise that issue with them and, therefore, that his decision was not in fact *motivated* by such behavior") The same "aggressive" Black man schtick was attempted in this case, with approval. Yet, Similar to Cain, there was no "aggressive" "temperament" or behavior mentioned in Charter's documentation that, as a policy matter, were to address Walker's termination reasons. 5-SER-826; 4-SER-791

Even if Defendant did not concede on this issue of prejudicial jury instructions (as explained that they did, below), there could be no showing of "more probable than not harmless". In all case law found, these types of "aggressive" personality or "temperament"[10] presentations (and instructions) to the jury are not allowed (if ever[11]), especially extrinsic evidence four years removed from the incidents in question.

---

10. "both temperament and personality refer to endogenous basic tendencies of thoughts, emotions, and behavior, and that the distinction between these constructs is largely artificial." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3319036/ Temperament and Its Role in Developmental Psychopathology Harv Rev Psychiatry. 2005 Jan-Feb; 13(1): 14–27. doi: 10.1080/10673220590923146 ; Askew v. Secretary of Health & Human Services,Case No. 10-767V, 2012 WL 2061804, at *1 n.3, *5 (Fed. Cl. May 17, 2012) (proper for court to take judicial notice of an online publication by the National Institutes of Health since it is not subject to dispute)

11. Charter has failed to set forth one supporting legal case

19

Majoritarian prejudices of Walker's emailed mentions of Emmet Till and white fragility were allowed to play out in Court and improperly influence the jury decision[12]

As the Ninth Circuit noted,
"the use of `code words' (citation ommitted). 'like the ones allegedly made in this case send a clear message and carry the distinct tone of racial motivations and implications. They could be seen as conveying the message that members of a particular race are disfavored and that members of that race are, therefore, not full and equal" McGinest v. GTE Service Corp., 360 F.3d 1103, 1116-17 (9th Cir. 2004)

Charter's, chosen code-word, "aggressive" (EFC 236, pg 5) which it levied against Walker (aided with jury instructions) comes with a hateful past when used against Black men:

"The 1915 film 'Birth of a Nation' portrayed black men (many played by white actors in blackface) as unintelligent and sexually aggressive toward white women. The Ku Klux Klan was the heroic force in the movie. ......Fast forward to the 21st century. Black men remain challenged by stereotypes, leading to their deaths." *The legendary Tubman deserves better than 'Harriet'* [13] by Danette Mitchell November 10, 2019

As another authority shows,
"Media portrayals of this mythical Black brute began to grow using the same initial science Jefferson and other Enlightenment-era theorists proclaimed, which was based on inaccurate anthropological and biological factors. This time, the argument was that Blacks were naturally more prone to violence and other aggressive behaviors. Charles H. Smith wrote in 1893, 'A bad Negro is the most horrible creature upon the earth, the most brutal and merciless' (p. 181). " *Journal of Human Behavior in the Social Environment*, Volume 26, 2016 - Issue 3-4: Police shooting of unarmed African American males: Implications for the individual, the family, and the community [14] ("Police Shooting of African American Males") by CalvinJohn Smiley and David Fakunle.

Also, Courts do not normally take post hoc rationalizations or Defendant's

12. See, e.g., Robin Diangelo (PhD), "White Fragility," 3 International Journal of Critical Pedagogy 3:54, 64 (2011) (These " claims work on multiple levels to: position the speakers as morally superior while obscuring the true power of their social locations; blame others with less social power for their discomfort; falsely position that discomfort as dangerous; and reinscribe racist imagery"); Scott v. Ross, 140 F.3d 1275, 1286 (9th Cir.1998) (finding that a sociology professor's expert testimony which cited "to his extensive studies and to his collaboration with other academics as the basis for his opinions");
Available at:
https://robindiangelo.com/2018site/wp-content/uploads/2016/01/White-Fragility-Published.-1.pdf
Also see "White fragility: Why it's so hard for white people to talk about racism."
Robin DiAngelo PhD, Boston, MA: Beacon Press, 2018; 154 pp., ISBN 9780807047415
13. Appearing at:
https://www.thereporter.com/2019/11/10/danette-mitchell-the-legendary-tubman-deserves-better-than-harriet/
14. Appearing at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5004736/
Note: subject to judicial notice Askew v. Secretary of Health & Human Services,Case No. 10-767V, 2012 WL 2061804, at *1 n.3, *5 (Fed. Cl. May 17, 2012) (proper for court to take judicial notice of an online publication by the National Institutes of Health)

