**Terrance Walker**
*Plaintiff, in propria persona*
212 Hillcrest Drive # 1
Reno, NV  89509
Tel: +1.775.971.8679
Email: walkerbillion@gmail.com

## IN THE UNITED STATES DISTRICT COURT FOR NEVADA

_____

Terrance Walker,                                :  **CIVIL CASE NO.** 3:15-CV-0556-

    Plaintiff,                                  :MOTION FOR RELIEF FROM THE RETALIATION
           vs.                               : CLAIM JUDGMENTS UNDER THE INHERENT
Charter Communications, et. al.           :  AUTHORITY OF THE COURT

    Defendant.                               :

_____

COMES NOW, Plaintniff Terrance Walker  ("Walker" or "Plaintiff"), moving for relief from the retaliation claim judgment due to fraud, stating:

**PLEASE TAKE NOTICE** that, as soon as is convenient to the Court so that Plaintiff may be heard before the District Court. , Plaintiff Terrance Walker ("Plaintiff")  will and hereby does move for an Order granting  relief from judgments that were entered in favor of Defendants on about Jan. 4, 2017  and affirmed on appeal  (and any attorney fees or costs, including those on appeals). This Motion is and will be based on constitutionally permissible inherent authority of the court, as well as Local Rules 7-2 and 7-3.

      This Motion is and will be based upon this Notice of Motion for Relief from Judgment, the accompanying exhibits attached thereto, the complete files and records in this action (and previous appeals) which should all be judicially noted, and upon such oral argument as may be made by counsel and/or the parties during the hearing on this Motion.

Dated  July 15, 2022

                                     Respectfully submitted,

                                 /s/ TERRANCE WALKER

                                 Signed, Terrance Walker

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................................................3

I. FACTUAL BACKGROUND.....................................................................................................4

II. PROCEDURAL BACKGROUND...........................................................................................7

III. MEMORANDUM OF LAW...................................................................................................8
    A.  Motions can be brought any time under the court's inherent authority to set aside judgments due to fraud on court

        1. A Circuit's recall denial serves as an instruction to file in District court

IV. POINTS AND AUTHORITIES...............................................................................................9
    A.  Walker is entitled to relief under the Court's inherent authority on the fraud as to the retaliation claim judgment
        1. Defendant conceded that Walker's motion can be brought after attorney withdraw
        2. This motion is properly before this Court and should be granted
        3. Charter's misrepresentations in retaliation judgment were critical and fraudulent
            a. Charter intentionally hid who spearheaded Walker's termination, initially claimed to be Perales
            b. Charter hid that Brenner did not Investigate or observe protocols
            c. Charter  hid the fact that Walker's recommended termination for April 23, 2014 phone calls was rejected by superiors -- contradicting previous claims that "they all agreed with" Perales
            d. The changed sequence of events and addition of Larson and Brenner(who had access to Walker's protected complaint) in the decision to terminate Walker were facts critical enough that it may have established pretext enough to change the outcome

                i. Belatedly revealed lies by Charter's supervisors on critical facts (e.g. Perales' rejected termination recommendation, Larson's insistence to terminate, Brenner telling her boss it was Walker's "decision" to quit) show Pretext.
                ii. Charter's failure to adhere to protocols and, belatedly reveled, involvement of       Brenner and Larson in the decision to terminate Walker (critical facts) now shows pretext

V. CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769 (9th Cir.2003)....................................8

Bostock v. Clayton  140 S.Ct. 1731 (2020)...............................................................................11

Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123 (1991)...............................................8

Coszalter v. City of Salem,320 F.3d 968 (9th Cir. 2003)............................................................13

DeWeerth v. Baldinger, 38 F.3d 1266 (2d Cir. 1994)...............................................................8,9

Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201 (9th Cir.2008)...............................................13

Earl v. Nielsen Media Research Inc., 658 F.3d 1108 (9th Cir. 2011)............................................12

Estate of Barabin v. AstenJohnson, Inc.,740 F.3d 457 (9th Cir. 2014)...........................................8

Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000).................................................13

Gracie v. Gracie, 217 F.3d 1060, 1067 (9th Cir. 2000)..............................................................8

Greisen v. Hanken 925 F.3d 1097 (9th Cir 2019).............................................................13,14,15

Johnson v. Lehman, 679 F.2d 918 (D.C.Cir.1982)...................................................................13

Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681 (7th Cir. 2000)....................................12

