**Terrance Walker**
518 Duong 3/2 Dist 10
Ho Chi Minh City Vietnam
Tel: (775) 971-8679
**Plaintiff, in propria persona**
**walkerbillion@gmail.com**

**UNITED STATES DISTRICT COURT FOR NEVADA**

|  |  |
|---|---|
| **Terrance WALKER**, Plaintiff, v. **Charter Communications Inc, et. Al.** Defendants. | **CV 3:15-cv-00556-RCJ-CLB** **PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENTS PURSUANT TO FED. R. CIV. P. 60(b)(6) UNDER the new intervening standard of *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026)** |

**COMES NOW** Plaintiff Terrance Walker, Plaintiff, moving for relief under F.R.Civ.P. 60(b)(6) and the Court's inherent power, stating:

**I. INTRODUCTION & NATURE OF RELIEF SOUGHT**

Plaintiff Terrance Walker respectfully moves this Court for relief from the final order denying his motions for relief from judgments under Federal Rules of Civil Procedure 60(b)(6) and 60(d)(3). This motion addresses two distinct, profound disruptions of the judicial process:

First, the District Court never cited intervening authority of *BladeRoom Group Ltd. v. Emerson Elec. Co.*, **20 F.4th 1231 (9th Cir. 2021)** in Walker's case.   Under the rule established in Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003) (en banc), a District Court or three-judge panel is bound by

1

prior circuit precedent unless the reasoning of an intervening higher authority is clearly irreconcilable with that precedent.

The trial court perfunctorily sidestepped its structural obligation to presume prejudice and mandate a showing of harmlessness from the beneficiary of the error. Plaintiff brings this issue forward under **Fed. R. Civ. P. 60(b)(6)** and the **"Prescient Litigant" doctrine** established under ***Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026)** in a reasonable time[1] since Ratha was established less than six months ago and it gives a prescient litigant like Walker immediate authority to pursue relief.

 Plaintiff accurately mapped out, preserved, and advanced the precise legal standard subsequently solidified by *BladeRoom (even citing **Bladeroom** in his 9th circuit brief   ECF 3, 22-16467)*, completely excusing any omission of a formal petition for certiorari.

## II. CHRONOLOGICAL PROCEDURAL HISTORY AND BACKGROUND

**A. The Discrimination Trial, Post-Trial Motions, and *Shinseki* Error**

- On April 19, 2016, Plaintiff filed the operative complaint asserting Title VII employment discrimination and retaliation claims against Defendants arising from his termination.

- Following a split procedural history, Plaintiff's discrimination claims proceeded to an all-white civil jury trial in November 2019.

---

[1] Plaintiff's filing made within months of the dispositive ***Ratha*** ruling is, indisputably, filed in reasonable time (Rule 60(c)(l)) since it is within 1 year of that new intervening case. See Coney Island Auto Parts Unlimited. Inc. V. Burton, 607 U.S. (2026)

2

- At trial, Defendants introduced pre-litigation emails (Exhibits 526 and 527) sent by Plaintiff four years post-termination. Defendants utilized these documents to inject highly prejudicial, ahistorical racial stereotypes portraying Plaintiff as an "aggressive" Black man.

- Plaintiff's counsel filed a timely Motion for a New Trial (ECF No. 267), aggressively asserting that the insertion of character stereotypes via conflicting jury instructions constituted a structural error carrying a mandatory presumption of prejudice under settled Ninth Circuit authority (*Obrey v. Johnson* and *Clem v. Lomeli*).

- On November 5, 2020, the District Court explicitly rejected this standard, issuing an order (ECF No. 284) claiming that the Supreme Court's decision in *Shinseki v. Sanders*, 556 U.S. 396 (2009) cast "significant doubt" on the presumption of prejudice in civil cases. The District Court followed *Molina* and declined to apply the *Obrey/Clem* harmlessness analysis.

**B. The Appellate Timeline and the *BladeRoom* Disregard**

- Plaintiff preserved this exact structural objection on appeal, filing his formal Opening Brief in *Walker II* (Ninth Circuit Case No. 20-16339) on November 19, 2020. Plaintiff's brief explicitly argued that civil jury instruction errors mandate a presumption of prejudice that must be rebutted by the beneficiary showing it is "more probable than not" harmless.

- On August 30, 2021, while Plaintiff's appeal was pending, the Ninth Circuit published ***BladeRoom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021)**. *BladeRoom* explicitly rejected the application of *Shinseki* to civil jury instruction errors and vindicated Plaintiff's exact legal position.

- On May 6, 2022, the *Walker II* panel issued a perfunctory, two-sentence order affirming the judgment. The panel completely omitted any mention of *BladeRoom* or the mandatory presumption of prejudice, choosing instead to execute a superficial review.

3

- Plaintiff subsequently moved for relief under Rule 60(b) in the District Court (ECF No. 314). On perfunctory review, the District Court issued a distorting denial (ECF No. 320), falsely reframing Plaintiff's structural jury instruction objections as mere "evidentiary errors" to bypass the *BladeRoom* mandate.

