**Terrance Walker**
518 Duong 3/2 Dist 10
Ho Chi Minh City Vietnam
Tel: (775) 971-8679
**Plaintiff, in propria persona**
walkerbillion@gmail.com

**UNITED STATES DISTRICT COURT FOR NEVADA**

|  |  |
|---|---|
| Terrance WALKER,<br>　　　　Plaintiff,<br><br>　　v.<br><br>Charter Communications Inc, et. Al.<br>　　　　Defendants. | CV 3:15-cv-00556-RCJ-CLB<br><br>PLAINTIFF'S REPLY TO ECF 334 RE: MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(6) UNDER the new intervening standard of *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (ECF 332) & REQUEST TO APPEAR REMOTE |

**COMES NOW** Plaintiff Terrance Walker, under Federal Rules 60(b)(6), 60(d)(3), and the Court's inherent authority filing his Reply to the Opposition filing (ECF. No. 334) of Defendants. Pursuant to **Federal Rule of Civil Procedure 1**, which mandates the just, speedy, and inexpensive determination of every action, and **Local Rule LR 7-1(c)** of the United States District Court for the District of Nevada, Plaintiff respectfully requests that if oral argument is granted or required by the Court, the hearing be set via remote video conference link (e.g., Zoom for Government). Good cause exists for a remote appearance because Plaintiff resides in Ho Chi Minh City, Vietnam. Requiring in-person appearance for a non-evidentiary motion would introduce prohibitive international travel friction, extreme expense, and severe logistical delays, running directly counter to the core directives of **FRCP 1**. Accommodating a remote appearance will fully preserve the rights of all parties while ensuring efficient judicial administration.

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

A. A Summary Administrative Disposition Under *Hooton* Cannot Legally Override

 a Court's Structural Obligation to Apply Published Circuit Precedent...................................... 2

B. Defendants Are Equitably Estopped from Invoking Finality Because They

Actively Misled the Appellate Court Resulting in a Due Process Denial,

Demanding Correction under this Court's Inherent Authority…........................................... 4

C. Plaintiff Satisfies the "Reasonable Time" Mandate of Rule 60(c)(1)

Measured from the Maturation of the Right ........................................................................ 7

D. The *Harper* Retroactivity Mandate Deprives This Court of Equitable

Discretion to Withhold the *BladeRoom* Standard ............................................................. 8

E. Plaintiff's Diligence Explicitly Overcomes Finality under the *Ratha III* Precedent................ 9

F. Defendants Ignore Ratha III's Controlling Procedural Mandate............................................11

G. All Traditional Rule 60(b)(6) Equity Factors Are Overwhelmingly Satisfied………….......... 13

H. Defendants' History of Non-Responsive, Boilerplate Filings Operates as a Total
Procedural Concession and Waiver Under Local Rule 7-2(d), circuit, and
Supreme Court precedent………………………………………………………..................................... 14

II. CONCLUSION ................................................................................................................ 14

**TABLE OF AUTHORITIES**

**Federal Cases**

- *BladeRoom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021) ...............................................................................2, 4, 5, 8, 9, 10, 11, 12, 13 14

- *Buck v. Davis*, 580 U.S. 100 (2017) ......................................................................13

- *Bynoe v. Baca*, 966 F.3d 972 (9th Cir. 2020) ............................................7, 8, 13, 14

- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ..............................................6, 7

- *Clifton v. Attorney Gen. of State of Cal.*, 997 F.2d 660 (9th Cir. 1993) ...................4

- *Dixon v. Commissioner*, 316 F.3d 1041 (9th Cir. 2003) ...........................................6

- *Fierro v. Smith*, 39 F.4th 640 (9th Cir. 2022) .........................................................10

- *Gonzalez v. Crosby*, 545 U.S. 524 (2005) .............................................................. 8

- *Hamilton v. Newland*, 374 F.3d 822 (9th Cir. 2004) ................................................. 8

- *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993) ………………………………………………………………...…………....2, 8, 9, 10, 13, 14

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) .......................7

- *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019) ...............13,14

- *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc) .......................................9

- *New Hampshire v. Maine*, 532 U.S. 742 (2001) .......................................................5

- *Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) ......................................................9

- *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009) .......................................8,13,14

- *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) (*Ratha II*) ..........7, 8

- *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (en banc) (*Ratha III*) ...............................................................Cover, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

- *Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024) ............................................9

- *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976) ............................... 4

- *United States v. Hooton*, 693 F.2d 857 (9th Cir. 1982) ...................................2, 3, 4, 8, 9, 10

- *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ....................................................... 14

- *United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990) ............................................................... 14

- *Walker v. Charter Communs., Inc.*, ("Walker I")   2018 U.S. App. LEXIS 30842 (9th Cir. Oct. 31, 2018) ........................................................................................................6