characterizations of their claimed use of such evidence at face value[15.] Courts unanimously reject these "aggressive" characterizations. Bryant v. City of Memphis, 644 F. App'x 381 (6th Cir. 2016) (also affirming that "aggressive" character evidence was inadmissible under Rule 403 and prejudicial even though it slightly related to an element of assault) ; Cf. Lewis v. Velez, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) (discussing a person's "aggressive disposition" in context of previous assault convictions, and excluding those convictions because they "skirt[ed] too close to the impermissible suggestion that the [party] had a propensity toward violence and acted in conformity with his aggressive predisposition"); Hynes v. Coughlin, 79 F.3d 285, 292 (2d Cir.1996) (holding that the district court erred in admitting the disciplinary record of a prisoner who became a victim of excessive force because "[t]hough defendants stated that they were not offering [the victim's] disciplinary records in order to show his `propensity' for violence ..., their lip service to the proper principle cannot alter the fact that throughout the trial, ... the information in [the victim's] disciplinary records was offered in order to show (1) that [he] had an aggressive character,....."); Altman v. New Pub. Sch. Dist., 2017 U.S.Dist.LEXIS 2515, at *30 (S.D.N.Y. Jan. 6, 2017) (rejecting the defendant's assertions that "post-termination correspondence" bared on the plaintiff's "credibility" and finding it too "attenuated" and the "introduction of such evidence ... unnecessary, cumulative, confusing, and overly prejudicial") Cain vs. Esthetique, 182 F.Supp.3d 54, 70 (S.D. New York 2016)( "Evidence that the plaintiff has a 'history of aggressive tendencies and confrontational behavior' does not conclusively establish that the defendant had a non-discriminatory reason for dismissing her"); (Noting"' it is unlikely that Bremmer's general history of violent and aggressive behavior would be admissible.') Rieman v. Gilbert, No. 3:16-CV-05250-RBL, 2020 WL 2494712, at *6 (W.D. Wash. May 14, 2020), aff'd, 860 F. App'x 103 (9th Cir. 2021)(in a manslaughter case)(citing See United States v. Bettencourt, 614 F.2d 214, 217 (9th Cir. 1980) ; Daily v. City of Phoenix, Daily v. City of Phoenix, No. CV-14-00825-PHX-SPL, 2019 WL 571805 *6v (D. Ariz. Nov. 5, 2019) (Rejecting "aggressive personality" evidence as "prejudicial under FRE 403............ .....[and]..irrelevant to impeach Defendant on cross-examination pursuant to FRE 608(b) and 611(b) because the fact has no bearing on his credibility. ." )

---

15. "Relying only on the descriptions of adversary counsel is insufficient to ensure that a defendant receives the due process and fair trial" U.S. v. Curtin, 489 F.3d 935, 958 (9th Cir. 2007)

There was no evidence of Charter saying Walker acted "agressively" before these trial antics:

Q Had anybody told you that you had behaved unprofessionally in the workplace?
A No, they hadn't.
Q Anybody told you that you had acted in an angry or aggressive manner?
A No, they hadn't.
Q Did you ever act in an angry or aggressive manner at work?
A No, I kept it professional.
Walker Transcript at 30:8–12; 83:7–15.

First, to allow a jury to weigh in on Walker's pre-trial challenge to Defense attorney Karen McGuigan's conduct, who *first* bogusly claimed Walker made a "threat"[16] as "aggressive", is historically and socially blind. The Ninth circuit Court rejects this socially and historical mindless approach to racial issues[17]. As in all situations, "in understanding what is going on around us, context matters." Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale, 901 F.3d 1235, 1237 (11th Cir. 2018).

Defendant's jury presentation reeked of purposeful use of racist imagery and deliberate obfuscation[18]. To allow such "evidence" and characterizations of Walker, is to allow Defendant free-reign to reinscribe racial stereotyping and obscure the racial dynamics at play at a discrimination jury trial.