Lakeside-Scott v. Multnomah Cty, 556 F.3d 797 (9th Cir. 2009)............................................12,14

McLean v. Delhaize Am. Distribution, LLC, 2019 WL 4046546 (D. Me. Aug. 27, 2019)

Morris v. McCarthy, 825 F.3d 658 (D.C. Cir. 2016)................................................................12

Middleton v. McNeil, 541 U.S. 433, 124 S. Ct. 1830 (2004) (per curiam).....................................8

Noyes v. Kelly Servs., 488 F.3d 1163 (9th Cir. 2007)...............................................................12

Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005).......................................................................7

Poland v. Chertoff, 494 F.3d 1174 (9th Cir. 2007)...................................................................14

Porter v. Cal. Dept. of Corrs., 419 F.3d 885 (9th Cir. 2004).....................................................13

Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000)........................12

Shinseki v. Sanders, 556 U.S. 396 (2009)................................................................................8

Standard Oil Co. of Cal. v. United States, 429 U.S. 17, 18 (1976)................................................9

Walker v. Charter Commc'ns, Inc.,
        741 F. App'x 497, (Mem) (9th Cir. 2018)("Walker I")..............................5,6,7,10,11,12,14

Walker v. Charter Commc'ns, LLC, No. 20-16339,
        2022 WL 1439125 (9th Cir. May 6, 2022) ("Walker II").....................................................7,8

Widmar v. Sun Chemical Corp., 772 F.3d 457 (7th Cir. 2014).....................................................12

Wilkin v. Sunbeam Corp., 405 F.2d 165 (10th Cir. 1968)............................................................9

United States v. Stonehill, 660 F.3d 415 (9th Cir. 2011)......................................................8,10,14

**Rules**

Fed. R. Civ. P. 60(b)..........................................................................................................8.9

Fed. R. Civ. P. 60(d)(3).........................................................................................................8

## I. FACTUAL BACKGROUND

Plaintiff's view of the facts in the case was set forth in his Ninth Circuit Appellant brief (Ninth Circuit Case 20-16339, Opening Motion to Vacate Appeal Brief, Dkt 32) which references the relevant exhibits and Orders of this court so Walker will not belabor the point with repeating the facts.  As the record reflects (as more clearly and completely pointed out in Walker's briefs in this case  (EFC's 294, 267)(Also see Dkts 10, 32,  59, 60, Ninth Circuit Case no 20-16339) most of which have been submitted with a separate motion today. This case involved abhorrent Stereotypes (e.g. Walker was "dishonest") used in the workplace to justify Walker's termination, subsequently use of other stereotypes in the District Court (e.g. the use of "aggressive" Black man stereotypes), and blatant misrepresentations to hide Defendant's ("Charter's") discrimination and retaliation.

In sum, Charter used Walker's pre-trial litigation emails (Exhibits 526 and 527) he sent four years after his termination (the main subject of the trial) to levy claims that the emails displayed "aggressive" personality due to Walker characterizing himself as Emmett Till when juxtaposed to Defense Counsel Karen McGuigan. The District Court, relying on Defendant's *ahistorical* renditions of the Emmet Till tragedy, even missed Walker's point in equating himself with Emmett Till.  Yet, Defendant's ignorance of history and context was allowed to be infused into a barrage of conflicting and confusing jury instructions: Compare Walker Transcript at 114:15–18 (stating that "the plaintiff has raised the issue of character or propensity for assertive or nonassertive conduct, and therefore I have to let [them] rebut it"), with Mot. for Mistrial Transcript at 2:24–3:2 ("You talked, both in your opening statement and in questions to Mr. Walker about his normal disposition to act in a very calm manner, so he -- I had to let him open up that line of inquiry."), and Jury Instruction Transcript at 1:1–2 ("I probably used that term [(character)], and that was wrong."), and Jury Instruction Transcript at 4:20–24 ("You know the main merit issue, the factual issue that you're addressing, is whether or not he raised his voice or acted in an unprofessional manner. They do have to decide that factual issue as a predicate to determining whether there was sole or motivating factor."), and Jury Instruction Transcript at 5:4–7 ("But The only reason we let in 40[4] evidence in that regard is as to Mr. Walker's credibility. When he makes the statement, 'I'm always professional, I don't raise my voice,' I have to let the jury decide that question."), and Jury Instruction Transcript at 5:19–21 ("It's not --

it doesn't go to character, it just goes to credibility with respect to his testimony on his propensity for calm, professional demeanor."); see Walker Transcript at 168:14–17 ("This is a side issue, and the only issue here at all is Mr. Walker's discourse with opposing counsel. It doesn't bear on the actual merits of the case, **just on the question of character.**"); Jury Instruction Transcript at 9:7–12 (counsel for Charter arguing:

"And I want to be clear we did not offer the evidence to prove character, including

to prove character for truthfulness, which is what 608(b) applies to. This was

specifically to impeach his claims that he always communicates professionally, that

he does not communicate **aggressively** but only very assertively").