## C. The Uncovering of Retaliation Summary Judgment Fraud

- Concurrently, the November 2019 discrimination trial uncovered a deliberate fraud executed by Defendants to secure summary judgment on Plaintiff's retaliation claim (originally affirmed in *Walker I*).

- To obtain summary judgment, Defendants represented to the District Court and the Ninth Circuit that its corporate decision-makers "all agreed" with a singular termination recommendation issued by supervisor Norma Perales regarding an April 23, 2014 phone call.

- Sworn testimony at the 2019 trial revealed this narrative was an absolute fabrication. Supervisor Chris Larson admitted under oath that Perales' original recommendation was explicitly rejected because "there was not enough there for even a termination".

- Trial revelations established that Chris Larson separately spearheaded an unrecorded directive to terminate Plaintiff because he deemed him "dishonest," invoking a historical Black stereotype to target the office's top salesman.

- HR Manager Mindi Brenner admitted under oath that she failed to observe corporate investigation protocols, never spoke to Plaintiff or his co-workers regarding the underlying incidents, and actively concocted a fraudulent narrative to executive superiors stating it was "Walker's stated decision to leave the company" to force the termination through.

- Plaintiff brought a motion for relief from judgment due to fraud (ECF No. 315). The District Court perfunctorily denied the motion (ECF No. 320) by completely distorting the argument,

4

misstating that the claim was based on an un-notified "NERC complaint" timeline rather than evaluating the newly revealed lies establishing pretext.

## III. LEGAL ARGUMENT

**A. Plaintiff Qualifies as a "Prescient Litigant" Under *Ratha* for bringing up *Bladeroom***

The intervening change of law in the case of ***Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026)** completely neutralizes the Defenses position and commands Plaintiff's relief under Bladeroom.

Under the *Ratha* doctrine, to preserve an intervening change of law the moving party must qualify as a **"Prescient Litigant."** To establish prescience under *Ratha*, a litigant must demonstrate that they unceasingly, clearly, and accurately identified, preserved, and pushed for the correct legal framework before an intervening higher authority formally solidified it.

Plaintiff matches the *Ratha* criteria across all analytical dimensions:

1. **The Nature of the Intervening Law:** In *Phelps v. Alameida*, 569 F.3d 1120, 1136 (9th Cir. 2009), this Circuit held that a change in law favoring relief is prominent when the underlying rule was "decidedly unsettled" at the time of the initial proceedings. As the District Court explicitly noted in its original footnote, the standard governing civil jury instructions post-*Shinseki* was treated as highly unsettled across various panels. Plaintiff consistently cut through this confusion, pushing the exact standard that *BladeRoom* later formalized.

2. **Unparalleled Diligence:** Plaintiff exhibited continuous diligence in advancing the correct legal stance. He forcefully detailed the *Obrey/Clem* presumption of prejudice in his trial-level motion for a new trial (ECF No. 267) and locked the exact framework into his appellate briefing ten months prior to the publication of *BladeRoom*.

3. **No Disruption of True Finality or Reliance Interests:** Reopening this judgment does not disturb any past, executed effects of a property or custody transfer. It simply requires the parties to pick up where they left off to ensure a trial is conducted under a lawful standard.

Under *BladeRoom*, the burden sat squarely **on Defendants** to demonstrate that their racially charged "aggressive personality" jury instructions were "more likely than not" harmless. Defendants completely failed to present any points or authorities on this standard in the District Court or on appeal, effectively conceding the point. Because Plaintiff presciently charted the correct legal path while the lower courts committed clear errors of law, the path to Walker's relief under *Bladeroom* is secured under *Ratha*.    The District Court is required to apply both precedents under the rule established in <u>Miller v. Gammie</u>, 335 F.3d 889 (9th Cir. 2003) (en banc).

**B. The Law of the Case Doctrine Completely Bends to Intervening Controlling Authority**

Defendants may argue that the District Court cannot pass on an issue that the Ninth Circuit panel already affirmed and skipped over in *Walker II*. This misstates the boundaries of the Law of the Case doctrine.

As established in *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006) and preserved on page 30 of Plaintiff's opening brief (ECF 3, 9th Circuit case 22-16467), a rigid adherence to the law of the case is wholly inapplicable **"where intervening controlling authority makes reconsideration appropriate."**

The appellate timeline reveals a profound structural failure. *BladeRoom* was published in August 2021, instantly becoming the controlling law of this Circuit while Plaintiff's appeal was pending. The *Walker II* panel's May 2022 order completely ignored *BladeRoom*. When an appellate panel flouts its

own published, controlling precedent, it commits a fundamental error of law. A District Court is not "flouting the mandate" by using its Rule 60(b)(6) authority to correct a manifest miscarriage of justice when an appellate court has skipped over controlling higher authority.

Applying *Ratha*, *Miller* and *Bladeroom* to this case, the jury trial judgment cannot stand and must be set aside.

**IV. CONCLUSION**

For the reasons documented herein, the incessant command of the Court's conscience requires that Plaintiff's motions be granted, the prior distorted orders be reversed, and the judgments be set aside to allow proper adjudication on the true merits.

**WHEREFORE**, Plaintiff prays for an order accordingly.

Dated: June 15, 2026

Respectfully submitted,

*/s/ Terrance Walker*

*Terrance Walker*