- *Walker v. Charter Commc'ns, LLC* ("Walker II"), No. 20-16339, 20-17219 2022 WL 1439125, (9th Cir. May 6, 2022) ........................................................................5

- *Walker v. Charter Commc'ns, LLC* ("Walker III"), No. 22-16467, 2023 WL 2631355, (9th Cir. Feb. 27, 2023) and 2023 WL 4311636 (9th Cir. June 30, 2023) ............2, 3, 4, 5, 7, 8

**Federal Statutes & Rules**

- Federal Rule of Civil Procedure 60(b) ..................................................................4, 5, 10, 13,14

- Federal Rule of Civil Procedure 60(b)(1)-(3) ............................................................................ 7

- Federal Rule of Civil Procedure 60(b)(6) ...........................Cover, 4, 7, 8, 9, 10, 11, 12, 13, 14

- Federal Rule of Civil Procedure 60(c)(1) ...................................................................................7

- Federal Rule of Civil Procedure 60(d)(3) ................................................................................6,7

- Federal Rule of Evidence 403 ................................................................................................... 1

- Federal Rule of Evidence 412 ................................................................................................... 1

**Local Rules**

- District of Nevada Local Rule LR 7-2(d) ........................................................................... 13, 14

**Other Authorities**

- Civil Rights Attorney's Fees Awards Act of 1976 — Remedies — 42 U.S.C. § 1983 — Lackey v. Stinnie, 139 Harv. L. Rev. 366 (2025).................................................................. 11

- "It Ain't Over 'Til It's Over: The En Banc Ninth Circuit Simplifies Its Retroactivity Analysis And Issues Rare Rule 60(b) Reversal," Morrison Foerster Appellate Alert (2026), available at https://appeals.mofo.com/topics/it-ain-t-over-til-it-s-over-the- en-banc-ninth-circuit-simplifies-its-retroactivity-analysis-and- issues-rare-rule-60-b-reversal (June 30, 2026).....12

- "Ninth Circuit Revives Human Trafficking Claims Against Seafood Importer After Congress Clarifies Civil Liability," Joe Rose Law Practitioner Blog (May 2026), available at

iv

https://joeroselaw.com/2026/05/ninth-circuit-revives-human- trafficking-claims-against-seafood-importer-after-congress- clarifies-civil-liability/ (June 30, 2026)............................ 12

**I. INTRODUCTION**

The bedrock of federal jurisprudence rests upon a singular, non-discretionary constitutional guarantee: the fundamental right to be heard. Due process is not a flexible administrative courtesy; it is an absolute mandate commanding that a litigant be afforded a meaningful opportunity to present their case before a court can permanently strip them of their rights. Defendants, sophisticated corporate litigants, ask this Court in their opposition to treat the structural corruption of Plaintiff's trial record as a closed chapter, relying on an administrative finality that was manufactured by them to deny Plaintiff that very right to be heard—exhibiting a corporate calculus that apparently treats due process as a luxury reserved exclusively for multi-million-dollar enterprises, candor something that only *pro se* litigants are held to, and following correct legal standards as an option. They are wrong.

In the midst of a federal trial concerning employment discrimination against a Black man, Defendants successfully weaponized a highly prejudicial, racially charged caricature—inducing the all-white jury to evaluate pre-trial litigation emails, years removed from the employment timeline, as evidence of an "aggressive Black man" stereotype. See Pl.'s Mot. for New Trial, ECF No. 267, pgs. 7-13. This tactic is the exact analytical equivalent of attempting to argue in a sexual assault prosecution that a victim's historical conduct somehow implies consent or unworthiness of protection in front of an all-male jury, a distortion explicitly barred under the foundational policy of Federal Rule of Evidence 412. In a telling demonstration of this profound structural asymmetry, Defendants' own post-termination litigation correspondence remained strictly off-limits—to the point that they successfully sought and obtained its total destruction (ECF. Nos. 301, 302)—while Plaintiff's parallel litigation emails were weaponized to exploit corrupted jury instructions and tilt the playing field.

Defendants sought to insulate this profound injustice by mischaracterizing it as a routine dispute over evidentiary admissibility. It was not. While the initial introduction of the emails violated Federal Rule of Evidence 403, the constitutional breakdown occurred when the Court issued erroneous, standard-displacing civil jury instructions that structurally dictated how the jury measured liability. The permanent record documents that this Court explicitly instructed the jury that it could consider post-termination litigation correspondence "as to [Mr. Walker's] truthfulness or his ability to

perceive" and "with respect to his testimony on his propensity for calm, professional demeanor." (see Pl.'s Mot. for New Trial, ECF No. 267, pgs. 18–20; see also Appellant's Opening Brief, 9th Cir. Case No. 20-16339, ECF. No. 10, pgs. 58–62; Appellant's Opening Brief, 9th Cir. Case No. 22-16467[1], ECF. No 3, pgs. 30–58).