---

16. Walker merely suggested that Defendant abide by the Court's Order in creating a scheduling order and stipulate rather than restart discovery. He indicated he would have to file something with the Court, otherwise. See EFC 184, pg 1, para 2-5 ("Plaintif has been trying to secure trial counsel and, in the interim, has had a few email encounters with Defendant which resulted in racist characterizations by Defendant. 3) One such characterization arose from Plaintif simply requesting (after waiting over 3 days). for Defendant to respond to what was wrong with Plaintif 's 1 page stipulation to continue. 4) Plaintif 's follow up email(s) were called "irate" and "threat" by Defendant, without any sort of legal justification for such characterizations. (EFC 168). This is not a new (or even isolated) Tactic. 5) "Defendant's nastiness, non-cooperation, and non-responsiveness" (EFC 175, para. 6), as well as racism and gamesmanship have been noted by other attorneys. (EFC 175, Exh. 1-3)")

17. The Opinion's ""attempt to deny the possible racial overtones of many of [its] comments ......indicates a willful blindness to racial stereotyping." Cf. McGinest v. GTE Service Corp., 360 F.3d 1103, 1117 (9th Cir. 2004)

18. See, e.g., Robin Diangelo (PhD), "White Fragility," 3 International Journal of Critical Pedagogy 3:54, 64 (2011) (These " claims work on multiple levels to: position the speakers as morally superior while obscuring the true power of their social locations; blame others with less social power for their discomfort; falsely position that discomfort as dangerous; and reinscribe racist imagery"); Scott v. Ross, 140 F.3d 1275, 1286 (9th Cir.1998) (finding that a sociology professor's expert testimony which cited "to his extensive studies and to his collaboration with other academics as the basis for his opinions");
Available at:
https://robindiangelo.com/2018site/wp-content/uploads/2016/01/White-Fragility-Published.-1.pdf
Also see "White fragility: Why it's so hard for white people to talk about racism."
Robin DiAngelo PhD, Boston, MA: Beacon Press, 2018; 154 pp., ISBN 9780807047415

Court's reject employers' use of these types of stereotypes in the work place, not to mention for use to a jury at trial. Cf. <u>Wexler v. White's Furniture, Inc.</u>, 317 F.3d 564, 586 n.13 (6th Cir. 2003) (Noting that in the precedent of *Price Waterhouse* a woman was stereotyped as having an "***aggressive*** personality" ) ;    42 U.S.C. § 2000e-2(a)(1). Section 2000e-2(a)(1) "prohibit[s] all discriminatory practices in whatever form which create inequality in employment opportunity, reaching beyond conscious racism to root out **stereotyped thinking** and other forms of less conscious bias in employment decisions." <u>Brandt v. Fitzpatrick</u>*,* 957 F.3d 67, 75 (1st Cir. 2020) (citing *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 42, 58-61 (1st Cir. 1999)(which also cites *Price Waterhouse v. Hopkins,* 490 U.S. 228, 235-36 (1989)

**i. Defendant made no showing under <u>Bladeroom</u> that "the jury's verdict indicates that the result would have been" the same.  Nor has any Court found such.**

<u>Bladeroom</u> counsels us that , "prejudice is also generally more likely than not if nothing about the jury's verdict indicates that the result would have been the same without the error." *Id.* at 1183 (cleaned up). Based on this reason, it is clear that we must find prejudice here. <u>BladeRoom Grp. v. Emerson Elec. Co.,</u> 20 F.4th 1231, 1245   We obviously, would have to find prejudice in this case as well, as shown above.