Yet, these character misrepresentations were *all* Defendant was able to do to shamelessly attempt to sway the all-white jury in its case.  See ECF Nos. 245–247; Decl. of  Attorney Brendan Begley ("Begley Decl.") at ¶ 2 (noting an all-white jury).  This was because Defendant had flip-flopped on the reasons for Walker's termination. Charter convinced a Circuit panel  in Walker v. Charter Commc'ns, Inc., 741 F. App'x 497, (Mem) (9th Cir. 2018)("Walker I") before Walker's discrimination case trial that Walker was terminated for

"..behavior included arguing with and hanging up on his direct supervisor, Norma Perales; raising his voice and openly questioning another supervisor on a conference call attended by numerous co-workers and supervisors; and telling Perales to 'kiss my butt's butt." (Ninth Circuit Case 20-16339, Dkt 42, pg 39 "Answer-Br")

However, at the 2019 trial, Charter revealed that Perales' April 23, 2014 phone call termination grounds were rejected. Charter Supervisor Chris Larson said "there was not enough there for even a termination." Larson Transcript at 10:17–25; Charter's HR person Mindi Brenner said there was not even enough for Walker's suspension. (Opening Brief, Dkt 32, pg 21, Ninth Circuit 20-16339; hereinafter "Opening-Retal-Br")

In fact, Chris Larson said specifically he was motivated to terminate Walker because he simply felt Walker, the best (but Black) sales guy in the office, was "dishonest" . Larson directed Perales to dig up dirt on Walker, even investigating  his sales:

"Q You didn't have any reason to believe that he was dishonest, did you?
A No.
****
**********
Q And that would indicate that you believe that Mr. Walker was dishonest, isn't that right?
A I guess that would be a strong way of putting it, but, yes, sir"
(Larson Transcript EFC 267-1, pg 195-196)
Larson had a chance to correct his statement and he did not:

"Q Okay. But how would you judge Mr. Walker's credibility?
A I wouldn't really have a basis......" 2-SER-144 at 20-21
Larson Transcript at 6:2–7:1.

Charter, on the 1st appeal (Walker I), Id. 741 F. App'x at 498 ., claimed its decision-makers "all agreed **with Perales's termination decision**.'(Charter's Appellate Answering brief in Walker I, Ninth Circuit case 17-15138, Dkt 25, pg 19)" . Charter fails to explain its new rendition which was revealed, later, at the Nov. 2019 discrimination trial.

In fact Charter, concedes its previous misrepresentations by stating "Perales, Larson, and Brennan decided to recommend Walker's termination" Answer-Br 21 Yet, Charter said nothing of "Larson, and Brennan " initiating the termination or it being *their* decision before, leaving out two potential retaliators. Nor did Charter ever set forth, before, that Brenner told her superiors that Walker quit, that Larson investigated Walker for "dishonesty", nor the whole story that it belatedly reveals now.  In fact, it now appears  "most — if not all — of the relevant decision-makers" Walker I, Id. 741 F. App'x at 498 were told a lie by Charter's HR Mindi Brenner that Walker resigned. [she told her bosses it was "Walker's stated decision to leave the company" 5-SER-877 at 5-25)].  Charter never disclosed that Brenner failed to substantiate its lie that Walker quit or to fully investigate Walker's termination (as was her job) Opening-Retal-Br at 65; 4-SER-790-792

Charter, thus, got away with deceiving the Ninth Circuit on the 1st appeal (Walker I) because, at trial, it mentioned nothing of Larson being motivated because he felt Walker was "dishonest" or Brenner's policy lapses and lies before.