By formally instructing an all-white jury that they were legally authorized to measure Plaintiff's core credibility and 'propensity' based on litigation emails sent four years after his termination, the court issued a standard-displacing civil jury instruction that unseated the mandatory presumption of prejudice and permanently corrupted the trial's structural integrity.

The structural integrity of federal trials does not permit corporate defendants to escape the non-discretionary retroactivity mandates of *BladeRoom* and *Harper* by hiding behind a procedural milestone where the merits were never allowed to be heard. Where a final trial judgment is built upon jury instructions that completely unseated the mandatory presumption of prejudice, and where subsequent appellate review was derailed by high-speed administrative shortcuts that leapfrogged past a filed opening brief exposing this and fraud, the Constitution forbids courts from treating that judgment as sacrosanct.    Finality cannot be used as an administrative shield to permanently insulate a verdict built upon a structural miscarriage of justice and a total denial of the right to be heard.

**A. A Summary Administrative Disposition Under *Hooton* Cannot Legally Override a Court's Structural Obligation to Apply Published Circuit Precedent**

Defendants' continued reliance on the out-of-context procedural fragments and stray assertions contained, *inter alia,* inside their 2023 motion for summary affirmance is entirely misplaced; those boilerplate assertions and administrative shortcuts are legally irrelevant to a supreme, non-discretionary constitutional right that mathematically matured under the 2026 en banc mandate of *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) ("*Ratha III*").

Defendants' opposition also rests on the fiction that the three-judge panel's February 27, 2023 Order tackled and settled these questions. This argument is legally bankrupt. Defendants' narrative

---

[1]  *Walker v. Charter Commc'ns, LLC* ("Walker III"), No. 22-16467, 2023 WL 2631355 (9th Cir. Feb. 27, 2023) and 2023 WL 4311636 (9th Cir. June 30, 2023)

selectively recalls the trial record and references the denial of prior post-judgment filings without relevance or precision, asserting a right to summary finality because Plaintiff pursued appellate review while post-trial challenges remained structurally unresolved. Specifically, Defendants point to the fact that Plaintiff filed his appeal on September 23, 2022, without waiting for a formal order on his outstanding post-trial motion. (see *Walker III*; ECF. No. 324; see also ECF. No. 5 [Motion for Summary Affirmance]).    The appellate panel subsequently invoked *United States v. Hooton*, 693 F.2d 857 (9th Cir. 1982)—a strict administrative mechanism utilized exclusively to clear cases from the docket when an issue is deemed too insubstantial to warrant standard oral argument or exhaustive written text. By entertaining and granting a motion for summary affirmance while Plaintiff's comprehensive, fully finalized Opening Brief (see *Walker III,* ECF. No. 3) was already actively pending on the docket, the court allowed an untethered administrative motion to completely leapfrog past a merits-based review.    Instead of evaluating the actual, record-backed legal architecture presented inside Plaintiff's brief—which directly cited *BladeRoom* by name—the panel relied entirely on Defendants' summary characterization that the appeal presented "no substantial question."

By utilizing *Hooton* to bypass the active brief, the panel did not analyze or grapple with the structural shift mandated by *BladeRoom* nor the fraud alleged; they bypassed full adversarial development of a core change in controlling circuit precedent. The face of the resulting administrative order confirms this wholesale evasion, containing no written analysis, no evaluation of the trial record, and a complete omission of the *BladeRoom* doctrine (See *Walker III*, ECF. No. 7). Consequently, the issue has never once been reviewed on its true merits. Under *Ratha III*, this explicit procedural suppression provides the definitive "extraordinary circumstance" requiring Rule 60(b)(6) intervention to ensure that binding circuit law is not permanently subverted by administrative shortcuts. Defendants' remaining reliance on boilerplate finality arguments is explicitly foreclosed by the en banc holding in *Ratha III*, which dictates that finality must yield under Rule 60(b)(6) when an intervening shift in law exposes a fundamental miscarriage of justice. Indeed, the Ninth Circuit has long established that *res judicata* and rigid finality are not mechanical traps; they are equitable creations that must bend when their enforcement would perpetuate a manifest injustice or shield a

structural assault on equity. See *Clifton v. Attorney Gen. of State of Cal.*, 997 F.2d 660, 663 (9th Cir. 1993). Where a procedural shortcut is actively deployed to insulate a trial record infected by structural error, preclusionary bars cannot be used to transform an equitable doctrine into an active instrument of injustice.

Defendants' assertion that the District Court lacks the authority to disturb a judgment that was subject to a prior appellate summary affirmance fundamentally misunderstands the boundary between the mandate doctrine and the equitable safety valve of Rule 60(b)(6). It is a bedrock principle of federal jurisdiction that while a district court cannot disregard a higher court's mandate on remand, it retains absolute, independent jurisdiction to entertain a motion for relief from judgment under Rule 60(b) based on subsequent, extraordinary interventions. *See Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18–19 (1976) (holding that a district court does not require leave from an appellate court to act upon a Rule 60(b) motion after a judgment has been affirmed on appeal).