"To be sure, the evidence on  [why the termination of Walker ] occurred is murky." <u>BladeRoom Grp. v. Emerson Elec. Co</u>., 20 F.4th 1231, 1245. Also see 5-SER-826; 4-SER-791 Since we "do not know" whether the jury found it could use these *ahistorical* renditions[19] of Emmet Till's killing and Walker's litigation emails to disprove Walker's proof that Charter was "motivated" by discriminatory animus (e.g. Larson claiming Walker was "dishonest", Brenner lying that Walker quit, various lies about the termination), <u>Bladeroom</u> would call for a reversal because, "[T]he prevailing party is not entitled to have disputed factual questions resolved in [its] favor ...." <u>BladeRoom Grp. v. Emerson Elec. Co.,</u> 20 F.4th 1231, 1245-46 (9th Cir. 2021) (quoting *Swinton v. Potomac Corp.* , 270 F.3d 794, 805–06 (9th Cir. 2001) )[20]  "

---

19. "...an ahistorical generalization is no substitute for careful constitutional analysis" <u>Am. Legion v. Am. Humanist Ass'n</u>, 139 S. Ct. 2067, 2095, 204 L. Ed. 2d 452 (2019) (on, e.g. question of whether right of citizenship restrains the States in the establishment context.)

20. The Court in *Walker II* took the opposite approach in resolving disputed facts in the prevailing party's favor. The *Walker II* Opinion purposefully avoided reliable government publications presented by Walker which it could take judicial notice in the last sentence. The Opinion compared such to facts as subject to dispute and disregarded government publications which

Even Defendant claimed Walker's emails [Exhibit 526 and 527) were "egregious" See 2- SER-290. This was a tacit admission that jury instructions thereon would be prejudicial. For instance, in a case concerning a violation of 18 U.S.C. § 245. In <u>United States v. Ebens</u>, 800 F.2d 1422, 1427 (6th Cir. 1986) Defendant Ebens admitted the physical facts but claimed that he was not motivated by Chin's race or national origin. *Id.* at 1428. The government introduced testimony about the defendant's use of the word "n****r" eight years prior to the crime being charged to show "that Ebens generally was possessed of a bigoted mind and that he therefore possessed the requisite intent." *Id.* at 1432. The Court found the evidence "highly prejudicial to the rights of defendant Ebens," observing that "[i]t does not take much imagination to understand how such grossly biased comments would be viewed by the jury," "for nearly all citizens find themselves repelled by such blatantly racist remarks and resentful of the person claimed to have uttered them." *Id.* at 1434. comments were directed at someone of a different race and were substantially remote in time from the crime. *Ebens,* 800 F.2d at 1433

Similarly here, it would take no imagination to understand how Walker's emails may be viewed by the all-white jury where the comments therein were from someone of a different race and remote in time.

Nonetheless, "[N]o party can demonstrate what the jury found " as to these instructions <u>*BladeRoom Grp. v. Emerson Elec. Co.*</u>, 20 F.4th 1231, 1245 (9th Cir. 2021).  "[N]ot only is it impossible to determine that the jury would have reached the same result, there are signs that the jury might very well have returned a different verdict." *(citation omitted)* " <u>BladeRoom Grp. v. Emerson Elec. Co.,</u> 20 F.4th 1231, 1246 (9th Cir. 2021) when one looks at the conflicting stories and the absence of a single, consistent, rationale for Walker's termination that's backed by contemporaneous records.

**ii. Defendant made no showing under <u>Bladeroom</u> that the jury was properly allowed to "determine the issues presented intelligently". Nor has any Court found such**

Furthermore under <u>Bladeroom's</u> second option for finding prejudice, again endorsing <u>Clem</u>,

---

favored Walker's position while *citing* <u>Lee v. City of L.A.</u>, 250 F.3d 668, 689 (9th Cir. 2001) (denial of judicial notice when facts "subject to reasonable **dispute**.")

"[W]hen the trial court erroneously adds an extra element to the plaintiff's burden of proof, it is unlikely that the error w[ill] be harmless." Clem v. Lomeli 566 F.3d 1177, 1182 (9th Cir. 2009)

Walker was unfairly tasked with proving to the jury the *accurate* history as it pertains to Emmett Till, the proper context of his email,  to disprove the suggestion that his emails had any bearing on his termination, as well as his "ability to perceive", "character" or "credibility". Walker had the added task to show that Charter did not disprove anything as to the key discrimination element--  "motivating factor"[21] -- when it comes to Walker's litigation emails (Exhibits 526, 527).   Defendant never cited any authority establishing that litigation emails 4 years after the termination could neutralize a Plaintiff's proof that discrimination was a "motivating" factor , as the court instructed (and allowed Defendant to use to negate with email exhibits 526 & 527) to the jury in this case.