Furthermore, for the first time after the retaliation claim affirmance (in Walker I), Charter claimed events happening April 4, 7-8, 2014   supported Walker's termination.  According to Brenner April 7, 2014 was really a non-event and which she described as Walker's "apology". 5-SER-861 The April 8, 2014 "event" was clearly about about "performance" 5-SER-861 which Larson disclaimed as a ground for Walker's termination:

"A I didn't want -- his sales performance didn't make my decision one way
or the another" 2-SER-142 at 21-22

This leaves us with the April 4, 2014 "event". Yet, The April 4, 2014 date  is omitted altogether from the corrective action report. 5-SER-826. This report was supposed to reference all conduct that was ground for termination. Opening-Retal-Br 22

6

"Review the reasons for the termination as referenced in the Corrective
Action Report. This explanation should focus on the performance deficiency,
policy violation, or misconduct that led to the decision to terminate" 4-SER-791

Without a sound rationale for Walker's termination at trial, Charter resorted to using a racist, dog-whistled display of evidence such as Walker's litigation emails 4 years removed from Walker's termination to levy shamelessly racist character evidence and deceived the Court in *Walker I*.

## II. PROCEDURAL BACKGROUND

On April, 19, 2016, Plaintiff-Appellant Terrance Walker ("Walker") filed the operative complaint asserting state and federal Title VII claims (See EFC 61, ¶ 39-40) against Defendant in the related U.S. Dist. Court of Nevada ("District Court") matter. Walker's claims of discrimination and retaliation were decided against him on summary judgment in the District Court.  Walker filed his 1st appeal(Walker I) in the United States Ninth Circuit Court of Appeals (the "Ninth Circuit").  That court reversed the ruling on the discrimination claims, but affirmed on the retaliation claims.

### A. RETALIATION CLAIM CASE AND APPEALS

After the affirmation of the summary judgment in Walker I and trial on the discrimination case, Walker initially brought a motion to vacate in the Ninth Circuit which was translated as a motion to recall. The motion for recall was decided without opinion on Nov. 9, 2020. (Ninth Circuit Case No. 17-15138, Dkt. 59).  Walker, then, brought a motion to vacate in the District Court (EFC 294), but it was stricken on Nov. 12, 2020  (EFC 295) and that Court, as well as the Ninth Circuit panel held that it was properly stricken due to local rules because Walker's lawyers had not withdrawn. Walker v. Charter Commc'ns, LLC, No. 20-16339, 2022 WL 1439125, at *1 (9th Cir. May 6, 2022). ("Walker II") Walker, now properly, brings this motion under the Court's inherent authority in the District Court after all of his lawyers have formally withdrawn in the District Court by motions this summer 2022.

### B. DISCRIMINATION CLAIM CASE AND APPEALS

After reversal of the summary judgment, Walker was represented by two attorneys at the discrimination trial in the District Court in Nov. 2019.

At trial, Walker strenuously objected to the admission of pre-litigation emails (Exhibits 526 and 527) of Walker to portray an "aggressive" character. Walker's attorneys even filed a motion for a new trial based upon the admission of such, and the related jury instructions.

Yet, the District Court claimed the harmless error jury trial analysis erected by the Ninth Circuit panel in Obrey v. Johnson, 400 F.3d 691, 701 (9th Cir. 2005)(presuming prejudice and requiring beneficiary of jury instruction error to show "more probable than not" harmless) and backed by the en banc case of Estate of Barabin v. AstenJohnson, Inc.,740 F.3d 457, 465-66 (9th Cir. 2014) were "subsequently" called into question the presumption of prejudice of jury instructions and declined to decide the jury trial error asserted under the "more probable than not" standard. (EFC 284 pg 4, n.3 "A subsequent Supreme Court case casts significant doubt on this presumption. In Shinseki v. Sanders, 556 U.S. 396 (2009), .....This Court follows Molina and likewise declines to determine this legal issue, since the Court finds a lack of prejudice even if there is a presumption in Plaintiff's favor.") by Shinseki v. Sanders 556 U.S. 396 (2009)

Walker appealed, and the Ninth Circuit panel made a pallid two-sentence finding that,

"The district court did not commit reversible error in its instructions to the jury regarding Exhibits 526 and 527. Taken as a whole and viewed in context, the instructions were not misleading and clearly conveyed the limited purpose for which the jury could consider that evidence. *See Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000); *cf. Middleton v. McNeil*, 541 U.S. 433, 437–38, 124 S. Ct. 1830, 1832–33, 158 L. Ed. 2d 701 (2004) (per curiam)." Walker v. Charter Commc'ns, LLC, No. 20-16339, 2022 WL 1439125, at *1 (9th Cir. May 6, 2022) ("Walker II")