The Ninth Circuit's en banc decision in *Ratha III* reifies this exact jurisdictional framework. In *Ratha III*, the underlying judgment had been explicitly affirmed on appeal years prior in *Ratha II*. Yet, the en banc court explicitly validated the use of a Rule 60(b)(6) motion at the district court level to reach back and correct that affirmed judgment once a dispositive, structural clarification of law occurred. An administrative summary affirmance under *United States v. Hooton* does not immunize a flawed trial record from equitable correction; rather, under *Standard Oil* and *Ratha III*, the District Court sits as the primary court of equity, fully empowered to set aside an unconstitutional judgment when the strict finality bars have been broken by an intervening en banc mandate.

**B. Defendants Are Equitably Estopped from Invoking Finality Because They Actively Misled the Appellate Court Resulting in a Due Process Denial, Demanding Correction under this Court's Inherent Authority**

In *Walker III*, Plaintiff squarely presented the *BladeRoom* retroactive mandate in his Ninth Circuit Opening brief (ECF. No. 3, Case 22-16467 page 30-58). Defendants actively disrupted the appellate process by mischaracterizing Plaintiff's profound structural jury objections as mere "insubstantial," "nothing new," (ECF 5) and claiming that he improperly skipped procedural

4

checkpoints by filing *pro se* motions while represented by counsel, though counsel had already withdrawn[2]. This narrative was a deliberate distortion executed to induce the panel into applying an inapplicable administrative shortcut under *United States v. Hooton*. Defendants cannot invoke judicial finality when that "finality" was manufactured by a flat-out misrepresentation of this Court's unalterable electronic docket.    The permanent CM/ECF trial record documents that on **July 15, 2022, at 9:30 AM PDT**, this Court entered a formal Minute Order (**ECF No. 313**) explicitly granting Plaintiff's Motion for Withdrawal of Counsel. From that minute onward, Plaintiff's status as an independent, *in propria persona* litigant was procedurally absolute. Yet, in their subsequent appellate moving papers, Defendants chose to ignore this event, mischaracterizing Plaintiff's subsequent *pro se* filings (**ECF Nos. 314 and 315**) as procedurally defective. To secure a summary administrative dismissal under *Hooton*, Defendants explicitly represented to the Circuit panel that *"Walker could have refiled his Rule 60(b) motion once he was no longer represented"* (*Walker III*, ECF. 5, pg. 4).

Under settled Supreme Court authority, a party cannot demand that a court respect the "finality" of a judgment if that finality was secured through a distorted narrative or an active misrepresentation. *New Hampshire v. Maine*, 532 U.S. 742 (2001) establishes the definitive rule on judicial estoppel, preventing a party from gaining an unfair advantage by taking one position to win a ruling in an earlier proceeding and reversing course later. Having successfully induced the Ninth Circuit into skipping a mandatory *BladeRoom* retroactive review in 2023 by manufacturing a false procedural defect—while dangling the assurance that Plaintiff could refile his claims once unrepresented and once the District court made a ruling on his motion to enlarge—Defendants are heavily estopped from turning around in 2026 to argue that these exact refiled claims are barred by finality. As Plaintiff formally documented in his appellate opposition, the judiciary must reject the very type of corporate **"shell games that would have Walker in an endless loop"** (*Walker III* ECF. 6, pg. 19). Defendants must be estopped from playing fast and loose with the federal judiciary,

---

[2] This was the same ploy Defendants used to prevent the Ninth Circuit from hearing the *Bladeroom* and fraud issues before. See *Walker v. Charter Commc'ns, LLC* ("Walker II"), No. 20-16339, 20-17219, 2022 WL 1439125, (9th Cir. May 6, 2022)

speaking out of both sides of their mouth to trap an independent litigant in a cyclical procedural paradox and wasting judicial resources. This is compounded by the fact that their shell games have resulted in a due process denial. Nevertheless, the failure of the Court to rule on a 2022 Motion to Enlarge is no impediment under *Ratha III*.   This Court retains inherent power under Rule 60(d)(3) to police its own integrity and purge fraud on the court at any time. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Dixon v. Commissioner*, 316 F.3d 1041, 1046 (9th Cir. 2003), ("Courts possess the **inherent** power to vacate or amend a judgment obtained by fraud on the court...")

This Court must evaluate the trial-phase fabrications and the 2023 appellate docket misrepresentations not as isolated events, but as a unified scheme to defraud the judiciary. Despite the summary judgment being overturned with a false narrative intact[3], the record was never corrected before trial, allowing the defense to exploit a tainted baseline where supervisor Christopher Larson explicitly admitted under oath that supervisor Norma Perales's original termination recommendation was completely rejected by management because "there was not enough there for even a termination" (Larson Transcript at 10:17-25). Instead of a policy-compliant process, corporate supervisors executed an unrecorded, retroactive campaign to build a fraudulent narrative (Larson Transcript at 11:1-9; 12:10-13), culminating in HR Manager Mindi Brenner admitting under oath that she actively concocted a false report to executive superiors stating it was Walker's "decision to leave the company" (Brenner Transcript, pg 425 ll.20-21) to force the termination through.