Here, the extra burden thrust upon Walker to make additional proof on the "motivating factor" would have been not found harmless under Bladeroom.  No doubt that suggestions and instructions about Walker's emails prevented the jury from "'determin[ing] the issues presented intelligently.' 566 F.3d at 1182 (quoting *Fikes v. Cleghorn*, 47 F.3d 1011, 1013 (9th Cir. 1995))." BladeRoom Grp. v. Emerson Elec. Co., 20 F.4th 1231, 1244 (9th Cir. 2021)    *Walker II* is silent on this point.

Since no Court has entertained the Bladeroom analysis, this factor is established.


**c. That Defendant did not urge it could establish  "more probable/likely than not harmless" as to the jury instructions would have mandated reversal under Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021)**

Defendant made no showing of harmlessness, and even conceded that it could make no showing because it did not even attempt to argue "more probable than not" harmless as to the jury instructions in either the District Court(EFC 277) or on appeal in its Answering Brief (Exhibit 3) (Ninth Circuit Appeal case 20-16339, Dkt 42). CTIA - The Wireless Ass'n v. City of Berkeley, 928 F.3d 832, 850 (9th Cir. 2019)(finding a party "conceded the point in the district court and

21. Staub v. Proctor Hospital 562 U.S. 411, the cat's paw theory states "discriminatory animus may be imputed to a neutral decision-maker if a supervisor recommends an adverse employment action due to a discriminatory animus a and that recommendation is a motivating factor of the decision-maker's ultimate adverse employment action."

25

made its argument to the contrary only before us" and, thus, waived the issue) ; Crawford v. Lungren, 96 F.3d 380, 389 n.6 (9th Cir. 1996) ("The district court is not merely a way station through which parties pass by arguing one issue while holding back . . . others for appeal.")

These are the previously disregarded ("more probable/likely than not") concessions that circuit law *now* demand to be analyzed under new Circuit law.

As such, any application of the circuit law under Bladeroom would not hold up the Ninth Circuit's findings on Walker's 2nd appeal (Walker II) because Defendant *has to* make a *showing of harmlessness*. Here, Defendant conceded that it could not with its non-argument on the subject (EFC 277)(EFC 20-16339, Dkt 42). Reynoso v. Giurbino, 462 F.3d 1099, 1110 (9th Cir. 2006) (holding that a party is bound by a concession to the district court notwithstanding a contrary position on appeal).

**d. The Ninth Circuit would have remanded for a decision in keeping with Bladeroom Group Ltd. v. Emerson Elect Com. 20 F.4th 1231 (9th Cir. 2021) had it been decided a few months earlier.**

Here, had the new Ninth Court precedent been decided a few months earlier, the decision that the "more probable than not" showing was not required due to Shinseki would **not** have been made. Instead, a precedent-following Court would have remanded the case in light of the new precedent of Bladeroom Id. See *Phelps* , 569 F.3d at 1127 (noting that if the intervening change in the law had been made "a few months earlier," the habeas petition at issue "would have been remanded to the district court for a decision on the merits").

In sum, this factor (nature of the intervening change in law) weighs in favor of granting Walker's relief.

**2. Plaintiff Exhibited Diligence in Pursuing Relief**

"The second Phelps factor is the [plaintiffs'] exercise of diligence in pursuing [their] claim for relief." Henson 943 F.3d at 449 (citing Phelps, 569 F.3d at 1135-36).

As described above (and See Exhibit 1; Divisions I-II.) Plaintiff raised the issue of presumption of prejudice and the mandatory showing required of Defendant (e.g. "more probable than not harmless"). Walker pressed this issue before this Court in his motion for new trial (EFC 267, pg 22):

26

Charter will not be able to carry its burden to show "that it is more probable than not that the jury would have reached the same verdict even if the evidence had [not] been admitted." See Obrey, 400 F.3d at 701; Sanders v. Newport, 657 F.3d at 781. When "it is impossible to determine from the Jury's verdict and evidentiary record that the jury would have reached the same result had it Been properly instructed," a district court's error is not harmless. Id. at 782–783; accord Obrey, 400 F.3d at 701 ("[P]resuming prejudice, rather than harmlessness, is required by Supreme Court precedent."). Accordingly, the Court should grant Mr. Walker a new trial.