**III. MEMORANDUM OF LAW**

**A. Motions can be brought any time under the court's inherent authority to set aside judgments due to fraud on court**

"[C]ourts have inherent equity power to vacate judgments obtained by fraud." United States v. Estate of Stonehill, 660 F.3d 415, 443 (9th Cir.2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ). Rule 60(d)(3) preserves this inherent power and recognizes that Rule 60 does not "limit a court's power to ... set aside a judgment for fraud on the court." Fed.R.Civ.P. 60(d)(3) ; accord Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir.2003) ("Federal Rule of Civil Procedure 60(b) preserves the district court's right to hear an independent action to set aside a judgment for fraud on the court."); Estate of Stonehill, 660 F.3d at 443 ("Rule 60(b), which governs relief from a judgment or order, provides no time limit on courts' power to set aside judgments based on a finding of fraud on the court.")

8

**1. A Circuit's recall denial serves as an instruction  to file in District court**

A denial of recall serves as a bases to conclude that Walker's motion to set aside due to fraud is properly before this court. See e.g DeWeerth v. Baldinger, 38 F.3d 1266, 1271 (2d Cir. 1994): "the recall denial cannot be presumed to serve as a substantive decision barring [him] from seeking further relief in the district court. Indeed, such a presumption would contravene the Supreme Court's instruction in Standard Oil that the trial court, as opposed to the court of appeals, `is in a much better position to pass upon the issues presented in a motion pursuant to Rule 60(b).'' Standard Oil 429 U.S. 17,19, 97 S.Ct. at 32 (1976) (quoting *Wilkin v. sunbeam Corp*., 405 F.2d 165, 166 (10th Cir. 1968)). Post-judgment applications to modify a judgment for a ground covered by Rule 60(b) frequently are better made in the district as opposed to the circuit court." Furthermore, "the district judge is not flouting the mandate by acting on the motion." Standard Oil Co. of Cal. v. United States, 429 U.S. 17, 18 (1976)

### IV. POINTS AND AUTHORITIES

Fraud on the court is established in regards to the retaliation claim judgment due to the Defendant's previous misleading statements and non-disclosure of the true sequences of events and basis for Walker's termination.  Relief under the Court's inherent authority in relation to the retaliation claim judgment is warranted.

**A. Walker is entitled to relief under the Court's inherent authority on the fraud as to the retaliation claim judgment**

**1. Defendant conceded that Walker's motion can be brought after his attorneys withdraw**

Defendant concedes that Walker' can file his rule 60(b) motion once he is no longer represented; "Walker could have refiled his Rule 60(b) motion once he was no longer represented" Answer-Br at 63  Walker's attorneys withdrew (See EFC's 310, 313)

**2. This motion is properly before this Court and should be granted**

Since the motion to recall based upon the fraud on the court was decided without opinion on Nov. 9, 2020. (Ninth Circuit Case No. 17-15138, Dkt. 59), this serves as a basis for this Court to decide

9

this issue of fraud on the court. To hold otherwise, would  DeWeerth v. Baldinger, 38 F.3d 1266, 1271 (2d Cir. 1994) "contravene the Supreme Court's instruction in Standard Oil that the trial court, as opposed to the court of appeals, `is in a much better position to pass upon the issues presented in a motion pursuant to Rule 60(b).'' quoting Standard Oil  429 U.S. at 19, 97 S.Ct. at 32

**3. Charter's misrepresentations in retaliation judgment were critical and fraudulent**
"[I]n nearly all fraud-on-the-court cases, the misrepresentations went to the central issue in the case" United States v. Stonehill, 660 F.3d 415, 452 (9th Cir. 2011) --- that is, Walker's termination grounds. This is just like past cases where the Ninth Circuit "vacated for fraud on the court when the litigants *intentionally misrepresented facts that were critical to the outcome* of the case" United States v. Stonehill, 660 F.3d 415, 452 (9th Cir. 2011)

**a. Charter intentionally hid who spearheaded Walker's termination, initially claimed to be Perales**
First off, Walker's "internal complaint" is referred to as his protected activity in his motion and brief. Opening-Retal-Br 60; Also see Walker I, Id. 741 F. App'x at 498 . which references "internal complaint" which was the subject of the retaliation.