Since the defense fails to disprove these explicit trial admissions, they have effectively conceded that the *Walker I* summary judgment track rested entirely on a corrupted, manufactured record that infected the subsequent trial proceedings. A federal court cannot maintain the "finality" of a judgment procured through an uncorrected record, admitted corporate fabrication, and systemic appellate deceit. Just as a fleeing criminal does not escape accountability simply because they managed to outrun pursuit and reach the threshold of their home, a civil defendant cannot manipulate the judicial system to manufacture a procedural milestone and then claim immunity under the guise

---

[3] *See Walker v. Charter Communs., Inc.*, ("Walker I") 2018 U.S. App. LEXIS 30842 (9th Cir. Oct. 31, 2018)(due to Charter's story the Court found " most – if not all – of the relevant decision-makers recommended or approved Walker's termination before they learned of his complaint to the NERC" and affirmed summary judgment of the retaliation claim)

of finality. Pursuant to Rule 60(d)(3), this deception demands accountability and that the judgment be set aside. As the United States Supreme Court held in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)[4], a federal court's native inherent power to undo a fraud on the court is absolute and un-timed, because tampered evidence and orchestrated myths do not gain immunity from judicial correction simply by the passing of a calendar clock.

Because Defendants actively misrepresented the underlying facts at trial and deceived the appellate panel to avoid a merits brief in *Walker III*, this Court is fully empowered—and constitutionally commanded under *Chambers* and Rule 60(d)(3) —to set aside the tainted judgments.

**C. Plaintiff Satisfies the "Reasonable Time" Mandate of Rule 60(c)(1) Measured from the Maturation of the Right**

Defendants' opposition attempts to drag this motion into a mechanical calculation of calendar days elapsed since the December 2019 closure and a document count or "**three years**" since the last filing. This is an analytical failure. Though there may be a one-year statutory bar applicable to Rules 60(b)(1)-(3). There is none with the flexible equity requirements of Rule 60(b)(6) and 60(d)(3). Under the express text of FRCP 60(c)(1), the mechanical 365-day clock only applies to subsections (1), (2), and (3). Subsection (6) is entirely unencumbered by a fixed calendar restriction and is governed exclusively by equitable "reasonableness" measured from when the basis for the motion arose. Furthermore, when a 60(b)(6) motion is premised on a change of law, timeliness is measured from the time a party has grounds to move. See *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020)

The historical reality of *Ratha III* itself serves as living proof that the passage of multiple calendar years does not defeat a Rule 60(b)(6) motion. The *en banc* court reopened a judgment in 2026 where the *claimed* finality milestone had been reached **four years** prior when the panel originally affirmed dismissal in *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022)

---

[4] The Supreme Court held there exists "a rule of equity to the effect that, under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgments regardless of the term of their entry." *Hazel-Atlas Id.* at 244. Where a court is confronted with a "deliberately planned and carefully executed scheme to defraud," *id.* at 245, "preservation of the integrity of the judicial process must always wait upon the diligence of litigants." *Id.* at 246. "[T]he public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Id.*

(*Ratha II*). Notably, the four-year time difference between the Ninth Circuit panels' summary affirmance in this case and Plaintiff's active 2026 invocation of the *en banc* standard precisely mirrors the four-year structural gap between *Ratha II* (2022) and the historic post-judgment reversal in *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (*Ratha III*). In **Bynoe,** 966 F.3d at 986 the gap was **seven years**. Under established Ninth Circuit standards, "reasonableness" is flexible and turns heavily on diligence after the legal barrier is lifted, rather than a fixed mechanical calendar date. *Phelps v. Alameida*, 569 F.3d 1120, 1136 (9th Cir. 2009); *Hamilton v. Newland*, 374 F.3d 822, 825 (9th Cir. 2004); *Gonzalez v. Crosby*, 545 U.S. 524 (2005)). Because Plaintiff filed this motion (ECF. No. 332) within mere months of the 2026 *en banc* clarification, Plaintiff acted with maximum equity and speed, satisfying the "reasonable time" mandate of Rule 60(c)(1).

**D. The *Harper* Retroactivity Mandate Deprives This Court of Equitable Discretion to Withhold the *BladeRoom* Standard**

BladeRoom* and *Ratha III* command that this court retroactively reach the structural defects in Plaintiff's 2019 trial raised in his post-trial motions. *BladeRoom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021). *BladeRoom* did not create a novel, forward-looking statutory mechanism; rather, it issued a definitive, authoritative declaration of what the standard governing civil jury instructions has always commanded. Because the Ninth Circuit applied that exact substantive construction to the active litigants in *BladeRoom*, this Court is stripped of any discretion to withhold it here. Under *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993):

> "When this Court applies a rule of federal law to the litigants in the case before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the announcement of the rule."