Walker urged this issue on appeal in the 9th Circuit. See Exhibit 1, (Ninth Circuit case 20-16339, Dkt 10, pg 66 )(Opening Brief, Discrimination claim).   Stated, in Walker's opening brief:

"Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009)('An error in instructing the jury in a civil case requires reversal' unless the appellee can show that 'it is more probable than not that the jury would have reached the same verdict had it been properly instructed.')"
See Exhibit 1, (Ninth Circuit case 20-16339, Dkt 10, pg 16 )

"Charter can not carry its burden to show 'that it is more probable than not that the jury would have reached the same verdict even if the evidence had [not] been admitted.' See Obrey, 400 F.3d at 701. In fact, it conceded such in not responding (EFC 277)."
See Exhibit 1, (Ninth Circuit case 20-16339, Dkt 10, pg 65)

The Ninth Circuit  filed its law-changing opinion in Bladeroom in Aug. 30, 2021 about ten months after Walker filed his Nov. 19, 2020 Opening Brief Brief (Exhibit 1). Walker "had been diligent in advancing the legal position that was ultimately adopted by that change in the law was relevant to the equitable considerations implicated by a Rule 60(b)(6) motion. *See id.*; *see also Gonzalez,* 545 U.S. at 537-38, 125 S.Ct. 2641 (considering diligence in terms of petitioner's efforts to pursue review of the legal issue on which he later requested relief)" Henson v. Fidelity National Financial Inc 943 F. 434, 449 (9th Cir. 2019)

Clearly, the affirmance of Walker's case (disregarding his presumption of a showing by Defendant of "more probable than not" harmless)  cut clearly against Walker's argument which was subsequently backed by the Court in Bladeroom. Henson 943 F.3d 434, 446 (9 th Cir. 2019)(" dismissal of Phelps' petition had not been based on a 'prevailing interpretation' of the relevant statute, and in fact the change in the law adopted the legal position that Phelps had unsuccessfully advocated all along in his habeas proceedings. *See id.*   ")

Plaintiff was diligent in "press[ing] all possible avenues of relief," <u>Phelps</u>, 569 F.3d at 1137; cf. <u>Henson</u> 943 F.3d at 449 (emphasis added) (noting that "[i]n Phelps, because the petitioner sought the benefit of a favorable change in the law, the fact that petitioner had been *diligent in advancing* the legal position that was ultimately adopted by that change in law was relevant to the equitable considerations implicated by a Rule 60(b)(6) motion").   Thus, this factor weights in favor of granting Walker's relief.

**3. Reliance Interest in Finality of the Case factor weighs in Walker's favor**

The "third factor . . . considered in Phelps is whether granting the Rule 60(b) motion for relief from judgment would upset `the parties' reliance in the finality of the case.'" <u>Henson</u>, 943 F.3d at 450 (quoting Phelps, 569 F.3d at 1137).

A party might have a reliance interest in the finality of a judgment "when a judgment conveys land from one party to another and the prevailing party `enter[s] upon the land and install[s] pipes and appurtenances,'" or "when a judgment affords a federal habeas petitioner a new trial that results in the eventual dismissal of the charges and his release from custody." *Id.* (alterations in original) (italics omitted) (quoting *Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir. 1987)). Here, however, there is no evidence that Defendants have " relied in such a fashion on the finality of the district court's dismissal." Phelps *Id.* at 1138. As in *Phelps,* "[t]here are no `past effects' of the judgment that would be disturbed if the case were reopened for consideration of the merits.... Instead, the parties would simply pick up where they left off." *Id.* Thus, as in *Phelps,* this factor should "weigh[] heavily in [Plaintiffs'] favor." *Id.* Furthermore, the finality interest in this case is even weaker than that in *Phelps* because, here, Plaintiffs' appeal had not been finally decided before the Ninth Circuit Court had changed the law. *See id.* at 1126 (explaining that Phelps' appeal had become final fifteen months before the change in the law that prompted his Rule 60(b)(6) motion)

Here, as shown above, the Court's dismissal has not "caused one or more of the parties to change [its] legal position in reliance on that judgment." <u>Phelps</u>, 569 F.3d at 1138. There is no indication that any "past effects of the judgment . . . would be disturbed if the case were reopened for consideration on the merits." <u>Henson</u>,943 F.3d at 450(internal quotation marks omitted) (quoting *Phelps*, 569 F.3d at 1138). This weighs in favor of granting plaintiffs' requested relief. Phelps, 569 F.3d at 1137.