In attempting to frame the events as far removed from that complaint, Charter claimed its decision-makers "all agreed with **Perales's** termination decision.'(Charter's Appellate Answering brief in Walker I, Ninth Circuit case 17-15138, Dkt 25, pg 19)" Opening-Retal-Br 25-26. Charter fails to explain contradictions of this rendition which were revealed, later, at the 2019 discrimination trial. They offer no excuse as to how this was not intentional.

Charter, instead, tries to clean up its previous misrepresentations by stating "Perales, **Larson, and Brennan** decided to recommend Walker's termination" Answer-Br 21 Yet, Charter said nothing of "Larson, and Brennan '' initiating the termination or it being *their* decision before.

They obviously reordered the events and left out the details so they can shield "Larson, and Brennan '' from any implications of knowing of Walker's protected activity since they and others, undoubtedly, may be implicated with knowledge of Walker's protected compliant and retaliation.

10

Nor did Charter ever set forth, before, that Brenner told her bosses that Walker quit (e.g. it was Walker's "decision to leave"), that Larson investigated Walker for "dishonesty", nor the whole story that it revealed *after* their favorable appeal affirming summary judgment in *Walker I*.

**b. Charter hid the fact that Brenner did not investigate or observe protocols**

Despite all of its prior representations on adhering to its lofty protocols, policies, and procedures, Charter never disclosed that Brenner failed to fully investigate Walker's termination (as was her job) Opening-Retail-Br 65; 4-SER-790-792 Though Brenner admitted it was her job (Brenner Transcript pg 9 ll. 4-18 ; pg 10 ll. 4-7; pg 13, ll. 2-5), she did not even talk to Walker of the investigations to prevent discrimination or unfairness—nor his co-worker.

"Q And did you speak to Mr. Walker before the decision was made to terminate his employment to find out why this zero sales call happened the way that it did? A No." (Brenner Transcript pg 9 ll. 15-18)
"Did you ever speak to Mr. Wagoner about this so-called hearsay e-mail? A I did not, no." (Brenner Transcript pg 11 ll. 16-18)

**c. Charter's hid the fact that Walker's recommended termination for April 23, 2014 phone calls was rejected by superiors  -- contradicting previous claims that "they all agreed with" Perales**

At the trial, Charter revealed that Perales' story about Walker being terminated for April 23, 2014 phone calls was rejected by Charter superiors. Charter Supervisor Chris Larson said "there was not enough there for even a termination." Larson Transcript at 10:17–25; Charter's HR person Mindi Brenner said there was not even enough for Walker's suspension. (Opening Brief, Dkt 32, pg 21, Ninth Circuit 20-16339; hereinafter "Opening-Retal-Br") In fact, in the brief in the first appeal, Charter pretended as if the termination was never rejected. It mentioned nothing of this rejection and acted as if Perales simply made the recommendation to terminate Walker and it went through in four days and "they all agreed" with her (See Ninth Circuit case no. 17-15138, Answering Brief in Walker I, Dkt 25, pg 19-20)

**d. The changed sequence of events and addition of Larson and Brenner(who had access to Walker's protected complaint) in the delayed decision to terminate Walker were facts critical enough that it may have established pretext enough to change the outcome**

Given the changed sequence of events belatedly revealed as well as the withheld revelations about Brenner and Larson's role in Walker's termination (e.g. Larson's demands and Brenner's lie that it was Walker's choice to quit) , it is improbable that the,  "relevant decision-

makers recommended or approved Walker's termination before they learned of his complaint to the NERC." Walker I, Id. 741 F. App'x at 498

Thus, the determination that "Walker cannot establish a causal link between his protected activities and Charter's termination" Walker I, Id. 741 F. App'x at 498 . Is now dubious.

The falsehoods now revealed, alone, establish enough pretext to provide the necessary elements to avoid summary judgment. These withheld revelations were critical to the outcome.

In the context of the retaliation claims, "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." Bostock v. Clayton County, 140 S. Ct. 1731, 1739 (2020). To satisfy this "traditional" standard, Walker need only show that his protected activity "was one but-for cause of that decision." Id. As shown by the several segregable, but previously hidden, adverse employment actions, there are several possible "but-for" causes now that we have the whole story. There is also clear and convincing evidence the previous result of the summary judgment on Walker's retaliation claim, in *Walker I,* may have been different.