BladeRoom* was published in August 2021, while Plaintiff's direct trial appeal in *Walker II* was actively pending. Under *Harper*, the appellate system was constitutionally mandated to give *BladeRoom* full retroactive effect to the open record on direct appeal and, again, on the subsequent appeal of the Rule 60(b)(6) motion in *Walker III*. Instead, by granting Defendants' high-speed administrative *Hooton* motion, the panel completely evaded this mandatory requirement. They did

not apply *BladeRoom*, nor did they conduct the rigorous harmless-error analysis it commands; rather, they allowed an administrative shortcut to insulate a trial record that had been structurally infected by a standard-displacing jury instruction. Because Plaintiff qualifies as a model Prescient Litigant under *Ratha III*, the procedural finality bars are removed, and the *Harper* and *Ratha III* mandates strictly require this Court to rectify that appellate evasion by giving *BladeRoom* its full retroactive application to the underlying record now.

Under the binding framework of *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (*en banc*), a lower court is strictly bound by an intervening higher circuit authority if its reasoning is "clearly irreconcilable" with the old standard. Because *BladeRoom* explicitly rejected the application of *Shinseki v. Sanders* to civil jury instructions, it became the mandatory, controlling law of the circuit, and lower courts completely lack the legal authority to bypass or ignore it.

Under the proper *BladeRoom* framework, once a civil jury instruction error is established, legal error is certain and the court must "presume prejudice." The burden shifts entirely to the prevailing beneficiary of the error (Charter) to demonstrate that "it is more probable than not that the jury would have reached the same verdict had it been properly instructed" (*Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024); *Fierro v. Smith*, 39 F.4th 640, 651 (9th Cir. 2022)). Even in cases of absolute equipoise, courts must reverse (*Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)). Defendants' argument that finality calls for an end to this case fails as a matter of supreme constitutional mandate. The *Hooton* order they secured through deceit does not erase a trial's structural defects; it insulates them through administrative silence. Because the *Harper* retroactivity mandate applies non-discretionarily to all cases active on direct review regardless of procedural posture, and because the *Hooton* shortcut explicitly prevented any judicial body from ever evaluating the *BladeRoom* doctrine on its true merits, the structural infections remain fully ripe for Rule 60(b)(6) intervention. Because the unalterable trial record confirms an absolute failure by Defendants to meet their burdens under *BladeRoom*, the judgment must be set aside under *Miller v. Gammie*.

**E. Plaintiff's Diligence Explicitly Overcomes Finality under the *Ratha III* Precedent**

9

Defendants' argument relies upon by standard corporate finality doctrines that have been shattered by the en banc Ninth Circuit Court in *Ratha III*. The 2023 Summary Affirmance Order textually confirms that no judicial body has ever subjected Plaintiff's *BladeRoom* and fraud claims to regular appellate review, because the panel utilized *Hooton* to bypass full adversarial briefing and erroneously declare that an explicit, intervening change in controlling circuit authority presented "no substantial question." *Ratha III* directly abdicated this standard-bound hurdle when it held that "[A] clear and authoritative change in law may constitute such extraordinary circumstances," *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541, 547 (9th Cir. 2026) (en banc), to warrant Rule 60(b)(6) relief, establishing that a change of law can indeed represent a "substantial question."

Furthermore, in the text of the *Ratha III* majority opinion, the court rejected the notion that a litigant's specific strategic choices or omissions during the certiorari phase can undermine their entitlement to retroactive relief. As the majority in *Ratha III* directly noted:

> "The dissent correctly notes that Plaintiffs' petition for certiorari did not address their claims against Defendant. Dissent at 52 n.6. But the dissent's speculation about Plaintiffs' strategy does not undermine our conclusion..." Id. at 549 n.8.

*Ratha III* held ripe for correction errors in a prior summary judgment ruling because they were incorporated into the Rule 60(b)(6) ruling. Under this framework, the en banc majority actively excused the fact that the *Ratha III* plaintiffs entirely omitted their claims against a specific defendant from their Supreme Court certiorari petition—a posture that precisely mirrors Plaintiff's record.