### 4. No delay between the Judgment and Rule 60(b)(6) Motion weighs in favor of relief

"The fourth Phelps factor examines the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." Henson,Id. At 452 (internal quotation marks omitted) (quoting Phelps, 569 F.3d at 1138; Ritter, 811 F.2d at 1402). "We consider the length of time between when the original judgment . . . became final *after* appeal, and the time at which a party filed its motion for Rule 60(b)(6) relief." Id. (alterations omitted) (quoting Phelps, 569 F.3d at 1138 n.21).

Plaintiff filed this motion only about two months after Ninth Circuit affirmed his 2ⁿᵈ appeal  (Walker II) so there's been no significant delay In Ritter, a delay of nine months between the judgment becoming final and the Rule 60(b)(6) motion being filed was found to be "very brief." Ritter, 811 F.2d at 1402. In this case, the delay factor weighs in favor of granting plaintiffs' relief. See Lopez v Ryan, 678 F.3d at 1131, 1136 (9th Cir 2012); Henson 943 F.3d  at 452.

### 5. Relationship Between the Original Judgment and the Change in the Law

"The fifth Phelps factor looks to the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law." Henson 943 F.3d  at 452-453 (internal quotation marks and citations omitted). "[I]f there is a close connection between the two cases, the court will be more likely to find the circumstances sufficiently extraordinary to justify disturbing the finality of the original judgment." Id. (alterations omitted) (quoting Phelps, 569 F.3d at 1139; Ritter, 811 F.2d at 1402).

Here, as shown above, the connection between the new Ninth Circuit Court precedent in Bladeroom and plaintiffs' action is as straightforward as the cases in *Phelps* and *Henson*. The intervening change in law in the new Ninth Circuit precedent "directly overrule[] the decision for which reconsideration [i]s sought."  – that is, a Plaintiff's claims as to the showing required of Defendant to be used on his claimed jury instruction error -- "more probable than not harmless" is to be considered --not disregarded -- in analyzing a claimed jury instruction error.  A Plaintiff's alleged jury instruction error can't simply be superficially determined, especially after a concession that Defendant cannot make the showing, as was held in this case  here where neither the context of the evidence nor the content of jury instructions were even discussed.  This factor weighs in favor of granting plaintiffs' requested relief.

**6. Comity is inapplicable factor**

The Phelps comity factor is inapplicable here and thus this does not inform the Court's analysis. See Henson, 943 F.3d at 453 (quoting Phelps, 569 F.3d at 1139) ("[C]onsiderations of comity `between the independently sovereign state and federal judiciaries' that we discussed in Phelps do not apply here at all, because this case does not involve a federal habeas petition that challenges a state conviction.").

**7. Additional Considerations weigh in Walker's favor**

In Henson, the Ninth Circuit reiterated that the Phelps factors were "not meant to `impose rigid or exhaustive checklist,'" and advised district courts "applying [the Phelps factors] in an entirely new context . . . [to] assess how that different context might alter the calculus of the factors' application, and whether those factors adequately capture all of the relevant circumstances." Henson Id. 943 F.3d  446 (quoting Phelps, 569 F.3d at 1133, 1135). The Ninth Circuit accordingly analyzed several "additional considerations" arising from the specific facts of Henson Id. 943 F.3d  at 453 . Two of these additional considerations warrant attention here as well.

In Henson, the Ninth Circuit raised "the importance of heeding the intent of the rulings of federal appellate courts." Henson Id. 943 F.3d  at 453 The Court also considers "how best to stay true to the Supreme Court's ruling" . Id.