Nonetheless, as the Supreme Court has explained, "[p]roof that the defendant's explanation is unworthy of credence" can constitute "quite persuasive" evidence of unlawful conduct. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In that same vein, "[P]retext means deceit to cover one's tracks." Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000). It's also when a Defendant's supposedly legitimate justification is "shown to be 'a lie.'" Widmar v. Sun Chemical Corp., 772 F.3d 457, 464 (7th Cir. 2014)

As the Ninth Circuit has repeatedly stated, "plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" Earl v. Nielsen Media ResearchvInc., 658 F.3d 1108, 1113 (9th Cir. 2011) (quoting *Noyes v. Kelly Servs*., 488vF.3d 1163,, 1170). Walker's burden would have been made easier to prove pretext had Charter not schemed to hide key facts. In fact, the lies now revealed present an even more compelling case of retaliation and pretext "critical to the outcome" because they show that Charter's previous explanation of Walker's termination are "unworthy of credence"

**i. Belatedly revealed lies by Charter's supervisors on critical facts (e.g. Perales' rejected termination recommendation, Larson's insistence to terminate, Brenner telling her boss it was Walker's "decision" to leave) show pretext**

The withheld facts surrounding supervisors Larson (e.g. insisting to Perales to terminate and investigate Walker), Brenner (telling her boss it was Walker's "decision" to quit) were critical to the outcome because it's vastly different than Charter's previous rendition which solely attributed the "decision" to "Perales".   None of these hidden acts involving "Charter's policies and procedures" (Charter's Answering brief in Walker I, 17-15138, Dkt 25, pg 19) were put into any contemporaneous records pursuant to *their* policy 4-SER-791 As such these hidden facts, and absence of facts previously asserted (e.g. that everyone relied on Perales' decision), may have changed the outcome on the summary judgment.   Walker could have easily established pretext to survive summary judgment given these proven lies and omissions by HR and supervisors. See, e.g., Morris v. McCarthy, 825 F.3d 658, 669-72 (D.C. Cir. 2016) (stating that this element was shown by a supervisor's discriminatory comments and false report); McLean v. Delhaize Am. Distribution, LLC, 2019 WL 4046546, at *6 (D. Me. Aug. 27, 2019) (stating that retaliatory intent was shown by a supervisor's lie to superiors shortly after the plaintiff engaged in protected activity); Coszalter v. City of Salem,320 F.3d 968, 977 (9th Cir. 2003)("employer's proffered explanations for the adverse employment actions were false and pre-textual."); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000) (noting that causation may be shown if "the employer gave inconsistent reasons for terminating the employee").

### ii. Charter's failure to adhere to protocols and, belatedly reveled, involvement of Brenner and Larson in the decision to terminate Walker (critical facts) now shows pretext

In pursuing the reckless termination, Brenner simply wrote an email saying "we've got your back" (Brenner Transcript pg 12, ll. 9-11) to Perales after collaborating with her higher-ups just prior to terminating Walker:

17 Q Okay. Is that supposed to be done with HR's
18 oversight?
19 MS. MCGUIGAN: Again, vague and ambiguous.
20 Overbroad. You can answer if you understand the
21 question.
22 THE WITNESS: In a -- *any type of investigation*
23 *of that nature will be collaborativ*e."
 ( Sesito transcript pg 166, June 1, 2016)

Though Brenner intimated she had blind faith in Perales and Larson, this is no excuse for not doing her job and investigating, especially since she added another juicy (and withheld lie) that it "Walker's stated decision to leave the company" (Brenner Transcript, pg 425 ll.20-21) See e.g.. Porter v. Cal. Dept. of Corrs., 419 F.3d 885, 896 (9th Cir. 2004)( "deviations from the CDC's

13

protocol support an inference of pretext for purposes of Porter's quid pro quo claim, so too do these irregularities in the process permit an inference of pretext with regard to the retaliation claim." ); Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1214 (9th Cir.2008); Johnson v. Lehman, 679 F.2d 918, 922 (D.C.Cir.1982) (finding employer's departure from internal procedures probative evidence of pretext)

Furthermore, given that Charter *now revealed* that Larson and Brenner colluded with Perales in the termination decision of Walker *and* that Perales' recommended termination ground was *actually* rejected, it's clear that all of these parties were free to share Walker's protected activity prior to the final act of termination, changing "critical facts" in this case. What Charter said about Perales investigating to finalize Walker's termination and supposed "recommendation" the "all agreed" upon  (Ninth Circuit Case 17-15138, Dkt 25, Answer Brief in Walker I, pg 19) is "not the whole story" Greisen v. Hanken, 925 F.3d 1097, 1117 (9th Cir. 2019) ". There were "some other things" motivating their decision Id.