Furthermore, the en banc majority explicitly expanded the equitable scope of Rule 60(b)(6) by flatly rejecting the dissent's assertion that "the existence of a circuit split is irrelevant to our assessment of retroactivity." *Id.* at 549. This holding provides a multi-pronged basis for relief. First, it legitimizes Plaintiff's reliance on *BladeRoom*'s resolution of a deep-seated circuit split regarding civil jury instructions. Second, it establishes *Ratha III* itself as binding precedent for the proposition that an intervening clarification of law—specifically one resolving an active conflict among the circuits—constitutes an extraordinary circumstance warranting post-judgment intervention *Id.* at 548–50, especially when "clear and authoritative" *Id.* at 553–54. Lastly, and most importantly, *Ratha*

*III* mandated a retroactive application of the newly clarified legal standard directly to the context of the underlying complained-of judgment. *Id.* at 550-55. *Id.* at 563 *Ratha III* also mandates that the error be reviewed de novo and corrected. *Id.* at 553.

Consequently, *Ratha III* provides Plaintiff with distinct, independent bases for equitable relief. Moreover, the *Ratha III* framework forecloses any defense argument that Plaintiff waived his rights by electing not to pursue a futile petition for a writ of certiorari. *See id.* at 549 n.8

Because Plaintiff was a model Prescient Litigant who unceasingly identified, preserved, and advanced the argument that *BladeRoom* applied retroactively before and during the precise window it was formalized, the finality bars are completely removed. By filing this motion at the District Court level within mere months of the *Ratha III* ruling, Plaintiff has executed the exact procedural move authorized by the en banc court: bypassing the high-speed administrative doors that shut out his arguments in 2023, denying his right to be heard, and forcing this Court to evaluate the issues of the *BladeRoom* mandatory presumption of prejudice on the jury instruction and fraud allegation that Plaintiff raised on his post-trial motions (ECF 267, ECF 314, ECF 315), but for the very first time under the proper standards—just as *Ratha III* did when evaluating the prior motion filed years earlier.

## F. Defendants Ignore Ratha III's Controlling Procedural Mandate for Prescient Litigants

Defendants' lazily assert that they do not understand the framework of a 'prescient litigant'. Landmark legal commentary and supreme analytical bodies routinely deploy this exact conceptual phrasing to measure of a person's legal foresight. As the Harvard Law Review recently recognized in documenting a Supreme Court justice's ideological forecast: **'Justice Jackson's cross-ideological appeals proved prescient.'[5]** Defendants' feigned ignorance of standard appellate nomenclature cannot mask their absolute failure to provide a single record-backed point or authority demonstrating how the 2019 trial instructions were harmless under *BladeRoom*.   As leading appellate analysts have noted in reviewing the historic *en banc Ratha III* decision—headlined appropriately by the bar as *"It Ain't Over 'Til It's Over: The En Banc Ninth Circuit Simplifies Its Retroactivity Analysis And Issues*

---

[5]  Civil Rights Attorney's Fees Awards Act of 1976 — Remedies — 42 U.S.C. § 1983 — Lackey v. Stinnie, 139 Harv. L. Rev. 366 (2025)

*Rare Rule 60(b) Reversal"* (appeals.mofo.com/topics/it-ain-t-over-til-it-s-over-the-en-banc-ninth-circuit-simplifies-its-retroactivity-analysis-and-issues-rare-rule-60-b-reversal); also *See Ninth Circuit Revives Human Trafficking Claims Against Seafood Importer After Congress Clarifies Civil Liability*, (joeroselaw.com/2026/05/ninth-circuit-revives-human-trafficking-claims-against-seafood-importer-after-congress-clarifies-civil-liability/)—the true operational power of *Ratha III* lies in its sweeping procedural mechanisms. The *en banc* Ninth Circuit demonstrated a willingness to review a post-judgment motion and carve out an explicit path to give cases a "second life" when finality has been fundamentally compromised.

While the substantive outcome in *Ratha III* resolved a statutory conflict, the procedural mechanism utilized by the en banc court established the governing Ninth Circuit standard for evaluating motions for relief from judgment under Fed. R. Civ. P. 60(b)(6). Specifically, *Ratha III* codified the **"Prescient Litigant" doctrine**, establishing that a district court's denial of Rule 60(b)(6) relief to a diligent litigant following a dispositive intervening change or clarification in controlling law constitutes a clear error of law. Legal commentators have highlighted two universal procedural takeaways from *Ratha* that directly govern this case:

- **The Merits Are Incorporated:** *Ratha III* explicitly established that the merits of an underlying final order are properly reviewed on a post-judgment appeal because a subsequent Rule 60(b) motion effectively "incorporates" the prior flawed reasoning.
- **Precedent Can Be Narrowed Without Being Discarded:** The en banc court confirmed how a court can overrule narrow, erroneous doctrinal holdings while retaining useful equitable reasoning to correct a systemic miscarriage of justice.

Furthermore, *Ratha III* explicitly applies to the architecture of Rule 60(b)(6) equity. While *Ratha III* utilized a clarifying statute as its factual vehicle, its sweeping procedural holding undoubtedly solidified a universal mandate: intervening clarifications of law—whether statutory or judicial—annihilate rigid finality barriers and strictly require a district court to evaluate the mature claim squarely on its true merits.