Here, in this case Bladeroom changed the way in jury instructions in civil cases must be analyzed.  This new legal stance (in Bladeroom Id.) deserves to be applied retroactively in Walker's civil case, as even the U.S. Supreme Court holds,

"retroactivity is the default rule in civil cases. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 847, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring); *United States v. Sec. Indus. Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982)" Leavitt v. Siems, 330 P.3d 1, 5 (Nev. 2014)

This Court is compelled to, and empowered to set aside the prior decisions in this case because they are "clearly irreconcilable with the reasoning or theory of intervening higher authority" and they should be rejected "as having been effectively overruled" Miller v.. Gammie 335 F.3d 889, 893 (9th Cir  2003)  Here, the Bladeroom "effectively overruled" the decisions in this case.

The way to "best to stay true to the Supreme Court's ruling" Id. Is to heed the Circuit's interpretation of such in Bladeroom. Id. At 1244 ("It follows that *Clem*'s harmless error review adheres to *Shinseki* because it is a generalized framework that does not 'control[] future determinations.' 556 U.S. at 411, 129 S.Ct. 1696.")

In these circumstances, denying Plaintiff his requested relief would improperly directly contravene the Circuit Court's decision in Bladeroom as it interpreted U.S. Supreme Court authority See *Henson Id.* 943 F.3d at 454 Contravening the Supreme Court is not what the U.S. Supreme Court instructs lower federal courts not to do. This factor weighs in favor of granting Walker relief.

### V. CONCLUSION

"Ultimately, in evaluating the motion, the district court's overriding concern should be `the incessant command of the court's conscience that justice be done in light of all the facts.'" Phelps, 569 F.3d at 1124 (quoting Stokes, 475 F.3d at 736). The law was unsettled at the time of the Court's dismissal, the delay between the final judgment in this matter and the instant motion was minimal, and reconsideration would not undermine any reliance by the parties on the finality of the case. Plaintiff was very diligent in pressing the complained-of issue. In denying plaintiff's requested relief, the Court would frustrate the intentions of the Ninth Circuit and directly contravene that Court and the U.S. Supreme Court. It would go against new authority on presumptions as it comes to claimed jury instruction error which deprived Walker being heard, correctly, on the merits on that issue. See Henson 943 F.3d at 454 (recognizing the change denied the Plaintiff be    "heard on the merits."); *Phelps,* 569 F.3d at 1139. identified "that a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's ……. claims from ever being heard." *Id.* at 1140.

Weighing all the *Phelps* factors, correctly analyzed, it is clear that all the relevant circumstances in this case heavily tip the scale in favor of granting Rule 60(b)(6) relief. Together, the circumstances of this case are therefore sufficiently "extraordinary" that granting relief from judgment here "is appropriate to accomplish justice." *Phelps,* 569 F.3d at 1135 (quoting *Gonzalez,* 545 U.S. at 542, 125 S.Ct. 2641).

Plaintiff has demonstrated "extraordinary circumstances necessary to grant relief under Rule 60(b)(6)." Phelps, 569 F.3d at 1140; see also Henson 943 F.3d at 544. Accordingly, Plaintiff's Motion for Relief Under Rule 60(b) should be granted.

**WHEREFORE**, Plaintiff Walker prays for an Order setting aside the discrimination claim judgments, as well as all granting an assessments of attorney fees and costs, and order the parties to submit a status report from the Order as to how they intend to proceed.

Respectfully submitted,

/s/ TERRANCE WALKER

Signed, Terrance Walker

CERTIFICATE OF SERVICE

The undersigned certifies that the undersigned is over the age of 18 and that on July 15, 2022, that he personally served, via the District Court's electronic filing system (through District Court intermediaries), one copy of this filing to the parties listed below.

/s/ TERRANCE WALKER

signed, Terrance Walker

Copy to:

Morgan, Lewis & Bockius LLP www.morganlewis.com

Joe Hadecek , Kathryn T. McGuigan, Christopher Banks, Joel Purles

300 South Grand Avenue, Twenty-Second Floor | Los Angeles, CA 90071- 3132 Direct: +1.213.612.7390 | Main: +1.213.612.2500 | Fax: +1.213.612.2501 |

Email:christopher.banks@morganlewis.com,  kathryn.mcguigan@morganlewis.com