Hence, this case is not unlike , Greisen v. Hanken 925 F.3d 1097, 1117 (9th Cir 2019), "Otterman did not assert that he made any effort to shield his termination decision from the influence of Hanken's actions. Cf. Poland, 494 F.3d at 1183. And there is no contemporaneous evidence that Otterman's decision was based solely on the investigation results. On the contrary, rather than identifying a particular justification for the dismissal — like the employer did in Lakeside-Scott, 556 F.3d at 809 — he concluded "that the best situation for the City was to exercise the, quote, `no-cause,' unquote, clause"

*******

"a reasonable jury could have found that Hanken's actions were a causal factor in Otterman's decision."Greisen v. Hanken 925 F.3d 1097, 1118 (9th Cir 2019)

Similarly, here, there was no effort to shield Walkers protected activity from the actions of the subjects who were privy to his internal complaint.   There was "no contemporaneous evidence that [Charter's ]decision was based solely on the investigation results" Greisen Id.  Charter also ambiguously did not "identify[] a particular justification for the dismissal" Greisen Id., deeming it "unprofessional conduct". (Walker Transcript at 154:20–22. EFC 267-1, pgs 91-92, 154) In fact, nothing of Charter's stated dates (as stated by Brenner) of April 4, 7-8, 2014 appears in any of Walker's termination documents per policy. 4-SER-791; 5-SER-861.  Similarly here, "a

reasonable jury could have found that [Charter's] actions were a causal factor in [Walker] decision." Greisen v. Hanken 925 F.3d 1097, 1118 (9th Cir 2019) (alterations in brackets)

Charter's aim was clearly "to prevent the judicial process from functioning "in the usual manner." United States v. Stonehill, 660 F.3d 415, 445 (9th Cir. 2011). It's "perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself." United States v. Stonehill, 660 F.3d 415, 445 (9th Cir. 2011) As "in nearly all fraud-on-the-court cases, the misrepresentations went to the central issue in the case" United States v. Stonehill, 660 F.3d 415, 452 (9th Cir. 2011) In this case, the central facts were the facts surrounding Walker's termination and since the initial story has been shown to be intentionally false, Walker has met his burden. It should be noted that Charter has not explained why three of its key witnesses have essentially changed their story since *Walker I*. Charter hasn't shown it was any mistake or accident.

Had the Walker and the Ninth Circuit known the withheld facts above, it is quite clear that the finding that "Walker cannot establish a causal link between his protected activities and Charter's termination" Walker I, Id. 741 F. App'x at 498  may not have be made.  Rather, Walker may have survived summary judgment with these new nearly revealed facts (and lies) which reveal that "a reasonable jury *could* have found that [Charter's] actions were a causal factor in [Walker] decision."Greisen v. Hanken 925 F.3d 1097, 1118 (9th Cir 2019) (alterations in brackets)

## V. CONCLUSION

The judgment involving the retaliation claims should be set aside as well due to fraud.

The Court should vacate the judgment on Walker's claims, as well as all assessments of attorney fees and costs, and order the parties to submit a status report from the Order as to how they intend to proceed.

**WHEREFORE**, Plaintiff Walker prays for an Order vacating the retaliation claim judgments of Walker's claims , as well as all granting an assessments of attorney fees and costs, and order the parties to submit a status report from the Order as to how they intend to proceed.

Respectfully submitted,

/s/ TERRANCE WALKER

Signed, Terrance Walker

CERTIFICATE OF SERVICE

The undersigned certifies that the undersigned is over the age of 18 and that on July 15, 2022, that he personally served, via the District Court's electronic filing system (through District Court intermediaries), one copy of this filing to the parties listed below.
/s/ TERRANCE WALKER
signed, Terrance Walker
Copy to:
Morgan, Lewis & Bockius LLP www.morganlewis.com
Joe Hadecek , Kathryn T. McGuigan, Christopher Banks, Joel Purles
300 South Grand Avenue, Twenty-Second Floor | Los Angeles, CA 90071- 3132 Direct: +1.213.612.7390 | Main: +1.213.612.2500 | Fax: +1.213.612.2501 |
Email:christopher.banks@morganlewis.com, kathryn.mcguigan@morganlewis.com

16