Because ***BladeRoom Group Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021)** explicitly served to "clarify" the rule's original meaning by rejecting the misapplication of *Shinseki* to civil jury instructions, it did not construct new law; rather, it declared what the law has always been,

12

making it ripe for consideration under Rule 60(b)(6).    This is exactly like the seminal case of Phelps v. Alameida, 569 F.3d 1120, 1132 (9th Cir. 2009) which involved an intervening change in circuit law which *clarified* how to determine finality of a California postconviction petition.

Under *Harper*, when a judicial decision clarifies the true, uninterrupted meaning of a federal rule, it *must* be given full retroactive effect to all events and in all cases still open on direct review. Plaintiff invokes *Ratha III* because the en banc Ninth Circuit has commanded that rigid judicial finality must yield under Rule 60(b)(6) when a diligent, prescient litigant has accurately mapped out, preserved, and pushed for a correct legal standard (**BladeRoom**) that the courts subsequently solidified but the court had fundamentally skipped over, mandating retroactive application.

**G. All Traditional Rule 60(b)(6) Equity Factors Are Overwhelmingly Satisfied**

*Ratha III* left intact the equitable factors established in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009)—and specifically weaponized them to evaluate whether a multi-year delay is reasonable under Rule 60(b)(6). *Phelps* mandates a "reasoned explanation grounded in equitable considerations," a standard Plaintiff resoundingly satisfies. This flexible, equity-first mandate matches the Supreme Court's definitive ruling in *Buck v. Davis*, 580 U.S. 100, 123 (2017), which confirms that Rule 60(b)(6) vests federal courts with broad, wide-ranging authority to vacate judgments based on a holistic, case-by-case balancing of all realities. As already addressed throughout the body of Plaintiff's moving papers (ECF 332), he demonstrated the monumental, law-clarifying nature of the holdings in *Ratha III* and *Bladeroom* (the latter is "involving alteration to constitutional rights" **Bynoe,** 966 F. 3d at 986 in jury claims) (**Factor 1**), combined with his uninterrupted, parallel diligence (*see* "Introduction") in locking this exact framework into his briefs ten months prior to *Bladeroom's* publication[6]  and following both *Bladeroom and Ratha III* there was only a matter of months between the judgments and the initial rule 60(b)(6) motions *Phelps*, 569 F.3d at 1138 (**Factor 2**), which completely outbalances any boilerplate corporate finality interests where

---

[6]  The seven-year gap between judgment and this Rule 60(b)(6) motion is excused by diligence. See e.g. **Bynoe v. Baca,** 966 F.3d 972, 986 (9th Cir. 2020) (district court erred noting*"...seven-year gap between the denial of Bynoe's request for a Rhines stay and the filing of his Rule 60(b)(6)* motion and failing to accord appropriate weight to Bynoe's diligence and his ultimate timeliness. This factor slightly favors Bynoe.*")

no real-world property or custody reliance interests exist as "the parties would simply pick up where they left off." *Phelps*, 569 F.3d at 1138. – this factor requires something more than a party's "abstract interest in finality." *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434, 451 (9th Cir. 2019) (**Factor 3**), all while anchoring his claim to the direct procedural nexus shared between this case, *Bladeroom* and the en banc mandate in *Ratha III* (**Factor 4**). Reopening this matter vindicates the uniform baseline of federal procedure and ensures that federal judgments are not built upon unconstitutional procedural subterfuges, thereby vindicating comity and the institutional integrity of federal judgments and rectifying an injustice borne by Plaintiff **Bynoe** Id.at 986 (**Factors 5 & 6**).

**H. Defendants' History of Non-Responsive, Boilerplate Filings Operates as a Total Procedural Concession and Waiver Under Local Rule 7-2(d), circuit, and Supreme Court precedent**

Under Local Rule LR 7-2(d), a party's failure to file substantive points and authorities constitutes consent to granting the motion. Defendants' choice to continually respond to, *inter alia*, the supreme mandates of *BladeRoom*, *Harper*, *Phelps*, and *Ratha III* with nothing but cut-and-paste finality boilerplate is legally fatal. Defendants failed to assert how "full and fair" the proceedings were and want to "reserve" argument. Defendants cannot forfeit presentation and demand a second chance later, citing finality. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020); see also *Henson*, 943 F.3d at 451 (rejecting a bare "abstract interest in finality"). It is well-settled that mentioning an argument in a skeletal way is insufficient to preserve it. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). This Court should treat Defendants' filing as a legal concession and hold them to their procedural defaults.

**II. CONCLUSION**

For the reasons documented herein, the incessant command of the Court's conscience requires that Plaintiff's motion be granted, the prior distorted orders be reversed, and the underlying infected judgments be set aside to allow proper adjudication on the true merits.

Respectfully submitted,

*/s/ Terrance Walker*

Terrance Walker Plaintiff, *in propria persona*

14